BERNSTEIN LAW OFFICE, INC.
Bob Bernstein, SBN: 43230
bob@crimeonly.com
3727 W. Magnolia Blvd., # 767
Burbank, CA 91505
Telephone:  (818) 558-1717
Facsimile:  (818) 526-7672
*Attorney for David Santillan*

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR-13-106-ODW |
| Plaintiff, | |
| v. | **DEFENDANT'S MOTION TO DISMISS UNDER RULES 12(b)(3)(A)-(B) FOR FAILURE TO STATE AN OFFENSE, LACK OF JURISDICTION, AND VARIOUS CONSTITUTIONAL VIOLATIONS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| DAVID SANTILLAN, President of Mongol Nation LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | **Date:** October 21, 2013 **Time:** 10:00 A.M. **Dept:** Hon. Otis D. Wright II |

///
///
///

1
2
3
4
5
6
7

**PLEASE TAKE NOTICE** that on October 21, 2013 at 10:00 a.m. in Courtroom 11, Defendant DAVID SANTILLAN, by and through counsel, will and hereby does motion this Honorable Court to dismiss the case for  failure to state an offense, lack of jurisdiction, and various constitutional violations.  This motion shall be based on the motion, this notice of motion, the attached memorandum of points and authorities, all filings and oral records, and upon any and all argument heard by the Court on the motion.

8
9
10
11
12
13
14

Respectfully submitted,

Dated   September 12, 2013         */s/Bob Bernstein*_____
                                   Bob Bernstein, Esq.
                                   BERNSTEIN LAW OFFICE, INC.
                                   *Attorneys for David Santillan*

15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

### INTRODUCTION

The government's sole purpose in filing the indictment is to crush the Mongols Nation Motorcycle Club (the "Club") by seizing the intellectual rights to the "Rider " and "Mongol" marks (the "Marks") and thereby quash the Club and its members' rights to freedom of expression and association in violation of the First Amendment.  To achieve this aim, the government seeks to exploit the alleged actions of rogue individuals—who operated entirely outside of their alleged membership with the Club—by holding the Club responsible and seizing the Marks.

But the Marks are not the proceeds of criminal activity and therefore the government's effort to secure their forfeiture are misplaced because RICO does not grant jurisdiction for their seizure.  Moreover, the *in personam* nature of RICO forfeiture prevents the government from seizing the Marks because the government can only seek forfeiture against property of the actual individuals who allegedly committed racketeering acts yet the government has instead proceeded against the Mongols as an entity.  Indeed, the attempt to take the Marks constitutes an attempt at an illegal seizure under the Fourth Amendment and a violation of due process.

*///*

*///*

*///*

*///*

*///*

*///*

*///*

*///*

## II

**RICO DOES NOT GRANT THE GOVERNMENT JURISDICTION TO SEEK FORFEITURE OF THE MARKS BECAUSE THEY ARE NOT THE PROCEEDS OF THE ALLEGED RACKETEERING ACTS AND RICO FORFEITURE IS AN *IN PERSONAM* CRIMINAL REMEDY THAT DOES NOT APPLY TO DEFENDANT**

**A.   The Marks are Not Proceeds of RICO Racketeering Acts and There is No Causal Link Between the Marks and the Alleged Racketeering Acts**

In order to establish a violation of Section 1962(a), the government must prove the following elements beyond a reasonable doubt:

1. Existence of an enterprise;

2. The enterprise engaged in, or its activities affected, interstate or foreign commerce;

3. The defendant derived income, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal;

4. The defendant used or invested, directly or indirectly, any part of that income, or the proceeds of that income, in the acquisition of an interest in, or the establishment or operation of, the enterprise."

(Abraham v. Singh (5th Cir. 2007) 480 F.3d 351, 3 156 56-57; St. Paul Mercury Ins. Co. v. Williamson (5th Cir. 2000) 224 F.3d 425, 441; United States v. Vogt (4th Cir. 1990) 910 F.2d 1184, 1194, *cert. denied*, 498 U.S. 1083 (1991).)

However, the government cannot meet the "but for" test to establish that the Marks are proceeds derived from criminal activity: A plain reading of Section 1963(a) indicates that the interest to be forfeited must have been acquired or maintained as a result of the racketeering violation.  (Ibid.) Some courts have held that there must be a "but for" relationship between the offense and the acquisition or maintenance of the interest. (See, e.g., United States v. Cianci (D.R.I. 2002) 218 F. Supp. 2d 232, 235 (district court imposes forfeiture upon finding that defendants would not have obtained $250,000 "but for" defendants' participation

in RICO conspiracy); <u>United States v. Angiulo</u> (1st Cir. 1990) 897 F.2d 1169, 1213 (reversing forfeiture of property obtained before the defendant committed his second racketeering act); <u>United States v. Ofchinick</u> (3d Cir. 1989) 883 F.2d 1172, 1183-1184 (holding that the Government failed its burden of proving that the defendant's "racketeering activities were a cause in fact of his acquisition of or maintenance of an ownership interest in the [forfeited] stock"); <u>United States v. Horak</u> (7th Cir. 1997) 833 F.2d 1235, 1242 (remanded to determine whether defendant's salaries and bonuses subject to forfeiture were obtained solely from unlawfully obtained contract or were in part obtained through lawful activities).) The indictment does not contain allegations sufficient to meet the but for test. (<u>Ibid.</u>)

Here, the government cannot realistically argue that the Marks were somehow obtained by virtue of the alleged racketeering acts. The indictment actually alleges that the alleged members wore the patches at the time of each and every alleged criminal act. (<u>Indictment</u>.) This shows that the government is assuming the Mongols were in possession of the Marks *before* any criminal activity occurred. (<u>Ibid.</u>) It follows that the government cannot established—and has not made sufficient allegations—to show that the Marks are forfeitable. (<u>United States v. Kramer</u> (11th Cir. 1996) 73 F.3d 1067, 1076, *cert. denied*, 519 U.S. 1011 (property subject to forfeiture under Section 1963(a)(3) is limited to property that a defendant obtains directly or indirectly as a result of racketeering activity prior in time to the racketeering acts); <u>see</u>, <u>also</u>, <u>e.g.</u>, <u>United States v. Thevis</u> (N.D. Ga. 1979) 474 F. Supp. 134, 142 ("Interest" subject to forfeiture under 18 U.S.C. § 1963(a) is limited to the interest in the enterprise and does not extend to fruits or profits generated from the enterprise.) The government clearly has failed to establish that the "interest" was obtained "prior in time" and it follows that the interest was not obtained either directly or indirectly as a result of

the alleged racketeering acts.  (<u>Kramer,</u> 73 F.3d at 1076; <u>Angiulo</u>, 897 F.2d at 1213; <u>Thevis</u>, 474 F. Supp. at 142.)

Moreover, as a matter of logic, the Marks are not an "interest" or property subject to criminal forfeiture because they are simply patches worn on the back of the jackets the Club members wear when riding their motorcycles. (See, Indictment at 5-6.)  Over time, they have become the intellectual property of the Club as collective marks, but a trademark "is not a property in the ordinary sense." (<u>Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc</u>. (2d Cir. 1985) 754 F.2d 91, 97.)  Instead, a trademark is an intangible "limited property right in a particular word, phrase or symbol," separate from any tangible items bearing the mark. (<u>New Kids on the Block v. News America Pub., Inc</u>. (9th Cir. 1992) 971 F.2d 302, 306; <u>see also</u>, 15 U.S.C. § 1127.)     No criminal activity would realistically be required for the members to wear the patches.  The patches have become recognized and associated with the Mongols because the members have been wearing the patches for decades.   The Marks are nothing more than collective marks used to demonstrate membership.  (<u>International Order of Job's Daughters v. Lindeburg and Co</u>. (9th Cir. 1980) 633 F.2d 912, 914; <u>see</u>, Section II, C, *infra*.)

The indictment consequently also falls short of assertions that would meet the "causal link test": In <u>United States v. DeFries</u>, the court ruled that the "but for" test requires only an adequate "causal link between the property forfeited and the RICO violation" that should be determined on the facts of each case. (<u>DeFries</u>, (D.C. Cir. 1997) 129 F.3d 1293 1312-13.)  But there is no conceivable argument supporting a causal link between the crimes alleged in the indictment and the ownership of the collective marks.  (<u>See</u>, generally, <u>Indictment</u>.)  The indictment alleges murder, drug distribution, and a variety of felonies.  (<u>Ibid</u>.)  None of the crimes alleged somehow gave the Club members the right to wear a patch on their back.  In actuality, the right to wear the Marks were bestowed upon the members

under the *First Amendment*, which permits an individual to express himself and demonstrate his association with others.  Unfortunately, the indictment seeks to crush the members' First Amendment rights through the governments' unfounded forfeiture vendetta that is entirely unjustified under RICO.  (<u>See</u>, Section II, B, *infra*; Section III, *infra*.)  The government has no jurisdiction to proceed and the indictment must be dismissed.  (<u>Kramer</u>, 73 F.3d at 1076; <u>Angiulo</u>, 897 F.2d at 1213; <u>Thevis</u>, 474 F. Supp. at 142.)

**B.     RICO Forfeiture is an *In Personam* Procedure That Does Not Apply to The Club as an Entity, Which Is an Improperly Named Defendant**

Forfeiture is an *in personam* remedy targeted primarily at the defendant who committed the criminal offense. (<u>United States v. Riley</u> (8th Cir. 1996) 78 F.3d 367, 370-371; <u>United States v. Lester</u> (9th Cir. 1996) 85 F.3d 1409 at 1414 n.8.)  Here, the government attempts to create a non-existent nexus between the actions of previously convicted criminal defendants, and an amorphous "unincorporated association" which the government has now determined is represented by David Santillan, who is president of Mongols Nation Motorcycle Club, LLC.

> "Though the indictment alleged that the Named Companies are an enterprise through which defendants conducted their racketeering activities, an allegation that an enterprise was used to commit RICO violations is not enough to make the enterprise forfeitable, only defendants' interests in that enterprise. RICO's criminal forfeiture is an *in personam* remedy to punish the RICO defendants. (*See* <u>United States v. Conner</u> (11th Cir. 1985) 752 F.2d 566, 576.) It does not permit the government to seize control of an enterprise that defendants used to accomplish their racketeering."
> (<u>United States v. Riley</u> (8th Cir. 1996) 78 F.3d 367, 370-371.)

The government seeks to evade the *in personam* nature of RICO forfeiture by naming "Mongols Nation, an unincorporated association" as a Defendant.  But,

> "'The statute says that it is the proceeds received by the defendants, not by their enterprise, that are forfeitable.' (<u>United States v. Masters</u>

(7th Cir. 1991) 924 F.2d 1362, 1370, <u>cert. denied</u>, 500 U.S. 919, 114 L. Ed. 2d 105; <u>see</u> <u>United States v. Olson</u>, (8th Cir. 1994) 22 F.3d 783, 785, <u>cert. denied</u>, 115 S. Ct. 320 (bank officers' salaries and bonuses are subject to forfeiture, not the bank depositors' funds).) Even if the government had included the Named Companies as RICO defendants, its assertion that $ 28 million is subject to forfeiture would be absurd. A corporate defendant's racketeering "proceeds" are subject to forfeiture. . . (See <u>Masters</u>, 924 F.2d at 1370; <u>United States v. Lizza Indus., Inc</u>. (2d Cir. 1985) 775 F.2d 492, 497-98, <u>cert. denied</u>, 475 U.S. 1082.)"

(<u>United States v. Riley</u> (8th Cir. 1996) 78 F.3d 367, 371.)

The government's theory is flawed.  Criminal forfeiture operates *in personam* against a defendant; it is part of his punishment following conviction.  (<u>See</u>, <u>United States v. Lazarenko</u> (9th Cir. 2007)   476 F.3d 642, 647.)   This distinguishes the forfeiture judgment in a criminal case from the *in rem* judgment in a civil forfeiture case. (<u>United States v. Vampire Nation</u> (3d Cir. 2006) 451 F.3d 189, 202.) Here, the government seeks to re-open the implications of prior convictions of individuals *alleged* to be operating under the scope of the Mongols Nation and somehow obtain forfeiture of the collective trademarks worn by thousands of motorcycle riders across the country. (<u>See generally</u>, Indictment.) RICO does not provide for the government's long-reaching efforts.  (<u>Ibid</u>; <u>Riley</u>, 78 F.3d at 370-371; <u>United States v. Saccoccia</u> (1st Cir. 2003) 354 F.3d 9, 14-15 ("At first blush, the present holding may appear to diverge from the stated legislative intent to accord the government extremely aggressive forfeiture remedies so as to preclude criminals from realizing the monetary benefits of their crimes . . . On the Other hand, the very potency of the forfeiture power demands that it be reasonably contained within ascertainable limits.).)  The indictment must be dismissed for lack of jurisdiction under RICO.

///

///

The government is blurring the boundaries afforded to them by the RICO act.  The indictment alleges defendant violated section 1962(c), but that section "prohibits any *person* employed by or associated with any *enterprise* from participating in or conducting the affairs of the enterprise through a pattern of racketeering activity." (<u>Abraham v. Singh</u> (5th Cir. 2007) 480 F.3d 351, 357 (emphasis in original) (internal quotations and citations omitted); <u>see also</u>, <u>Whelan v. Winchester</u> (5th Cir. 2003) 319 F.3d 225, 229.) "To state a claim under subsection (c), a plaintiff must demonstrate, *inter alia*, that the RICO person is distinct from the RICO enterprise." (<u>Abraham</u>, <u>supra</u>, 480 F.3d at 357.)  A party cannot simultaneously be enterprise under RICO and RICO defendant. (<u>Lopez v Dean Witter Reynolds, Inc</u>. (1984, ND Cal) 591 F Supp. 581.)

"A pattern of racketeering activity", suggests the principle that to establish liability under § 1962(c), existence of two distinct entities—(1) a "person," and (2) an "enterprise" that is not simply same "person" referred to by different name—must be alleged and proven, as in ordinary English one speaks of employing, being employed by, or associating with others, not oneself. (<u>Cedric Kushner Promotions, Ltd. v King</u> (2001) 533 US 158; 2001 CDOS 4747; 2001 *Daily Journal DAR* 5855; *RICO Bus Disp Guide* (CCH) P 10085; 2001 *Colo J C A R* 2949, 14 *FLW Fed S* 334.)

An "enterprise" may not be held liable for damages under 18 USCS § 1962(c) either directly or under principles of *respondeat superior*, since both direct liability and vicarious liability are directly at odds with Congressional intent behind § 1962(c) to separate enterprise from criminal "person". (<u>Schofield v First Commodity Corp</u>. (1st Cir. 1986) 793 F2d 28.)  Moreover, courts have held that the distinctness requirement is not satisfied where a corporation is the charged defendant and the enterprise "consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant," because if such pleading were allowed, the prohibition on naming the same

corporation as both the defendant and the RICO enterprise could be routinely evaded by listing corporate officers and employees as part of the enterprise, without affecting the gravamen of the complaint. (See, <u>Riverwoods Chappaqua v.</u> <u>Marine Midland Bank</u> (2nd Cir. 1994) 30 F.3d 339, 344.)

While some courts have held that "person" and "enterprise" need not be separate entities under sections 1962(a), and (b), (<u>Pennsylvania v Derry Constr.</u> <u>Co</u>. (1985, WD Pa) 617 F Supp. 940), there is no question that in an action brought under section 1962(c), "person" and "enterprise" must be distinct entities. (<u>United States v Standard Drywall Corp</u>. (1985, ED NY) 617 F Supp. 1283; <u>Temple University v Salla Bros., Inc</u>. (1986, ED Pa) 656 F Supp. 97; <u>see</u>, <u>Richter v Sudman</u> (1986, SD NY) 634 F Supp. 234 (RICO complaint naming defendant both "person" and "enterprise" under section 1962(c) was dismissed as corporate entity may not be simultaneously "enterprise" and "person" conducting affairs of enterprise through pattern of racketeering activity.); <u>see</u> <u>also</u>, <u>Waddell &</u> <u>Reed Fin., Inc. v Torchmark Corp</u>. (2003, DC Kan) 243 F. Supp. 2d 1232. (Life insurance company could not be defendant on Racketeering and Corrupt Organizations Act, 18 USCS §§ 1961 *et seq*., claim where plaintiffs asserted that life insurance company was one of alleged "enterprises" because "person" and "enterprise" engaged in racketeering activities must be different entities.).)

Here, the government's theory of a "pattern of racketeering activity" committed by defendant is nothing more than a re-hashing of prior convictions of individuals, only in the instant indictment, the government has removed the names of the actual actors and replaced them with defendant "MONGOL NATION." This is nothing but an attempt to evade the *in personam* nature of RICO forfeiture. (<u>See</u>, <u>Indictment</u> at 20-23.)      Likewise, the conspiracy charge is alleged to have been accomplished by MONGOL NATION "acting by and through full patched members of the Mongols Gang." (<u>Indictment</u> at 25.)   The indictment explicitly names individuals, listing "leaders, officers, full patched members, and

prospective members" whom the government claims were involved in murder, distribution of narcotics, collection of tax payments for narcotics-trafficking, and possession of weapons and devices used to enforce the authority of the Mongols. (Id. at 26.)  The indictment goes on to include a large list of felonies committed *by individuals*  from 2002 to 2012. (Id. at 28-39.)  The indictment claims that these actions were committed while the individuals wore the Marks the government seeks to forfeit.  But RICO forfeiture is limited to property owned by those same individuals; as explained *infra*, collective marks are not owned by the individuals who wear them to express association in a group.  (Riley, 78 F.3d at 370; Vampire Nation,451 F.3d at 202; United States v. Nava (9th Cir. 2005) 404 F.3d 1119, 1136-37.)  The government eats its own tail in an attempt to seek forfeiture that is factually and legally impossible under RICO.

The Club's property cannot be forfeited even if individuals used it to act illegally. (See Nava, 404 F.3d at1136-37, *Order* at 13:8-11 ("there is no support for the notion that a defendant's control of property belonging to a RICO enterprise is sufficient to establish a forfeitable ownership interest in the property"). The Ninth Circuit has made clear that "only the defendant's interest in the enterprise is forfeitable, not the enterprise itself," except in the unique situation, not presented here, "where the culpable person owns the entire enterprise." (United States v. Busher (9th Cir. 1987)  817 F.2d 1409, 1413 n.7 (emphasis in original); see also, United States v. Regan (2d Cir. 1988) 858 F.2d 115, 119 n.2  ("Where a RICO defendant is a partner in a partnership, only his interest in that partnership, not the entire partnership, is forfeitable."). Therefore, an "allegation that an enterprise was used to commit RICO violations is not enough to make the enterprise forfeitable." (Riley, 78 F.3d at 370 (emphasis in original).  The forfeiture theory forwarded on the Court by the government is irreparably flawed.

**C.    The Marks Are Collective Membership Marks That Cannot Be Forfeited Because The Marks Are Not Owned By The Individuals Who Alleged Committed Racketeering Acts**

The government finds itself in a Catch-22.  It can only obtain forfeiture on an *in personam* basis against individuals who actually commit racketeering acts. (Section II, A, *supra*.)  Yet it cannot obtain forfeiture of the Marks because the Club does not commit racketeering acts.  As alleged in the indictment, individuals committed the acts, not the Entity itself.   In an ends oriented attempt to seize the Marks, the government ignores this reality and thereby attempts to exceed the jurisdiction granted to it by Congress under RICO.   The indictment must be dismissed because the *only* objective of the indictment is forfeiture of the Marks but the government lacks jurisdiction for this objective.

Even if the government can prove the allegations in the indictment, it does not lead to the conclusion that the government may seize ownership of the collective marks.   It would only lead to the conclusion that any  *individual* defendant's (although there is none) right to the Mark would be forfeitable.  But the problem with this theory is that collective marks follow the *group*.  Thus, an individual's loss of the right to "ownership" of a collective mark would not deprive other members of the group from wearing the Marks.  Individuals would always be permitted to wear the Mark on their jackets as they currently do to show affiliation with the Mongols.   The government's theory fails when the basic tenants of collective marks are considered.

The government cannot obtain forfeiture of the Marks because collective marks can only be owned by the organization to whom the Marks symbolize membership. (F.R. Lepage Bakery, Inc. v. Roush Bakery Products Co., Inc. (Fed. Cir. 1988) 851 F.2d 351, 353, *modified on unrelated issue*, (Fed. Cir. 1988) 863 F.2d 43;  Sebastian Int'l, Inc. v. Longs Drug Stores Corp. (9th Cir. 1995) (Ferguson, J., concurring) 53 F.3d 1073, 1077; Huber Baking Co. v. Stroehmann

Bros. Co. (2d Cir. 1958) 252 F.2d 945, 952.)  By their very nature, collective membership marks are owned by organizations, not individuals. "A collective mark denotes membership in an organization," (International Order of Job's Daughters v. Lindeburg and Co. (9th Cir. 1980) 633 F.2d 912, 914 n.2, and informs "relevant persons of the member's association with the organization." (Vistein v. American Registry of Radiologic Technologists (N.D. Ohio 2007) 509 F. Supp. 2d 666, 703, *aff'd in relevant part*, 342 Fed. Appx. 113 (6th Cir. 2009). The government cannot hold the Club—nor its thousands of law abiding members—responsible for the actions of those mentioned in the indictment and it cannot eliminate the existence of the Club or the members' rights to bear the Marks.

Accordingly, as a matter of law, as individuals cannot own a collective mark, the government is barred because it can only obtain forfeiture on an *in personam* basis against the individuals who commit the racketeering acts but here the defendant is the Mongol Nation as an entity. (Section II, A, *supra*; see, e.g., 21 U.S.C. § 853(p) (only the "property of the defendant" may be forfeited as "substitute property"); United States v. Jimerson (11th Cir. 1993) 5 F.3d 1453, 1454 (innocent spouse's "interest in the property is unaffected by her husband's forfeiture to the Government" even though property was used to "facilitate" criminal activity); see also, United States v. Certain Real Property at 2525 Leroy Lane (6th Cir. 1989) 910 F.2d 343, 349 ("forfeiture statutes are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise"); United States v. Tanner (West Virg. 1994) 853 F. Supp. 190, 197 (the purpose of section 853 "is not to divest innocent persons of their legitimate interests in property"); United States v. Lester (9th Cir. 1996) 85 F.3d 1409, 1415.)  But the Marks are not owned the individuals and there is no alternative theory available to justify forfeiture.

///

As the <u>Lepage</u> court explained this principle:

> the users of a *collective mark* must be members of an "organization" …. An individual person or corporation … is not, in that capacity, the owner of a collective mark and cannot register it as a collective mark…. A collective mark is said to be "a trademark or service mark used by the members of a cooperative, an association or other group or organization." It follows logically that only such an organization as is indicated by the statutory definition can become the owner of a collective mark ….

851 F.2d at 353-54 (emphasis in original).

Only the Club, not any individual member, has ever owned the Marks. And because no indicted individual defendant ever owned the Marks, and because forfeiture is an *in personam* device, the Marks are not subject to forfeiture.

As collective membership marks, the Marks are a type of trademark. (15 U.S.C. § 1127.)  They are subject to the same rules and limitations as any mark. (15 U.S.C. § 1054; <u>Sebastian</u>, <u>supra</u>, 53 F.3d at 1075; <u>PGA v. Bankers Life & Casualty. Co</u>. (5th Cir. 1975) 514 F.2d 665, 668; <u>Carefirst of Maryland, Inc. v. First Care, P.C</u>. (E.D. Va. 2004) 350 F. Supp. 2d 714, 724 n.9, *aff'd*, 434 F.3d 263 (4th Cir. 2006).)  A trademark "is not a property in the ordinary sense." (<u>Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc</u>. (2d Cir. 1985) 754 F.2d 91, 97.) Instead, a trademark is an intangible "limited property right in a particular word, phrase or symbol," separate from any tangible items bearing the mark. (<u>New Kids on the Block v. News America Pub., Inc</u>. (9th Cir. 1992) 971 F.2d 302, 306; <u>see</u> <u>also</u>, 15 U.S.C. § 1127.)  Most importantly, a trademark "does not confer a right to prohibit the use of the word or words" contained in the mark under all circumstances. (<u>Prestonettes, Inc. v. Coty</u> (1924) 264 U.S. 359, 368, 44 S. Ct. 350, 68 L. Ed. 731.)

///

///

///

The government is logically, legally and factually barred from obtaining forfeiture.  Even assuming *arguendo* that RICO did somehow grant jurisdiction, because the government and the Mongols are two different entities and collective marks cannot be owned by an organization to which the collective marks do not indicate membership, forfeiture of the marks to the government is impossible.

### III
### THE GOVERNMENT'S INDICTMENT SHOULD BE DISMISSED BECAUSE IT OPERATES AS A PRIOR RESTRAINT ON SPEECH IN VIOLATION OF THE FIRST AMENDMENT

It is apparent that the government's seeks forfeiture of the Marks to prevent anyone from wearing them and thereby demonstrating affiliation with the Mongols.  (See, generally, Indictment.)  This is simply a content based regulation of speech with insufficient justification to avoid violating the First Amendment. The Court could dismiss the indictment on First Amendment grounds alone.

The First Amendment does not permit the government to impose special prohibitions on those speakers who express views on disfavored subjects.  (R. A. V. v. St. Paul (1992) 505 U.S. 377, 391  (holding law that proscribes donning of swastika "facially unconstitutional.").)  The point of the First Amendment is that majority preferences must be expressed in some fashion other than silencing speech on the basis of its content. (Id. at 392.)  Just as the government has no right to prevent individuals from swastikas, it has no right to prevent individuals to from wearing the Marks.  (Ibid.)  The government has disguised its attempt to suppress the Mongols' freedom of speech and association in the form of forfeiture but the effect is undeniably the same as if it was a statutory regulation of speech. (See, Indictment (seeking forfeiture of collective marks).)  And it is equally impermissible.  (St. Paul, 505 U.S. at 391-392 ; (Church of American Knights of the Ku Klux Klan v. Kerik (2d Cir. 2004) 356 F.3d 197, 206.)

The First Amendment protects the display of insignia by Club members, because such display "communicate[s] the fact of their association with this particular kind of organization." (Sammartano v. First Judicial Dist. Court (9th Cir. 2002) 303 F.3d 959, 971-72.)   It is the essence of protected speech to proclaim one's association or affinity with an organization by wearing or displaying distinctive clothing, words, or images. (Kerik, 356 F.3d at 206 (2d Cir. 2004); Sons of Confederate Veterans, Inc. ex rel. Griffin v. Commission of Virginia Dept. of Motor Vehicles (4th Cir. 2002) 288 F.3d 610, 620.)   Moreover, the display of an image necessarily constitutes protected speech. Such images, whether contained in "paintings, photographs, prints [or] sculptures … always communicate some idea or concept to those who view [them], and as such are entitled to full First Amendment protection." (Bery v. City of New York (2d Cir. 1996) 97 F.3d 689, 696.)

The seizure of expressive materials is a prior restraint on speech. (Fort Wayne Books, Inc. v. Indiana (1989) 489 U.S. 46, 63-64.) The Government's ability to seize property bearing the trademark acts as a prior restraint. Apart from narrow exceptions not present here, the First Amendment prohibits prior restraints on speech. (Johansen for and on Behalf of NLRB v. San Diego County Dist. Council of Carpenters) 745 F.2d 1289, 1294 (9th Cir. 1984) (citing cases).   "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." (Rosenberger v. Rector and Visitors of University of Virginia (1995) 515 U.S. 819, 828.)   In particular, a ban on symbols or images associated with motorcycle clubs is unconstitutional, because "motorcycle enthusiasts are targeted with a regulation that applies to them solely because they choose to communicate the fact of their association with this particular kind of organization." (Sammartano, 303 F.3d at 971-72.)

The First Amendment does not permit restrictions on an individual's speech "merely because an individual belong[s] to a group, some members of which

committed acts of violence." (<u>NAACP v. Claiborne Hardware Co</u>. (1982) 458
U.S. 886, 920; *cf*. <u>Healy v. James</u> (1972) 408 U.S. 169, 186 (First
Amendment rights cannot be infringed based on "guilt by association").    As a
result, "liability could not be imposed consistent with the First Amendment solely
on account of an individual's association with others who have committed acts of
violence; he must have incited or authorized them himself." (<u>Planned Parenthood
of Columbia/Willamette, Inc. v. American Coalition of Life Activists</u> (9th Cir.
2002) 290 F.3d 1058, 1073.) The government may not restrict protected speech of
a person not shown to have committed any unlawful conduct.

     Nor is it any answer to suggest that a person displaying the Marks
necessarily endorses or advocates illegal activity, even assuming that to be the
case. "The mere tendency of speech to encourage unlawful acts is not a sufficient
reason for banning it." (<u>Ashcroft v. Free Speech Coalition</u> (2002) 535 U.S. 234,
253.) A "person's speech ... is not removed from the ambit of First Amendment
protection simply because it advocates an unlawful act." (<u>White v. Lee</u> (9th Cir.
2000) 227 F.3d 1214, 1227.) The First Amendment does not permit government
"to forbid or proscribe advocacy of the use of force or of law violation except
where such advocacy is directed to inciting or producing imminent lawless action
and is likely to incite or produce such action." (<u>Brandenburg v. Ohio</u> (1969) 395
U.S. 444, 447.) Therefore, speech that "merely endorse[s] or encourage[s] the
violent actions of others" is protected by the First Amendment. (<u>Planned
Parenthood</u>, 290 F.3d at 1072.) This principle does not apply "only to political
discourse," and "all expression, advocacy or not," must "meet the Brandenburg
test" before it can be regulated. (<u>James v. Meow Media, Inc</u>. (6th Cir. 2002) 300
F.3d 683, 699.)

     There is no allegation by the government that the existence of the Marks
and their ownership by the Club is likely to incite or produce imminent lawless
action.  Instead, the government is attempting to seize the Marks as a form of

*punishment* for alleged RICO violations.  But such punishment is prohibited by the First Amendment because it is a prior restraint on speech as applied to the Club as an entity and its' members as individuals. (Brandenburg,395 U.S. at 447; White, 227 F.3d at 1227; Fort Wayne Books, 489 U.S. at 63-64; Sammartano, 303 F.3d at 971-72; St. Paul, 505 U.S. at 391-392.)

**IV**

**THE GOVERNMENT'S FORFEITURE REQUEST CONSTITUTES VIOLATES THE FIFTH AMENDMENT BY DEPRIVING DEFENDANT OF PROPERTY WITHOUT DUE PROCESS OF LAW**

The government seeks to seize the Club's property for the actions of individuals as described in the indictment.  (Indictment at 28-35.)  It follows that the government is justifying the seizure based on convictions of which defendant was not associated.  (Ibid.)  Thus, the government is attempting to punish defendant for prior convictions against non-parties that defendant had *no opportunity to defend* against.  (Ibid.)  This violates the Fifth Amendment's protection against deprivation of property without due process of law.  (U.S. CONST. 5TH AMEND.)  The  purpose of the Fifth Amendment is to limit power of legislature, as well as of prosecuting officers of the United States. (Ex parte Wilson (1885) 114 US 417.)   The Fifth Amendment due process clause extends protection to any significant property interest, to property rights less substantial than full legal title, whether they come from private contract or state law; even mere arguable right of possession constitutes property. (Federal Deposit Ins. Corp. v Morrison (11th Cir. 1984) 747 F2d 610.)   The government is attempting to seize the Marks—property owned by defendant—under RICO but RICO does grant sufficient jurisdiction. (Sections II-III, *supra*.)   Consequently, the government is violating defendant's due process rights and the indictment should be dismissed.

1

## V

2  ### SEVERAL ALLEGATIONS IN THE INDICTMENT ARE BARRED BY THE RICO

3  ### STATUTE OF LIMITATIONS

4   The government filed the indictment on February 13, 2013. (Dckt. # 1.)

5  Any violations alleged to have occurred before February 13, 2009 are barred by

6  the five year statute of limitations.  (See, Indictment at 28-30 (alleging dozens of

7  violations from 2002-2008).)  The Court should rule that the government is barred

8  from pursuing any of the allegations in that time period.  (See, United States v.

9  Darden (8th Cir. 1995) 70 F.3d 1507, 1525; United States v. Salerno (2d Cir.

10  1989) 868 F.2d 524, 534.)

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

# VI
## CONCLUSION

The government has overreached in its vendetta to seize the collective marks from the Club.  In so doing, the government has recklessly violated the First Amendment and acted in excess of the jurisdiction granted under RICO.  The government's carefully crafted indictment cannot change the *in personam* nature of RICO forfeiture.  The government has wrongly charged defendant for the alleged violations of individuals acting outside of their scope of membership with the Club.  Even if the allegations were accurate, a successful prosecution would not permit the government the forfeiture it requests.  Because the sole objective of the indictment is to gain forfeiture of the Marks, but this purpose is barred by the nature of RICO itself and the First Amendment, the Court should dismiss the action entirely.

Respectfully submitted,

Dated   September 12, 2013          */s/Bob Bernstein*_____
                                    Bob Bernstein, Esq.
                                    BERNSTEIN LAW OFFICE, INC.
                                    *Attorneys for David Santillan*