NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
CHRISTOPHER BRUNWIN (California State Bar Number 158939)
Assistant United States Attorney
Senior Litigation Counsel
Violent and Organized Crime Section
STEVEN R. WELK (California State Bar Number 149883)
Assistant United States Attorney
Chief, Asset Forfeiture Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-4242/6166
    Facsimile:  (213) 894-3713
    E-mail:     Christopher.Brunwin@usdoj.gov
           Steven.r.welk@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>           v.<br><br>MONGOL NATION,<br>An unincorporated association,<br><br>      Defendant | No. CR 13-106(A)-DOC<br><br>UNITED STATES' TRIAL BRIEF<br><br>Trial Date: June 26, 2018<br>Time:     8:30 a.m.<br>Place:    Courtroom of the<br>         Hon. David O. Carter |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby files its Trial Memorandum for the above-captioned case.

1

## I.   <u>CASE STATUS</u>

Jury trial is set for June 26, 2018, at 8:30 a.m., before the Honorable United States District Judge David O. Carter.  The United States estimates that it will use approximately 8 weeks to present its case-in-chief, depending on the length of cross-examination. The parties have prepared and submitted stipulations for the identification and quantities of controlled substances seized in the investigation and death and the causes therefor.  Absent additional evidentiary stipulations, the government anticipates that it will call approximately 96 witnesses at trial.

Defendant is the unincorporated association of Mongols gang members and is proceeding to trial.  Trial by jury has not been waived.

## II.   <u>APPLICABLE STATUTES</u>

The First Superseding Indictment charges violations of the racketeering statute in two counts.  Count One charges the defendant with racketeering, in violation of Title 18 of the United States Code, Section 1962(c).  Count Two charges the defendant with having conspired to commit racketeering offenses, in violation of Title 18 of the United States Code, Section 1962(d).  The Indictment also includes a forfeiture allegation, pursuant to Title 18 of the United States Code, Section 1963.

A true and correct copy of the First Superseding Indictment appears at item 169 on the court docket.

The federal statutes, applicable to the charged offenses are set forth as follows:

2

**A.   TITLE 18, UNITED STATES CODE, SECTION 1962(C): RACKETEERING**

Count One charges the violation of the RICO statute, Title 18 of the United States Code, Section 1962(c).  Section 1962(c) of Title 18 of the United States Code provides:

> It shall be unlawful for any person employed by or associated with any enterprise engage in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

The First Superseding Indictment sets forth that defendant Mongol Nation, an unincorporated association of full-patched members of the Mongols Gang, conducted and participated with others in the conduct of the affairs of the enterprise.  Hence, Count One charges the defendant Mongol Nation with violating the RICO statute by being members or associates of the enterprise and conducting or participating in its affairs through a pattern of racketeering activity.  See 18 U.S.C. § 1962(c).  The offense charged in Count One will be established based on proof that: (1) there was an enterprise which consisted of persons who associated together for a common purpose; (2) defendant was employed by or associated with the enterprise; (3) defendant conducted or participated, either directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity or the collection of an unlawful debt; and (4) the enterprise engaged in, or its activities in some way affected

3

commerce between one state and another, or between the United States and a foreign country.

The First Superseding Indictment also sets forth Eleven (11) racketeering acts as part of the defendant Mongol Nation's participation in the pattern of racketeering activity.  These include having conspired to distribute cocaine and methamphetamine, in violation of Sections 841(a)(1) and 846 of Title 21 of the United States Code (Racketeering Act One); attempted murder, in violation of California Penal Code Sections 187 and 664 (Racketeering Acts Two, Five, and Six); distribution of methamphetamine, in violation of Title 21 of the United States Code, Section 841(a)(1) (Racketeering Acts Three, Seven, and Eight); and murder, in violation of California Penal Code Section 187 (Racketeering Acts Four, Nine, Ten, and Eleven).

### B.    TITLE 18, UNITED STATES CODE, SECTION 1962(D): CONSPIRACY TO COMMIT RACKETEERING

Section 1962(d) of Title 18 to the United States Code provides:

> It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(d).

Count Two, therefore, charges that the full-patched members who comprise defendant Mongol Nation conspired with others to violate Title 18 of the United States Code, Section 1962(c).  The conspiracy to commit racketeering offenses is established on proof that defendant Mongol Nation conspired with others to commit racketeering violations.  *See* Section IV(A)(4), herein.

4

### III. **STATEMENT OF FACTS**

Consistent with the allegations set forth in the First Superseding Indictment, the evidence at trial will establish that the defendant Mongol Nation is comprised of the "full-patched" members of the Mongols Gang.  The Mongols Gang is a violent, drug trafficking organization that advocates and rewards its members and associates for committing violent crimes, including, and specifically, assaults and murders, on behalf of the gang and in order to promote what the gang terms "respect."  The evidence at trial will largely be comprised of recorded statements from members and officers of the defendant organization, documents and official items of the organization, and testimony of law enforcement officers who successfully infiltrated the organization and incorporated into as "full-patched" members and officers of the defendant organization.  The government will also present evidence of specific assaults, murders, and narcotics distribution by members and associates of the defendant organization.

With its leaders, full-patched members, prospective and probationary members, and associates, the Mongols Gang constituted an enterprise that conducted and participated in the commission of numerous racketeering crimes, including numerous murders, attempted murders, narcotics trafficking, and assaults.  The Mongols Gang is a highly structured organization, with elaborate and detailed rules for its members and associates.  The gang maintains a written "constitution," by-laws, protocols and a specific "Simple Protocol" to direct the conduct the conduct of its members.  These included

directions that members should never testify adversely against another Mongols member, never provide information to law enforcement that could cause another Mongol to go to jail, and always carry themselves "as though we are at war."  The gang encourages violent crimes as a means to enhance the reputation and "respect" for the gang and rewards its members for assaults and murders committed on behalf of the Mongols Gang.

The evidence will show that the defendant Mongols Nation has conspired with other non-patched members, "prospects," "hang-arounds," "wrecking crews," and associates of the Mongols Gang to conduct and participate in racketeering crimes.  The evidence will also show that members and associates of the organization distributed narcotics on a constant basis, during the relevant time period.  As stated, defendant Mongol Nation also encouraged and rewarded members and associates to engage in acts of violence on behalf of the organization, and, as a result, members and associates of the Mongols Gang committed multiple racketeering crimes, including narcotics distribution, attempted murders, and murders as part of the criminal enterprise.

**IV.  APPLICABLE LAW**

**A.   ELEMENTS OF THE CHARGED OFFENSES**

The essential elements of the charged offenses are as set forth in the United States' Proposed Jury Instructions.  The United States submits the following authority to address the law of conspiracy as pertinent any arguments which may be raised at trial.

6

**1. OVERT ACTS OF THE CONSPIRACY**

The government need not prove an overt act was committed to prove that the conspiracy existed. *United States v. Shabani*, 513 U.S. 10, 15 (1994); *see also*, *United States v. Montgomery*, 113 F.3d 1022 (9th Cir. 1997). Conversely, while the government is not required to prove an overt act in furtherance of the conspiracy, the Supreme Court has recognized that evidence of avert acts is still admissible at trial, because it "tend[s] to show the criminal agreement for the conspiracy." *Shabani*, 513 U.S. at 13. The overt act need not be criminal, in and of itself, because its evidentiary function is to demonstrate that the conspiracy is operative. *United States v. Tuohey*, 867 F.2d 534, 537 (9th Cir. 1989); *United States v. Andreen*, 628 F.2d 1236, 1248 (9th Cir. 1980); *United States v. Buckner*, 610 F.2d 570, 573 (9th Cir. 1979).

**2. KNOWLEDGE AND INVOLVEMENT IN THE CONSPIRACY**

A conspiracy is an agreement to commit a crime. See Ninth Circuit Model Jury Instruction 8.16. It is not necessary to show that the crime itself was in fact committed. Id. The government must show that the defendant agreed with at least one other person to commit the crime charged. *United States v. Reese*, 775 F.2d 1066, 1071 (9th Cir. 1985); *United States v. Murray*, 751 F.2d 1529, 1534 (9th Cir. 1985). The government is not required to prove that every person alleged to have been a member of the conspiracy actually participated in it, or that all members of the conspiracy knew or were aware of all other members of the conspiracy or acts committed in furtherance of the conspiracy. *United States v. Taren-Palma*, 997

7

F.2d 525, 530 (9th Cir. 1993).  A single conspiracy may exist even though each defendant plays a different role in it.  *United States v. Burresoh*, 643 F.2d 1344, 1348 (9th Cir. 1981); *United States v. Camacho*, 528 F.2d 464, 470 (9th Cir. 1976).  Each defendant also need not participate in all of the overt acts in a conspiracy.  Id.  Once a conspiracy is proven, evidence establishing the defendant's connections to that conspiracy – even if the connection is slight – is sufficient to convict him of knowingly participating in the conspiracy.  *United States v. Stauffer*, 922 F.2d 508, 514-15 (9th Cir. 1990); *United States v. Guzman*, 849 F.2d 447, 448 (9th Cir. 1988).

A defendant is vicariously liable for the substantive acts of his co-conspirators whether or not he directly participates in such acts, so long as those acts are committed in furtherance of the conspiracy and the substantive offense fell within the scope of the unlawful project and could reasonably have been foreseen as a necessary or natural consequence of the unlawful agreement.  *United States v. Thomas*, 887 F.2d 1341, 1345 (9th Cir. 1989); *United States v. Douglass*, 780 F.2d 1472, 1475-76 (9th Cir. 1986).  A conspirator who joins a pre-existing conspiracy is bound by all that has gone on before in the conspiracy.  *United States v. Saavedra*, 684 F.2d 1293, 1301 (9th Cir. 1982); *United States v. Traylor*, 656 F.2d 1326, 1337 (9th Cir. 1981).

A defendant can be guilty of conspiracy even if he does not realize benefits directly from the underlying offenses, but instead

conspires to benefit others and only indirectly benefits himself. *United States v. Carruth*, 699 F.2d 1017, 1021 (9th Cir. 1983).

### 3. PROOF OF THE CONSPIRACY

The government need not show direct contact or explicit agreement among all of the alleged co-conspirators. *United States v. Thomas*, 887 F.2d 1341, 1347 (9th Cir. 1989); *United States v. Reese*, 775 F.2d 1066, 1071 (9th Cir. 1985). The government may prove a conspiracy by circumstantial evidence that the defendants acted together in furtherance of a common goal. *United States v. Kiriki*, 756 F.2d 1449, 1453 (9th Cir. 1985); *United States v. Murray*, 751 F.2d 1528, 1534 (9th Cir. 1985); *United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir. 1984); *United States v. Thomas*, 887 F.2d 1341, 1347 (9th Cir. 1989).

### 4. RICO CONSPIRACY

Consistent with the law of conspiracy, the government is not required to prove that the alleged racketeering enterprise was actually established, that the defendant was actually associated with the enterprise, or that the enterprise or its activities actually affected interstate commerce. Because the agreement to commit a racketeering offense is itself the crime, the government need only prove the existence of the illegal agreement and that, if the agreement were to achieve its goals, as contemplated, the enterprise would be established, the defendant would be associated with it, and its activities would have affected interstate commerce. *Salinas v. United States*, 552 U.S. 52, 65 (1997).

Additionally, the government need not prove that the individual members of the enterprise each agreed to commit two or more racketeering acts or themselves participated in the commission of the racketeering crimes. *Salinas*, 552 U.S. at 63. The government must prove only that the particular defendant agreed that, at some point during the life of the conspiracy, a member of the conspiracy would commit at least two related acts of racketeering, with the jury being unanimous about what type or types of racketeering activity the defendant agreed would be committed. 552 U.S. at 62-65.

The Supreme Court, thus, stated:

> A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objective (here the operation of the RICO enterprise) and may divide up the work, yet each is responsible for the acts of each other. *See, Pinkerton v. United States*, 328 U.S. 640 (1946). If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.

> A conspiracy must intend to further an endeavor which, if completed, would satisfy all the elements of a substantive criminal offense, but it suffices that he adopted the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion.

*Salinas*, 552 U.S. at 62-65.

Finally, while proof of the substantive racketeering offense requires proof that the defendant participated in the operation or management of the enterprise, such proof is not required as proof of

1   the racketeering conspiracy offense.  Instead, the government must

2   prove that the defendant knowingly agreed to facilitate a scheme

3   which, if completed, would constitute a racketeering violation

4   involving at least one conspirator who would participate in the

5   operation or management of the enterprise.  *United States v.*

6   *Fernandez*, 388 F.3d 119, 1230 (9th Cir. 2004)(holding "a defendant

7   is guilty of conspiracy to violate 1962(c) if the evidence showed

8   that she knowingly agree[d] to facilitate a scheme which includes

9   the operation or management of a RICO enterprise."); *see also,*

10  *United States v. Nguyen*, 255 F.3d 1335 (11th Cir. 2001).

## 5.   CO-CONSPIRATOR STATEMENTS

12       The Federal Rules of Evidence provide that statements made by a

13  co-conspirator during the course of and in furtherance of the

14  conspiracy may be used at trial against another co-conspirator,

15  because such statements are not hearsay.  Fed. R. Evid.

16  801(d)(2)(E).  Admissibility under Rule 801 (d)(2)(E) is based on a

17  foundation that: (1) the statement was made during the life of the

18  conspiracy; (2) the statement was made in furtherance of the

19  conspiracy; and (3) there is, including the co-conspirator's

20  statement itself, sufficient proof of the existence of the

21  conspiracy and the defendant's connection to it.  *Bourjaily v.*

22  *United States*, 483 U.S. 171, 173, 181 (1987).  Statements of an

23  unindicted co-conspirator made in furtherance of the conspiracy are

24  admissible against a charged conspirator.  *United States v. Nixon,*

25  418 U.S. 683, 701 (1974); *United States v. Williams*, 989 F.2d 1061,

26  1067 (9th Cir. 1993).  The defendant need not be present at the time

27

28

the co-conspirator made the statement.  *Sendejas v. United States*, 428 F.2d 1040, 1045 (9th Cir. 1970).  Statements made with the intent to further the conspiracy are admissible, whether or not they actually result in any benefit to the conspiracy.  *Williams*, 989 F.2d at 1068; *United States v. Schmit*, 881 F.2d 608, 612 (9th Cir. 1989); *United States v. Zavala-Serra*, 853 F.2d 1512, 1516 (9th Cir. 1988).

Co-conspirator statements also need not be made to a member of the conspiracy in order to be admissible under Federal Rule 801(d)(2)(E).  *Zavala-Serra*, 853 F.2d at 1516.  Co-conspirator statements can be made to government informants and undercover agents.  *Id.; United States v. Tille*, 729 F.2d 615, 620 (9th Cir. 1984); *United States v. Echeverry*, 759 F.2d 1451, 1457 (9th Cir. 1985).  The co-conspirator statement also need not have been made exclusively, or even primarily, to further the conspiracy. *Garlington v. O'Leary*, 879 F.2d 277, 284 (7th Cir. 1989).

### 6. ADMISSIONS BY PARTY-OPPONENT

Rule 801(d)(2) provides that an admission by a party opponent is not hearsay when the statement is offered against a party and the statement is "(A) the party's own statement, in either an individual or a representative capacity or … (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement of the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."  Fed. R. Evid. 801(d)(2).  The Rule

further provides that the contents of the statement are considered to establish the basis for admissibility under the Rule.  *Id.*

### 7.  PRIOR STATEMENT BY WITNESS

Rule 801(d)(1) also provides that a prior statement by a witness is not hearsay, if the witness has testified, been subject to cross-examination, and the prior statement is either inconsistent with the witness' testimony or is consistent with the witness' testimony but offered to rebut an express or implied claim that the witness has not testified truthfully.  Fed. R. Evid. 801(d)(1).  A prior statement of identification is also admissible, pursuant to subsection (C) of Rule 801(d)(1).  *Id.*

### 8.  DEFENDANT CANNOT INTRODUCE ITS OWN STATEMENTS

A defendant is not permitted to elicit its own prior statements at trial, pursuant to Rule 801(d)(2)(A).  *United States v. Lopez-Figueroa*, 316 Fed. Appx. 548, 550 (9th Cir. 2008)(unpublished); *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000).  The "rule of completeness" does not entitle a defendant to elicit his own inadmissible hearsay statements.  203 F.3d at 682.

The same is true of co-conspirator statements.  They are not admissible, if offered by the co-conspirator defendant.  *United States v. Hackett*, 638 F.2d 1179 (9th Cir. 1980) (statement of co-conspirator excluded as inadmissible hearsay when offered by defendant).

13

### B.   LEGAL ISSUES RELATED TO TITLE 21 OFFENSES

The government submits the following authority as material to arguments which may be raised at trial concerning the described Title 21 offenses.

#### 1.   POSSESSION

Possession may be actual or constructive, and may be proved by direct or circumstantial evidence. *United States v. Grayson*, 597 F.2d 1225, 1229 (9th Cir. 1979). A defendant who engages in a joint effort to possess drugs may be found to have jointly possessed the drugs, because the jury can infer that the defendant had both knowledge of and control over the contraband in the possession of a companion. *United States v. Dupuy*, 760 F.2d 1492, 1500 (9th Cir. 1985). Custody, management or control of a container in which a controlled substance is concealed may constitute circumstantial evidence from which possession and knowledge may be inferred. *United States v. Campbell*, 507 F.2d 955, 957-58 (9th Cir. 1974).

#### 2.   KNOWLEDGE

Mere possession of a substantial quantity of illegal drugs is sufficient evidence to support a finding that a defendant knowingly possessed the illegal drugs. *United States v. Barbosa*, 906 F.2d 1366, 1368 (9th Cir. 1990); *United States v. Collins*, 764 F.2d 647, 652 (9th Cir. 1985) (possession of eight pounds of cocaine found to be substantial enough quantity to support inference that defendant knowingly possessed cocaine); *United States v. Mora*, 876 F.2d 76, 77-78 (9th Cir. 1989) (387.6 grams of heroin sufficient to raise inference).

14

1   Where a defendant is aware of acts indicating a high
2   probability of illegality, but purposely fails to investigate or
3   tries to avoid learning all the facts because he wants to remain
4   ignorant, it may be inferred that he has the knowledge that his
5   conduct was illegal. *United States v. McAllister*, 747 F.2d 1273,
6   1275-76 (9th Cir. 1986).

7   **C.   NARCOTICS TERMINOLOGY**

8   A participant in a narcotics-related conversation can properly
9   testify regarding his understanding of statements made to him by the
10   defendant. *United States v. Brooks*, 473 F.2d 817, 818 (9th Cir.
11   1973). A participant in a narcotics-related conversation can also
12   testify about the meaning of coded language used in the
13   conversation. *United States v. Estrada*, 39 F.3d 772, 773 (7th Cir.
14   1994). A lay witness can also offer opinion evidence concerning his
15   or her understanding of a conversation where the opinion is
16   rationally based on the perception of the witness and it is helpful
17   to understand the witness' testimony or to determine a fact in
18   issue. Fed. R. Evid. 701. A lay witness can, therefore, testify
19   concerning the meaning of coded language, if the witness has
20   personal knowledge of the subject being discussed and the persons
21   involved. *United States v. Saulter*, 60 F.3d 270, 276 (7th Cir.
22   1995).

23   **D.   TESTIMONY REGARDING NARCOTICS TRAFFICKING**

24   A qualified expert witness can provide opinion testimony on an
25   issue in question where specialized knowledge will assist the trier
26   of fact in understanding the evidence or determining a fact in

27
28

issue.  Fed. R. Evid. 702.  Expert opinion testimony may be based on hearsay or facts not in evidence where the facts or data relied on are of the type reasonably relied on by experts in the field.  Fed. R. Evid. 703.  An expert may also provide opinion testimony, even if it embraces an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704.

Government agents can testify about the general practice of criminals in order to establish the defendant's *modus operandi*. Such evidence informs the jury that a combination of seemingly innocuous events may actually reveal criminal behavior.  *United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir. 1984).  Agents may also provide opinion testimony that the defendant's conduct match "the usual criminal modus operandi." *United States v. Simas*, 937 F.2d 459, 465 (9th Cir. 1991), *quoting United States v. Espinosa*, 827 F.2d 604, 611-13 (9th Cir. 1987).  An experienced narcotics agent may testify in the form of an opinion even if that opinion is based in part on information from other agents familiar with the issue.  *United States v. Beltran-Rios*, 878 F.2d 1208, 1213, n.3 (9th Cir. 1989); *United States v. Golden*, 532 F.2d 1244, 1248 (9th Cir. 1976).

Courts have admitted expert opinion testimony by law enforcement officers and federal agents on a number of issues, including:

1.  A defendant's role as a "lookout" in a narcotics conspiracy.  *United States v. Fleishman*, 684 F.2d 1329, 1335 (9th Cir. 1982);

2.   The price of a controlled substance in the relevant market. *Golden*, 532 F.2d at 1247-48;

3.   Defendant's apparent attempt to avoid surveillance while driving. *United States v. Anderson*, 813 F.2d at 1458 (9th Cir. 1987); *United States v. Stewart*, 770 F.2d 825, 831 (9th Cir. 1985); *United States v. Maher*, 645 F.2d 780, 783-84 (9th Cir. 1981) (*per curiam*);

4.   Common practice for drug traffickers to register cars and apartments in names of third parties. *United States v. Daniels*, 723 F.2d 31, 32-33 (8th Cir. 1983); *see also, Stewart*, 770 F.2d at 831;

5.   The various roles played by the defendants in a drug trafficking conspiracy. *United States v. Theodoropoulos*, 866 F.2d 587, 591 (3d Cir. 1989); *United States v. Kinsey*, 843 F.2d 383, 387-89 (9th Cir. 1988);

6.   The true meaning of code words used by members of a drug trafficking conspiracy. *United States v. Plunk*, 153 F.3d 1011, 1017 (9th Cir.), *amended*, 161 F.3d 1195 (9th Cir. 1998); *United States v. Briscoe*, 896 F.2d 1476, 1497 (7th Cir. 1990) (allowing agent to testify about use of various code words, including "it" to mean drugs); *Theodoropoulos*, 866 F.2d at 592; *United States v. Bailey*, 607 F.2d 237, 240 (9th Cir. 1979);

7.   That a transaction on street corner appeared to be a drug transaction. *United States v. Carson*, 702 F.2d 351, 369-70 (2d Cir.1983); *see also, United States v. Stewart*, 770 F.2d 825, 831 (9th Cir. 1985);

17

8.   That (1) a defendant was using a particular apartment as a "stash pad" for money and narcotics; (2) that "pay and owe" ledgers found in the apartment contained the names of the defendant's cocaine buyers, and (3) that a particular exchange of packages was an exchange of narcotics for money.  *United States v. Espinosa*, 827 F.2d 604, 611-12 (9th Cir. 1987);

9.   That only persons intimately involved with a narcotics packaging operation are usually allowed at the packaging site. *United States v. Lockett*, 919 F.2d 585, 590-91 (9th Cir. 1990).

**E.   CHAIN OF CUSTODY**

The test of admissibility of physical objects connected with the commission of a crime requires a showing that the object is in substantially the same condition as when the crime was committed (or the object seized).  Factors to be considered are the nature of the article, the circumstances surrounding its preservation and custody and the likelihood of inter-meddlers tampering with it.  There is, however, a presumption of regularity in the handling of exhibits by public officials.  *United States v. Kaiser*, 660 F.2d 724, 733 (9th Cir. 1981); *overruled on other grounds, United States v. De Bright*, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc).

The government is not required, in establishing chain of custody, to call all persons who may have come into contact with the piece of evidence.  *Reyes v. United States*, 383 F.2d 734 (9th Cir. 1967); *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960). The district court may admit physical evidence if there is a "reasonable probability the article has not been changed in

18

important respects." *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991); *quoting, Gallego*, 276 F.2d at 197.

### F.   EVIDENCE OF DRUG-TRAFFICKING ACTIVITY

Where testimony concerning other drug dealings is closely related to the offense charged and is otherwise relevant under Rules 404(b) and 403, the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice.  See *United States v. Guerrero*, 756 F.2d 1342, 1348 (9th Cir. 1984).

### G.   USE OF COPIES

The Federal Rules provide that a duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) under the circumstances, it would be unfair to admit the duplicate instead of the original.  Fed. R. Evid. 103.

### H.   TRANSCRIPTIONS OF RECORDED CONVERSATIONS

The government will present evidence at trial in the form of monitored audio and video recordings and consensually-recorded telephone conversations.  The conversations are in English, and the government has prepared transcriptions of the recordings to assist the jury in reviewing the recorded conversations.

The parties have discussed proposed stipulations for the authenticity of the recorded statements, and defendant has stated that it will agree to the authenticity of the recorded statements. Absent such stipulations, the government will offer testimony to establish the authenticity and admissibility of the recordings.  The government will play the recorded conversations while the jurors are

1    directed to read the transcripts.  Witnesses will then offer

2    testimony regarding the circumstances of the conversations.

3         The foundation that must be laid for the introduction into

4    evidence of recorded conversations is a matter largely within the

5    discretion of the trial court.  There is no rigid set of

6    foundational requirements.  Rather, the Ninth Circuit has held that

7    recordings are sufficiently authenticated under Federal Rule of

8    Evidence 901(a) if sufficient proof has been introduced "so that a

9    reasonable juror could find in favor of authenticity or

10   identification," which can be done by "proving a connection between

11   the evidence and the party against whom the evidence is admitted"

12   and can be done by both direct and circumstantial evidence.  United

13   States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir.

14   1995)(citations and internal quotations omitted), modified by 98

15   F.3d 1100 (9th Cir. 1996).

16        Because they are in English, the recordings in this case are

17   the evidence.  The transcript may be provided to the jury in open

18   court as an aid in following the conversation.  United States v.

19   Chen, 754 F.2d 817, 824 (9th Cir. 1985); United States v. Phillips,

20   577 F.2d 495, 501-02 (9th Cir. 1978).

21        A person who monitored the conversation can testify as to the

22   contents of the conversation, notwithstanding the fact that the

23   conversation was recorded.  *United States v. Gonzales-Benitez*, 537

24   F.2d 1051, 1053-54 (9th Cir. 1976); *United States v. DePew*, 932 F.2d

25   324, 327 (4th Cir. 1991).

26

27
                                      20
28

The recordings contain out-of-court statements by members of the defendant organization, co-conspirators and the informant.  As previously discussed, Federal Rule of Evidence 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c). However, statements by a party opponent are admissible non-hearsay, as are statements which are not being admitted for the truth of the matter asserted but rather to show the effect on the person who heard the statement.  Fed. R. Evid. 801(c), (d)(2)(A).

Moreover, as stated, under the Federal Rules of Evidence, a defendant's statement is admissible only if offered against him. Hence, a defendant may not elicit his own prior statements.  Fed. R. Evid. 801(d)(2)(A); United States v. Fernandez, 839 F.2d 639 (9th Cir. 1988).  When the government admits a portion of a defendant's prior statement, the defendant may not put in additional out-of-court statements by him because such statements are hearsay when offered by the defendant.  Fed. R. Evid. 801(d)(2); Fernandez, 839 F.2d at 640; United States v. Ortega, 203 F.3d 675, 681-2 (9th Cir. 2000) (defendant prohibited from eliciting his own exculpatory statements during cross examination of government agent).

The "rule of completeness" set forth in Federal Rule of Evidence 106 is applicable where one party seeks to introduce a misleadingly tailored snippet of a statement that creates a misleading impression by being taken out of context.  It is entirely proper, however, to admit segments of a statement or of a telephone

21

call without including everything, and adverse parties are not entitled to offer additional statements just because they are there and the proponent has not offered them. United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996). Rule 106 does not render admissible evidence which is otherwise inadmissible under the hearsay rules. Id.

## H. AUTHENTICATION AND IDENTIFICATION

### 1. PHYSICAL EVIDENCE

Federal Rule of Evidence 901(a) provides that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a) only requires the government to make a prima facie showing of authenticity or identification "so that a reasonable juror could find in favor of authenticity or identification." United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991); United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989). Once the government meets this burden, "the credibility or probative force of the evidence offered is, ultimately, an issue for the jury." United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).

To be admitted into evidence, a physical exhibit must be in substantially the same condition as when the crime was committed. Fed. R. Evid. 901. The Court may admit the evidence if there is a "reasonable probability the article has not been changed in important respects." United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991). This determination is to be made by the trial

1    judge and will not be overturned except for clear abuse of

2    discretion.   Factors the Court may consider in making this

3    determination include the nature of the item, the circumstances

4    surrounding its preservation, and the likelihood of intermeddlers

5    having tampered with it.   Gallego v. United States, 276 F.2d 914,

6    917 (9th Cir. 1960).

7        In establishing chain of custody as to an item of physical

8    evidence, the government is not required to call all persons who may

9    have come into contact with the piece of evidence.   Harrington, 923

10    F.2d at 1374.   Moreover, a presumption of regularity exists in the

11    handling of exhibits by public officials.   Id.   Therefore, to the

12    extent that alleged or actual gaps in the chain of custody exist,

13    such gaps go to the weight of the evidence rather than to its

14    admissibility.   Id.

15             **2.   VIDEO AND PHOTOGRAPHS**

16        Video or photographic evidence may be authenticated by a

17    witness who "identif[ies] the scene itself [in the photograph] and

18    its coordinates in time and place."   See Lucero v. Stewart, 892 F.2d

19    52, 55 (9th Cir. 1989) (internal quotation marks omitted).

20    Photographs are generally admissible as evidence.   See United States

21    v. Stearns, 550 F.2d 1167, 1171 (9th Cir. 1977) (photographs of

22    crime scene admissible).   Photographs should be admitted so long as

23    they fairly and accurately represent the event or object in

24    question.   United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir.

25    1978).   Also, "[p]hotographs are admissible as substantive as well

26

27                               23

28

as illustrative evidence." <u>United States v. May</u>, 622 F.2d 1000, 1007 (9th Cir. 1980).

### A.   OPINION TESTIMONY OF GOVERNMENT AGENTS

An experienced government agent may provide opinion testimony even if that opinion is based in part on information from other agents familiar with the issue. <u>United States v. Andressan</u>, 813 F.2d 1450, 1458 (9th Cir. 1987); <u>United States v. Golden</u>, 532 F.2d 1244, 1248 (9th Cir. 1976). An experienced government agent may testify as to his opinions and impressions of what he observed. As the court in <u>United States v. Skeet</u>, 665 F.2d 983, 985 (9th Cir. 1982), stated:

> Opinions of non-experts may be admitted where the facts could not otherwise be adequately presented or described to the jury in such a way as to enable the jury to form an opinion or reach an intelligent conclusion. If it is impossible or difficult to reproduce the data observed by the witnesses, or the facts are difficult of explanation, or complex, or are of a combination of circumstances and appearances which cannot be adequately described and presented with the force and clearness as they appeared to the witness, the witness may state his impressions and opinions based upon what he observed.

Ultimately, opinion testimony by non-experts is "a means of conveying to the jury what the witness has seen or heard." <u>Id.</u>

### B.   EXPERT TESTIMONY

#### 1.   APPLICABLE LAW

If specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue

in question.  Fed. R. Evid. 702; See United States v. Hankey, 203

F.3d 1160, 1168 (9th Cir. 2000).

Expert opinion may be based on hearsay or facts not in

evidence, where the facts or data relied upon are of the type

reasonably relied upon by experts in the field.  Fed. R. Evid. 703.

An expert may also provide opinion testimony even if it embraces an

ultimate issue to be decided by the trier of fact.  Fed. R. Evid.

704.

Though not required, the United States has notified defense

counsel that it will offer testimony from United States Bureau of

Alcohol, Tobacco, Firearms, and Explosives Special Agent Darrin

Kozlowski regarding topics related to the crimes of the defendant

and the Mongols Gang.  In addition, other law enforcement officers

may also be called upon to offer testimony concerning their

observations and opinions of the events involved in the

investigation of this matter, including testimony concerning the

crimes of the defendant and the Mongols Gang, the methodology and

terminology used by methamphetamine traffickers engaged in the

distribution of methamphetamine, the prices commonly charged for

methamphetamine in various quantities, the use of coded language and

the meaning of terms commonly used by methamphetamine traffickers to

refer to methamphetamine and methamphetamine of different purity

levels.  Such testimony is permissible under the Federal Rules.  See

United States v. Anchrum, 590 F.3d 795, 804-805 (9th Cir. 2009);

United States v. Martinez, 657 F.3d 811, 817 (9th Cir. 2011); United

States v. Murillo, 255 F.3d 1169, 1176 (9th Cir. 2001)(expert

25

permitted to testify about the value of drugs found in defendant's rental car, number of doses that such an amount constituted, modus operandi of drug couriers, and whether traffickers entrust large quantities of drugs to unknowing transporters), overruled on other grounds; United States v. Gonzalez, 528 F.3d 1207, 1214 (9th Cir. 2008)(discussing expert testimony regarding distribution amount of marijuana); United States v. Espinosa, 827 F.2d 604, 611-613 (9th Cir. 1987)(upholding a district court's decision to admit expert testimony as to a location's use as a "stash pad" for money and narcotics and that exchanges seen were exchanges of drugs for money); see generally, United States v. Alonso, 48 F.3d 1536, 1541 (9th Cir. 1995)(citing cases); United States v. Golden, 532 F.2d 1244, 1247-48 (9th Cir. 1976)( An experienced narcotics agent may testify in the form of an opinion even if that opinion is based in part on information from other agents familiar with the issue).

The United States has also produced reports concerning the identification of narcotics seized, medical, and cause of death reports.  The parties have submitted stipulations to preclude the need to call some witnesses at trial.

Defendant has not identified any expert testimony it would offer at trial.

**C.   CROSS EXAMINATION OF DEFENDANT**

A defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony.  See, e.g., Fitzpatrick v. United States, 178 U.S.

26

304 (1971) ("The defendant cannot assert a self-incrimination privilege 'on matters reasonably related to the subject matter of his cross-examination.'"); McGautha v. California, 402 U.S. 183, 215 (1971), vacated in part on other grounds, 408 U.S. 941 (1972).  The scope of a defendant's waiver is co-extensive with the scope of relevant cross-examination.  United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver.  Rather, the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony.").

### D.   RECIPROCAL DISCOVERY

The government has requested reciprocal discovery from the defense on multiple occasions.  Defendant has provided a transcription of the trial testimony of Mongols member Christopher Ablett and various documents which appear to relate to a recent incorporation effort and trademark registration.  Defendant has not provided any witness list or identified any expert testimony.

To the extent that there exists reciprocal discovery to which the government is entitled under Federal Rules of Criminal Procedure 12.1, 12.2, 16(b), or 26.2 that the defense has not produced, the government reserves the right to seek to have such materials excluded at trial.  See United States v. Young, 248 F.3d 260, 269-70 (4th Cir. 2001) (upholding exclusion under Rule 16 of audiotape evidence defendant did not produce in pretrial discovery where

defendant sought to introduce audiotape on cross-examination of government witness not for impeachment purposes, but as substantive "evidence in chief" that someone else committed the crime).

**F.   POTENTIAL REBUTTAL EVIDENCE**

Government counsel has advised defendant that the government will present rebuttal evidence, depending on the arguments or assertions made by the defendant at trial.  Rebuttal evidence would include evidence to refute false assertions by the defendant.

**E.   AFFIRMATIVE DEFENSES**

Defendant has not given notice of any intention to rely on any defense of entrapment, mental incapacity, duress, or alibi. Therefore, to the extent defendant may attempt to rely on any such defense, the government reserves the right to object and to seek to have defendant precluded from asserting such defenses.


Dated: June 17, 2018            Respectfully submitted,

                                NICOLA T. HANNA
                                United States Attorney

                                LAWRENCE S. MIDDLETON
                                Assistant United States Attorney
                                Chief, Criminal Division


                                  /s/Christopher Brunwin
                                CHRISTOPHER BRUNWIN
                                STEVEN R. WELK
                                Assistant United States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA