Joseph A. Yanny, Esq. (SBN 97979)
YANNY & SMITH
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone: (310) 551-2966
Facsimile: (310) 551-1949
jyanny@yannylaw.com

Attorneys for Defendant,
**Mongols Nation**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| United States of America<br>　　　Plaintiff,<br><br>vs.<br><br>Mongols Nation,<br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: CR 13 00106 DOC<br><br>**DEFENDANT'S MEMORANDUM AND POINTS OF AUTHORITY RE CRIMINAL FORFEITURE PHASE**<br><br>**Brief Due Date:** November 20, 2018<br>**Brief Due Time:** 5:00 PM<br>**Judge:** Honorable David O. Carter<br>**Courtroom**: 9D |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION

Defendant Mongols Nation is charged by the United States Government under 18 U.S.C. Section 1962(c) and 1962(d) with conspiracy to commit racketeering and racketeering. If successful in reaching a conviction on either of these counts, the prosecution seeks forfeiture of Defendant's collective membership marks. This brief addresses the validity of that potential forfeiture and in doing so argues that such a seizure by the Government is both illogical and improper. The reasons supporting Defendant's position are addressed in the Argument section below.

## II.   ARGUMENT

The sole remedy sought by the Government in this case is forfeiture of the Defendant's collective membership marks. If this remedy is unsound, the entire proceeding is pointless. The Government's desire to seize the Mongol's collective membership marks is both legally flawed and practically problematic.

First, the collective membership marks sought for seizure by the Government are not owned by the Defendant Mongols Nation. According to the Trademark Manual of Examining Procedure, "a collective membership mark may be owned by someone other than the collective organization whose members use the mark, and the owner might not itself be a collective organization. An example is a business corporation who forms a club for persons meeting certain qualifications, and arranges to retain control of the group and of the mark used by the members of the group." *Trademark Manual of Examining Procedures (TMEP) October 2018 Section 1304.03(a).* The defendant Mongols Nation is merely an entity holding the collective membership marks as a trustee for the members of the organization that use the mark. The Federal Rules of Criminal Procedure clearly state that "a court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute. The notice should not be designated as a count of the indictment

or information." *Federal Rules of Criminal Procedure 32.2(a).* Thus, to properly seize these marks, the Government is required to include the members using the mark as parties in this legal proceeding; however, individual members have not been added as defendants.

The registered owner of a collective mark holds the mark's title in trust for the benefit of the members. See *Trademark Manual of Examining Procedure (TMEP) Section 1303* ("The mark is used by all members of the group; therefore, no member can own the mark, and the collective organization holds the title to the collectively used mark for the benefit of all members of the group."); see also *Inessa Shalevich, Protection of Trademarks and Geographical Indications*, 6 Buff. Intell. Prop. L.J. 67, 72 (2008). This relationship is analogous to an attorney holding legal title to client money in a trust account but solely for the benefit of the client. Just as the Government could not obtain forfeiture of client funds by convicting the attorney, the Government cannot take away unindicted members' right to use and display the marks by holding Mongols Nation criminally or civilly liable. Therefore, because the actual users of the marks are not joined in this matter (except for those named in the 2008 *United States v. Cavazos, et al.* Case No. CR 08-1201 indictment who surrendered their rights to association and use of the mark by way of plea agreements), seizure of these marks from the remainder of the members is highly improper.

According to the Federal Rules of Criminal Procedure, "if the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty." *FRCP 32.2(b)(1)(B)*. Defendant hereby request a hearing to determine if the property at issue is even forfeitable. As discussed above, there are serious doubts as to whether the Mongols Nation collective membership marks can legitimately be seized by the Government in this proceeding. Before the jury is retained, this Court must first hold a hearing to decide if the intangible intellectual property being sought by the Government is forfeitable.

Second, the Government operates under the false assumption that by obtaining forfeiture of the collective membership marks the Government becomes the owner of those marks and can regulate their use as the Government pleases. Apart from egregiously violating the Constitutional rights of unindicted third party individuals (discussed in detail later), the Government's theory demonstrates a fundamental misunderstanding of the function of collective membership marks.

The sole function of a collective membership mark is to indicate that the person displaying the mark is a member of the organized collective group. *Aloe Creme Laboratories v. American Society for Aesthetic Plastic Surgery, Inc.*, 192 USPQ 170, 173 (TTAB 1976). Even though title to the the collective membership mark is owned by the collective entity, only members of the collective can use the mark. 15 U.S.C. § 1127; see *F.R. Lepage Bakery, Inc. v. Roush Bakery Prods. Co., Inc.*, 851 F.2d 351, 353 (Fed. Cir. 1988), modified on other grounds, 863 F.2d 43 (Fed. Cir. 1988). A collective membership mark is protected insofar as it is being used to indicate membership in the registrant. See *Constitution Party of Texas v. Constitution Ass'n USA*, 152 USPQ 443 (TTAB 1966); see also *Huber Baking Co. v. Stroehmann Bros. Co.*, 252 F.2d 945, 955 (2d Cir. 1958) ("Trademark rights are acquired by use . . . and registration alone of the trademark does not increase the scope of such substantive rights"). Protection of a collective membership mark means the member users of the mark enjoy the right to use and display it at the exclusion of non-members. See *Ex parte Supreme Shrine of the Order of the White Shrine of Jerusalem*, 109 USPQ 248 (Comm'r Pats. 1956).

In other words, the mark enjoys protection under trademark law insofar as the mark is being used by specific members to display membership in a specific registrant organization to express constitutionally protected speech regarding membership. *Id*. Thus, under trademark law the relationship between registrant and member user of a collective membership mark is unique and inseparable. A collective membership mark cannot be transferred to another entity and enjoy the same trademark protection. See *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90 (1918) (Right or interest in a

trademark is "appurtenant to an established business or trade"); see also *Marshak v. Green*, 746 F.2d 927, 929 (2d Cir. 1984) ("a trademark cannot be sold or assigned apart from [the] goodwill it symbolizes[.] There are no rights in a trademark apart from the business with which the mark has been associated; they are inseparable.").

As this Court has already held in *Ramon Rivera v. Ronnie A. Carter, et al.*, CV 09-2435, Dkt. 1, "preventing Mongols from wearing a leather patch bearing the word "MONGOLS" eviscerates the mark's purpose of signifying membership." CV 09-2435, Dkt. 90, 10:28-11:3 (emphasis added) (citing International Order of *Job's Daughters v. Lindeberg & Co.*, 633 F.2d 912, 917-20 (9th Cir. 1980)). This is particularly relevant in this case where the Government has admitted that all of those allegedly guilty of the wrongdoings which form the basis of this suit have already been punished and forfeited their copies of the registered collective membership mark and their right to display it. Defendant Mongol Nation would request the Court to take notice of its own files in *Cavazos* and *Rivera* (including plea agreements) to verify this fact.

Once a mark's purpose is not being fulfilled, either because it is no longer being used to signify membership or the relationship between registrant and users is severed, then the mark is abandoned and cancelled. See *Constitution Party of Texas*, 152 USPQ 443 (TTAB 1966). Abandonment of a trademark results in unrestricted use in the public domain. See *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087 (Fed. Cir. 1984); see also *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). This of course is the complete opposite result that the Government hopes to achieve in obtaining forfeiture of the collective membership marks. Instead of suppressing the use and display of the marks, the Government's forfeiture theory would actually result in an unrestricted use of the collective membership mark being thrust into the public domain. Therefore, the sole remedy which the Government desires is futile.

Third, even if the Government could somehow take ownership of the collective membership marks, the Government, as this Court already held in *Rivera*, cannot silence the use and display of it. See generally *United Drug v. Theodore Rectanus Co.*, 248 U.S. 90, 97-98 (1918) ("The owner of a trademark may not, like the proprietor of a patented invention, make a negative and merely prohibitive use of it as a monopoly."). To simply preclude use would result in an abandonment. There is no way that the innocent members of this Defendant would ever consent to the transfer of the goodwill associated with this mark to the United States Government. Any attempt at such a transfer would be what is known as "a naked transfer" (a transfer of a mark without the transfer of the goodwill associated with the mark) and result in the destruction of the mark. Thus, unrestricted use of the mark in the public domain would once again result – the opposite of what of the Government desires.

Fourth, forfeiture of Mongols Nation collective membership marks, violates the rights of hundreds of unindicted citizens without affording them due process of law as required by the Fifth Amendment to the United States Constitution. *U.S. Const. Amend. V.*

By obtaining forfeiture of collective membership marks through the conviction of one named entity defendant, the government purports to strip away the freedom to express and associate from "hundreds" (see Indictment, ¶ 8) of unindicted, uncharged, law-abiding citizen members of the Mongols Nation in one fell swoop without ever hailing any of these innocent individuals into court. As this Court held in *Rivera*, "the government is not free to make its own determinations" about whether innocent citizens "committed infringement by wearing articles of clothing that bear the marks." CV 09-2435, Dkt. 90, 6:13-15 (emphasis added) (citing *15 U.S.C. § 1118*).

As discussed above, each individual member of Mongols Nation has the right to use and display the Word and Rider collective membership marks as a means to demonstrate his membership in the club. This is directly tied to the Constitutional right of freedom of expression and freedom of association, both of which are protected by the First Amendment of the United States Constitution. *U.S. Const. Amend. I.*

This right is enjoyed independent of the ownership interests of the marks held by the Mongols Nation, which holds the marks in trust for the benefit of its members. See *Trademark Manual of Examining Procedure (TMEP) Section 1303*. If the Government purports to strip an individual's Constitutional right to use and display these marks, it must afford that person the opportunity to be heard and tried.

Fifth, the relief sought by the Government, forfeiture of Defendant's collective membership marks, is an equitable remedy. The nature of the Government's forfeiture request is injunctive relief, which does not trigger the right to a jury trial. Injunctive relief is strictly a question of equity and therefore falls within the province of the bench, not the jury. *Dairy Queen, Inc., v. Wood*, 396 U.S. 469 (1962); *Tull v. United States*, 107 U.S. 1831 (1987). Thus, using a jury to decide if the Mongols Nation collective membership marks are subject to forfeiture is not necessary and not proper.

Lastly, from a practical perspective, there is no benefit gained by the Government for carrying out a seizure of these marks. In fact, banning the display of Mongols Nation indicia would be detrimental to policing their activity. By prohibiting the display of Mongols Nation collective membership marks, law enforcement would lose the ability to easily identify members of the Mongols organization. This renders law enforcement ill-informed about the individuals they are potentially dealing with and essentially makes police ignorant of any motorcycle club affiliation. Instead of law enforcement having the knowledge of an existing organizational relationship, the Government seeks to bar the use of these marks and in doing so rid police of helpful information. If the Government is truly concerned about the activity of the Mongols Motorcycle Club, they would want to enhance the ability of law enforcement to monitor the actions of its members – not make it more difficult by restricting all indicia of affiliation.

III.    **CONCLUSION**

For the foregoing reasons, Defendant Mongols Nation collective membership marks are not subject to forfeiture by the United States Government.

1

2                                                   Respectfully submitted,

3

4   Dated: November 20, 2018              By:   /s/  Joseph A. Yanny

5                                                JOSEPH A. YANNY
                                                 YANNY & SMITH
6                                                Attorneys for Defendant, Mongols Nation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant's Criminal Forfeiture Phase Brief