# EXHIBIT 1

Indictment

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                      June 2016 Grand Jury

11   UNITED STATES OF AMERICA,              CR No. 18CR00173-A

12              Plaintiff,                  I N D I C T M E N T

13         v.                               [18 U.S.C. § 1962(d): Racketeer
                                            Influenced and Corrupt
14   JOSE LANDA-RODRIGUEZ,                  Organizations Conspiracy; 18
       aka "Jose Rodriguez-Landa,"          U.S.C. §§ 1959(a)(1), (3), (5),
15     aka "Jose Landa,"                    (6): Violent Crimes in Aid of
       aka "Jose Rodriguez,"                Racketeering Activity; 21 U.S.C.
16     aka "Fox,"                           § 846: Conspiracy to Distribute
       aka "Fox Tapia,"                     and Possess With Intent to
17     aka "F-X,"                           Distribute Controlled Substances;
       aka "Alejandro Tapia,"               21 U.S.C. §§ 841(a)(1), (b)(1)(A),
18     aka "Cola Rojo,"                     (b)(1)(B), (b)(1)(C), (b)(1)(D):
       aka "Red Tail,"                      Possession with Intent to
19     aka "Pops,"                          Distribute Controlled Substances;
       aka "Tio,"                           18 U.S.C. § 1956(a)(1)(A)(i):
20     aka "The General,"                   Money Laundering; 18 U.S.C.
       aka "Taras,"                         § 1029(a)(3): Possession of at
21     aka "The Old Man,"                   Least Fifteen Access Devices; 18
       aka "The Animal,"                    U.S.C. § 1028A(a)(1): Aggravated
22     aka "Old School,"                    Identity Theft; 18 U.S.C.
     LUIS VEGA,                             § 924(c)(1)(A): Possession, Use,
23     aka "Little One,"                    and Carrying of a Firearm During
       aka "L-1,"                           and in Relation to, and in
24     aka "Tito,"                          Furtherance of, a Crime of
     GABRIEL ZENDEJAS-CHAVEZ,               Violence and/or a Drug Trafficking
25     aka "Corbatas,"                      Crime; 18 U.S.C. § 922(g)(1):
     RAFAEL LEMUS,                          Felon in Possession of Firearms
26     aka "Ere,"                           and Ammunition; 18 U.S.C. § 2:
       aka "The Voice,"                     Aiding and Abetting and Causing an
27     aka "La Voz,"                        Act to Be Done; 18 U.S.C. § 1963;
     LUIS GARCIA,                           21 U.S.C. § 853; 18 U.S.C.
28     aka "Hefty,"                         § 924(d): Criminal Forfeiture]

```
 1    aka "Grimm,"
      aka "H,"
 2  ALVINO MUNOZ,
      aka "Bino,"
 3    aka "B,"
    DANIEL CERVANTES,
 4    aka "Maniac,"
      aka "J,"
 5    aka "Paisa Jose,"
    MIGUEL CALDERON,
 6    aka "Big Speedy,"
      aka "Mickey,"
 7  ERNESTO VARGAS,
      aka "Huero,"
 8    aka "Huero Caballero,"
      aka "Paisa Huero,"
 9  MIGUEL RODRIGUEZ,
      aka "Rebel,"
10    aka "Pee Wee,"
      aka "R,"
11  GILBERT PARRA,
      aka "Droopy,"
12    aka "Chavo,"
    GERARDO TAPIA,
13    aka "Jerry,"
    DONATO GONZALES,
14    aka "Nato,"
      aka "Nasty,"
15    aka "Debo,"
      aka "Ray,"
16  MIGUEL GARCIA,
      aka "Toro,"
17    aka "Hulk,"
      aka "T,"
18    aka "Horns,"
    HECTOR DUARTE,
19    aka "Lil Man,"
      aka "Hecko,"
20  SAMANTHA RIVERA,
      aka "Sam,"
21    aka "S,"
    MARK LANDEROS,
22    aka "Smokey,"
      aka "Troy,"
23    aka "Hot,"
    JONATHAN VERDEJA,
24    aka "Hardcore,"
      aka "Duke,"
25  CECILIA VIRGEN,
      aka "Cecilia DeLeon,"
26    aka "Sessy,"
      aka "Hazel,"
27    aka "Gia,"
      aka "Sky,"
28    aka "Hooker,"
```

2

1   LAUREEN GARCIA,
    aka "L,"
2   NANCY DUARTE,
    aka "Pink,"
3   VALERIE TREJO,
    aka "Val,"
4   GENESSIS BLANCO,
    aka "Pink,"
5   KELLY JO BELL,
  JOSE FLORES,
6     aka "Silent,"
    aka "Lo,"
7   MARK LEVY,
    aka "Cloudy,"
8     aka "C3,"
  VALENTIN CORDOVA,
9     aka "Teen,"
  FRANKIE MEGORADO,
10     aka "Frankie Mejorado,"
    aka "Slick,"
11     aka "Junior,"
    aka "Speedy,"
12   JOSE OLEA,
    aka "Sniper,"
13   MANUEL JIMENEZ,
    aka "Porky,"
14   ALAVARO LEYVA,
    aka "Flaco,"
15     aka "Trigger,"
  CHRIS FERREIRA,
16     aka "Caveman,"
  DAVID BERNARDINO,
17     aka "Downer,"
  ANDREW PINEDA,
18     aka "Mighty,"
    aka "Shy Boy,"
19   ALONDRA GOMEZ,
  MIRIAM MEZA,
20   ANA MARTINEZ,
    aka "Ana America,"
21     aka "Bandit,"
  ALVARO RUIZ,
22     aka "Roach,"
  ADRIAN ARAIZA,
23     aka "Chemo,"
  GAIL PONCE,
24     aka "Bashful,"
  DIANA MARTINEZ,
25     aka "Devine,"
  MARLON CORNEJO,
26     aka "Maniac,"
  ANGEL SANCHEZ,
27     aka "Lil Triste,"
  JUAN REYES,
28     aka "Cosmo,"

1  RICHARD BAILEY,
    aka "Spooks,"
2   aka "Nigger Richard,"
    aka "Half and Half,"
3  MICHAEL BENNETT,
    aka "Irish,"
4  EDWIN AYALA,
    aka "Happy,"
5  DAVID VILLALOBOS,
    aka "Grumpy,"
6  DAVID DIAZ,
    aka "Stomps,"
7  ROBERT RAMIREZ,
    aka "Wiz,"
8  KRISTEN AYALA,
   RICHARD GRIEGO,
9   aka "Twisted,"
    aka "Pretzel,"
10 JUAN LEONARD GARCIA,
    aka "Little John,"
11  aka "Trevor,"
   MARK MARTINEZ,
12  aka "Brat,"
   AMO WEST,
13  aka "Chico,"
   RAMIRO ANDRADE,
14  aka "Scrappy,"
   OSWALDO QUINTERO,
15  aka "Sporty,"
   NICHOLAS ESCARCEGA,
16  aka "Tweeks,"
   CHRISTIAN FUENTES,
17  aka "Nino,"
   FRANCISCO RUIZ,
18  aka "Pancho,"
    aka "Scooby,"
19 JOSE VERA,
    aka "Sapo,"
20 JONATHAN RODRIGUEZ,
    aka "Sharkie,"
21 BRYANNA MCCULLAH,
    aka "Bee Bee,"
22 JUAN NMN GARCIA,
    aka "Trouble,"
23 JONATHAN MENDEZ,
    aka "Casper,"
24  aka "Smokes,"
   MARTIN SALAZAR,
25  aka "Sweeper,"
   RAMON AMAYA,
26  aka "Lil Happy,"
   FRANK HERRERA,
27  aka "Dopey,"
    aka "Ben,"

28

4

```
 1   ALEJANDRO MARTINEZ,
       aka "Smokey," and
 2   MARCO MEZA,
       aka "Green Eyes,"
 3     aka "Ojos,"
 4              Defendants.
```

 5

 6        The Grand Jury charges:

 7

 8                    GENERAL ALLEGATIONS

 9   A.   HISTORY AND STRUCTURE OF THE MEXICAN MAFIA

10        1.   The Mexican Mafia, also known as "La Eme," is a "gang of

11   gangs" comprised mostly of senior members of southern California

12   Hispanic street gangs who have come together to control and profit

13   from the activities of Hispanic gangs operating in southern

14   California.  La Eme was established in the 1950s by Hispanic youth

15   inmates at the Duell Vocational Facility, but over the decades has

16   morphed into an international criminal organization.  Today, there

17   are approximately 140 full members of the Mexican Mafia, referred to

18   as "carnales" or "brothers."  The majority of Mexican Mafia members

19   are incarcerated in California prisons or jails or in federal

20   prisons.  By exercising control over inmates in the prison and jail

21   systems, primarily through violence and threats of violence, the

22   Mexican Mafia is able to control the activities of southern

23   California Hispanic criminal street gangs, both inside and outside

24   custody facilities.  Mexican Mafia members and associates wield such

25   power over the prison and jail populations that they are able to

26   order that acts of violence be carried out not only against other

27   prison or jail inmates, but also against street gang members and

28   others outside of prison or jail.

2.   Members of the Mexican Mafia have divided control of, and the rights to criminal proceeds from, nearly all penal facilities in California, including state prison and county jail systems. Similarly, members of the Mexican Mafia have divided the rights to criminal proceeds from the activities of southern California Hispanic criminal street gangs in various southern California neighborhoods.

3.   Generally, one member of the Mexican Mafia has control of and rights to a specific facility.  That member, whether incarcerated in that facility or not, will control the smuggling of drugs into the facility, the collection of taxes from the sale of those drugs, extortion within that facility (including the kitty and other fines discussed below), and the maintenance of discipline within the facility.  In some cases, different members of the Mexican Mafia may control different parts of the same facility.

4.   Similarly, members of the Mexican Mafia have divided control of and the rights to "taxes," or a share of criminal proceeds from criminal activities including drug trafficking, from nearly all Hispanic gangs in southern California.  Generally, one member of the Mexican Mafia has control of and rights to a specific area; that Mexican Mafia member will control the sale of drugs within that area, the collection of taxes from that area, and the maintenance of discipline over gang members from that area.

5.   The division of control of custody facilities and neighborhoods is generally agreed upon by the members of the Mexican Mafia, although there are occasionally disputes among members as to the division.  Once a Mexican Mafia member acquires control of a custody facility or neighborhood, he can generally operate that custody facility or neighborhood without interference from other

1  members.  The Mexican Mafia member in control of a custody facility

2  or neighborhood will put together a team of trusted associates to

3  control the custody facility or neighborhood.

4      6.  The Mexican Mafia is split into two major subgroups,

5  "State" and "Federal."  A State Mexican Mafia member can control

6  state prisons, southern California jails, and southern California

7  neighborhoods, but generally not federal facilities.  A Federal

8  Mexican Mafia member can control federal facilities anywhere in the

9  country, and southern California neighborhoods, but usually cannot

10 control a state prison or a county jail.

11     7.  To become a Mexican Mafia member, a Hispanic gang member

12 generally must have a distinguished reputation for "putting in work"

13 on behalf of the Mexican Mafia, meaning the gang member has murdered

14 or assaulted enemies and rivals of Mexican Mafia members.

15 Prospective members are also expected to have provided financial

16 assistance to Mexican Mafia members, and to have followed the Mexican

17 Mafia rules that govern the streets or correctional institutions.

18     8.  Mexican Mafia members carry out their criminal activity

19 with the help of associates.  Some of these trusted associates act as

20 "shot-callers," that is, high-level associates who have been given

21 the authority to conduct affairs of the Mexican Mafia, such as

22 collecting extortion and drug money and enforcing discipline in their

23 particular areas of control.  A "facilitator" is the highest level

24 shot-caller and works directly under the authority of the Mexican

25 Mafia member who appointed him.  The facilitator coordinates the

26 activities of the other shot-callers and is responsible for ensuring

27 that other shot-callers carry out the Mexican Mafia member's orders

28 ///

1   in their area of responsibility, whether in a neighborhood or a

2   custody facility.

3       9.    Members of Hispanic street gangs in southern California are

4   referred to as "Surenos" and fall under the control of the Mexican

5   Mafia.  "Surenos" may also be referred to as "Southsiders."

6   Additionally, the Mexican Mafia considers Mexican nationals, referred

7   to as "Paisas," and Hispanic-American citizens who are not members of

8   a gang, generally referred to as "Residents," to fall under the

9   Mexican Mafia's control while in a custody facility, and trusted

10  Residents and Paisas may participate in or be given shot-caller

11  positions in Mexican Mafia affairs.

12      10.   Members and associates of street gangs controlled by and/or

13  affiliated with the Mexican Mafia must pay "taxes" to members and

14  associates of the Mexican Mafia for permission to maintain control

15  over their territories in order to distribute drugs and engage in

16  other criminal activity.  This system of "taxation" amounts to

17  widespread extortion.  These "taxes" also ensure the protection of

18  the gang's members once they enter prisons or jails.  The "taxing"

19  and control applies to activities both in and out of jail or prison.

20  Indeed, a jail or prison, or a floor, yard, or other unit of a jail

21  or prison is considered by the Mexican Mafia to be territory just as

22  much as a neighborhood.

23      11.   Surenos, whether in a custody facility or in a

24  neighborhood, operate as soldiers or workers for the Mexican Mafia.

25  Indeed, being loyal to the Mexican Mafia is an integral part of being

26  a southern California Hispanic street gang member, and it is openly

27  understood that when individuals join such gangs that they are

28  joining an entity loyal to the Mexican Mafia.  Members of such gangs

1  are expected to, and are proud to, carry out the orders of the

2  Mexican Mafia member in control of their neighborhood or custody

3  facility, because doing work for the Mexican Mafia increases the gang

4  member's status and reputation.  Some gangs proudly include in their

5  name the number "13," denoting the letter M, or "eme" in Spanish, in

6  order to demonstrate the gang's loyalty and allegiance to the Mexican

7  Mafia.

8  B.    THE MEXICAN MAFIA'S ORGANIZATION WITHIN THE LOS ANGELES COUNTY

9        JAIL SYSTEM

10       12.  The Los Angeles County Jail System ("LACJ" or "the System")

11  is operated by the Los Angeles County Sheriff's Department ("LASD")

12  and receives moneys from the United States Department of Homeland

13  Security and other federal agencies.  The system includes various

14  men's facilities including Men's Central Jail ("MCJ"), the Twin

15  Towers Correctional Facility ("Twin Towers"), the Inmate Reception

16  Center ("IRC"), the North County Correctional Facility ("NCCF"),

17  Pitchess Detention Center—North Facility ("Pitchess North"), Pitchess

18  Detention Center—East Facility ("Pitchess East"), and Pitchess

19  Detention Center—South Facility ("Pitchess South").  On any given

20  day, the System houses approximately 15,000 inmates.

21       13.  At any time, one Mexican Mafia member may exercise control

22  over the entire LACJ system, or control of various facilities within

23  the System may be divided among different members of the Mexican

24  Mafia.  The Mexican Mafia member in charge of an LACJ custody

25  facility maintains control over the facility with the assistance of

26  trusted shot-callers, facilitators, and associates.  These Mexican

27  Mafia members and associates, working together to control criminal

28  activity within LACJ, have become their own entity or enterprise and

1   effectively function as an illegal government within LACJ custody

2   facilities ("the Mexican Mafia LACJ Enterprise").

COUNT ONE

[18 U.S.C. § 1962(d)]

1.    Paragraphs 1 through 13 of the General Allegations are re-alleged and incorporated by reference as if fully set forth herein.

A.    THE RACKETEERING ENTERPRISE

2.    At all times relevant to this Indictment, defendants JOSE LANDA-RODRIGUEZ, also known as ("aka") "Jose Rodriguez-Landa," aka "Jose Landa," aka "Jose Rodriguez," aka "Fox," aka "Fox Tapia," aka "F-X," aka "Alejandro Tapia," aka "Cola Rojo," aka "Red Tail," aka "Pops," aka "Tio," aka "The General," aka "Taras," aka "The Old Man," aka "The Animal," aka "Old School" ("JOSE LANDA-RODRIGUEZ"), LUIS VEGA, aka "Little One," aka "L-1," aka "Tito" ("LUIS VEGA"), GABRIEL ZENDEJAS-CHAVEZ, aka "Corbatas" ("GABRIEL ZENDEJAS-CHAVEZ"), RAFAEL LEMUS, aka "Ere," aka "The Voice," aka "La Voz" ("RAFAEL LEMUS"), LUIS GARCIA, aka "Hefty," aka "Grimm," aka "H" ("LUIS GARCIA"), ALVINO MUNOZ, aka "Bino," aka "B" ("ALVINO MUNOZ"), DANIEL CERVANTES, aka "Maniac," aka "J," aka "Paisa Jose" ("DANIEL CERVANTES"), MIGUEL CALDERON, aka "Big Speedy," aka "Mickey" ("MIGUEL CALDERON"), ERNESTO VARGAS, aka "Huero" aka "Huero Caballero," aka "Paisa Huero" ("ERNESTO VARGAS"), MIGUEL RODRIGUEZ, aka "Rebel," aka "Pee Wee," aka "R" ("MIGUEL RODRIGUEZ"), GILBERT PARRA, aka "Droopy," aka "Chavo" ("GILBERT PARRA"), GERARDO TAPIA, aka "Jerry" ("GERARDO TAPIA"), DONATO GONZALES, aka "Nato," aka "Nasty," aka "Debo," aka "Ray" ("DONATO GONZALES"), MIGUEL GARCIA, aka "Toro," aka "Hulk," aka "T," aka "Horns" ("MIGUEL GARCIA"), HECTOR DUARTE, aka "Lil Man," aka "Hecko" ("HECTOR DUARTE"), SAMANTHA RIVERA, aka "Sam," aka "S" ("SAMANTHA RIVERA"), MARK LANDEROS, aka "Smokey," aka "Troy," aka "Hot" ("MARK LANDEROS"), JONATHAN VERDEJA, "Hardcore," aka "Duke"

11

("JONATHAN VERDEJA"), CECILIA VIRGEN, aka "Cecilia DeLeon," aka
"Sessy," aka "Hazel," aka "Gia," aka "Sky," aka "Hooker" ("CECILIA
VIRGEN"), LAUREEN GARCIA, aka "L" ("LAUREEN GARCIA"), NANCY DUARTE,
aka "Pink" ("NANCY DUARTE"), VALERIE TREJO, aka "Val" ("VALERIE
TREJO"), GENESSIS BLANCO, aka "Pink" ("GENESSIS BLANCO"), KELLY JO
BELL ("KELLY JO BELL"), JOSE FLORES, aka "Silent," aka "Lo" ("JOSE
FLORES"), MARK LEVY, aka "Cloudy," aka "C3" ("MARK LEVY"), VALENTIN
CORDOVA, aka "Teen" ("VALENTIN CORDOVA"), FRANKIE MEGORADO, aka
"Frankie Mejorado," aka "Slick," aka "Junior," aka "Speedy" ("FRANKIE
MEGORADO"), JOSE OLEA, aka "Sniper" ("JOSE OLEA"), MANUEL JIMENEZ,
aka "Porky" ("MANUEL JIMENEZ"), ALAVARO LEYVA, aka "Flaco," aka
"Trigger" ("ALAVARO LEYVA"), CHRIS FERREIRA, aka "Caveman" ("CHRIS
FERREIRA"), DAVID BERNARDINO, aka "Downer" ("DAVID BERNARDINO"),
ANDREW PINEDA, aka "Mighty," aka "Shy Boy" ("ANDREW PINEDA"), ALONDRA
GOMEZ ("ALONDRA GOMEZ"), MIRIAM MEZA ("MIRIAM MEZA"), ANA MARTINEZ,
aka "Ana America," aka "Bandit" ("ANA MARTINEZ"), ALVARO RUIZ, aka
"Roach" ("ALVARO RUIZ"), ADRIAN ARAIZA, aka "Chemo" ("ADRIAN
ARAIZA"), GAIL PONCE, aka "Bashful" ("GAIL PONCE"), DIANA MARTINEZ,
aka "Devine" ("DIANA MARTINEZ"), MARLON CORNEJO, aka "Maniac"
("MARLON CORNEJO"), ANGEL SANCHEZ, aka "Lil Triste" ("ANGEL
SANCHEZ"), JUAN REYES, aka "Cosmo" ("JUAN REYES"), RICHARD BAILEY,
aka "Spooks," aka "Nigger Richard," aka "Half and Half" ("RICHARD
BAILEY"), MICHAEL BENNETT, aka "Irish" ("MICHAEL BENNET"), EDWIN
AYALA, aka "Happy" ("EDWIN AYALA"), DAVID VILLALOBOS, aka "Grumpy"
("DAVID VILLALOBOS"), and DAVID DIAZ, aka "Stomps" ("DAVID DIAZ"),
and others known and unknown to the Grand Jury, were members and
associates of an organization engaged in, among other things, acts
involving murder, kidnapping, robbery, extortion, trafficking in

1   controlled substances, witness tampering, money laundering, and

2   identity theft.  At all relevant times, this organization,

3   hereinafter the "Mexican Mafia LACJ Enterprise," operated within the

4   Central District of California and elsewhere.  The Mexican Mafia LACJ

5   Enterprise, including its leaders, members, and associates,

6   constitute an "enterprise," as defined by Title 18, United States

7   Code, Section 1961(4), that is, a group of individuals associated in

8   fact, although not a legal entity, which is engaged in, and the

9   activities of which affect, interstate and foreign commerce.  The

10  Mexican Mafia LACJ Enterprise constitutes an ongoing organization

11  whose members function as a continuing unit for a common purpose of

12  achieving the objectives of the enterprise.

13      3.   The Mexican Mafia LACJ Enterprise operates for the benefit

14  of the Mexican Mafia member or members deemed by the Mexican Mafia to

15  be in control of LACJ.  The Mexican Mafia LACJ Enterprise conducts

16  its activities within LACJ facilities and in some surrounding

17  neighborhoods by imposing the rules of the Mexican Mafia on inmates

18  within LACJ facilities and on members of predominantly Hispanic

19  street gangs.  Using the methods of the Mexican Mafia, the Mexican

20  Mafia LACJ Enterprise carries out its goals of controlling drug

21  trafficking activities and the distribution of drug trafficking

22  proceeds, extortion, and the enforcement of Mexican Mafia rules both

23  inside and outside LACJ facilities.

24      4.   The Mexican Mafia LACJ Enterprise operates to carry out the

25  goals and objectives of the Mexican Mafia within LACJ custody

26  facilities and in some surrounding neighborhoods, including by

27  directing and controlling drug trafficking activities and the

28  distribution of drug trafficking proceeds, extortion, as well as the

1  enforcement of Mexican Mafia rules (which are used as a basis for
2  extortion), both inside and outside the LACJ custody facilities.
3  More specifically:

4       a.    The Mexican Mafia LACJ Enterprise keeps track of
5  southern California Hispanic gang members through lists known as
6  "roll calls," made to keep track of every Sureno in a particular
7  module or dorm, often including the inmate's name, booking number,
8  next court date, gang, and/or moniker.   This enables the Mexican
9  Mafia LACJ Enterprise to track down persons in bad standing, to
10 coordinate the movement of drugs and kites, to account for kitty
11 revenue, and other enterprise business.

12      b.    Mexican Mafia LACJ Enterprise members and associates
13 in prisons or jails send instructions to local street gangs and other
14 Mexican Mafia members and associates, both inside and outside prison
15 and jail, via telephone calls, prison system e-mails, letters,
16 "kites" (which are notes smuggled by prisoners), "verbals" (passing a
17 particularly sensitive message verbally from inmate to inmate), and
18 by conveying messages through jail or prison visitors.   Mexican Mafia
19 LACJ Enterprise members and associates generally use coded language
20 in order to conceal the true nature of their discussions with and
21 instructions to criminal associates.   In order to pass on
22 instructions and information from prison and jail, Mexican Mafia LACJ
23 Enterprise members and associates generally rely on associates, often
24 female, known as "secretaries," who communicate with incarcerated
25 Mexican Mafia members and associates and relay their instructions to
26 others.   In addition, attorneys who are willing to assist in the
27 Mexican Mafia's criminal activities are utilized by the Mexican Mafia
28 LACJ Enterprise to pass messages concerning these activities and to

1  facilitate communication among its members and associates.  These
2  attorneys are particularly valued by members of the Mexican Mafia
3  LACJ Enterprise because they provide a means to shield criminal
4  communications from law enforcement by providing the appearance of
5  attorney-client privilege and a veneer of legitimacy to their
6  criminal communications.  Both secretaries and attorneys are treated
7  as respected criminal figures by members of street gangs controlled
8  by and/or affiliated with the Mexican Mafia LACJ Enterprise.

9     c. Another method of communication employed by the
10  Mexican Mafia LACJ Enterprise is telephone calls made with "burnout"
11  phones.  Burnout phones are phones that use landline service opened
12  with stolen identities.  The Mexican Mafia LACJ Enterprise uses
13  burnout phones to make collect calls from prisons and jails to
14  associates on the outside until the telephone company realizes the
15  account is fraudulent and shuts the line off.

16     d. The Mexican Mafia LACJ Enterprise commonly extorts
17  money from gang members and associates who violate enterprise rules
18  and from those who want to engage in profitable activities in areas
19  controlled by the Mexican Mafia LACJ Enterprise.  If the gang member
20  or associate does not pay the demanded sum, or has violated Mexican
21  Mafia or enterprise rules, a Mexican Mafia leader commonly will order
22  that the person be assaulted until that individual complies.
23  Alternatively, if the non-compliant individual refuses to pay, or if
24  the enterprise is not able to punish the individual, the Mexican
25  Mafia LACJ Enterprise may extort or punish family members, close
26  associates, members of that person's gang, or others related to the
27  person.  If a person or gang does not meet the Mexican Mafia LACJ
28  ///

1    Enterprise's payment demands, they will be subjected to violence
2    until they comply.
3              e.    One of the Mexican Mafia LACJ Enterprise's most
4    effective ways of extorting or taxing gang members and other Hispanic
5    inmates in jail or prison is through the "kitty."  Once a week, in
6    every module of the Los Angeles County Jail system, inmates are
7    allowed to purchase items from the LASD-operated store or commissary.
8    These items include candy bars, soup, ramen noodles, shower shoes,
9    deodorant, baby powder, and other food and personal hygiene items.
10   In every jail module controlled by the Mexican Mafia LACJ Enterprise,
11   every Hispanic gang member, Paisa, or Resident is required to
12   contribute commissary items of a certain value (e.g., one dollar's
13   worth of items) into the kitty for every set amount of items
14   purchased (e.g., fifteen dollars' worth).  The Mexican Mafia member
15   in control of the module sets the contribution rates for the kitty,
16   and the module shot-caller collects the commissary items and sells
17   them to a person in the module for a price that is also set by the
18   Mexican Mafia member.  The payment for the kitty is made to a
19   secretary or facilitator outside of the facility, who forwards it to
20   the Mexican Mafia member who controls that facility.
21             f.    The Mexican Mafia LACJ Enterprise also makes money by
22   controlling the sales of drugs.  On the streets, profiting from drug
23   trafficking takes the form of "taxing" drug dealers.  All drug
24   dealers in an area controlled by the Mexican Mafia LACJ Enterprise
25   must pay a percentage of their profits from the sale of drugs to the
26   enterprise.  If the drug dealer does not pay, he will not be allowed
27   to sell drugs in that area, under threat of assault or even death.
28   If the drug dealer does pay the tax, the drug dealer benefits by

1  receiving protection from other dealers or robbers and gains

2  assistance in collecting debts.

3        g.   Inside of custody facilities, the taxing of drug

4  trafficking takes two forms.  First, Mexican Mafia members, shot-

5  callers, and associates will arrange for drugs to be smuggled to them

6  inside the Los Angeles County Jail System.  Once the Mexican Mafia

7  member or his trusted shot-caller or facilitator within a facility

8  receives the drugs, he will direct their sale within the Los Angeles

9  County Jail system with the proceeds benefiting the member in control

10 of that facility.  Furthermore, others within the facility will not

11 be allowed to sell their own drugs until the Mexican Mafia member's

12 drugs have been sold.  Second, the Mexican Mafia's control of drug

13 trafficking is maintained by collecting a "thirds" tax on all other

14 drugs that are smuggled into the Los Angeles County Jail system.

15 Pursuant to the thirds tax, one third of each shipment of drugs that

16 is smuggled into the Los Angeles County Jail system must be "broken-

17 off" and given to the Mexican Mafia member in control of the facility

18 or his trusted shot-caller or facilitator.  If the Mexican Mafia

19 member decides to sell the "thirds-tax" portion of the drugs, they

20 are sent to a dorm or module for sale with the proceeds going to the

21 Mexican Mafia member, and others in the facility are not allowed to

22 sell drugs until the Mexican Mafia member's thirds have been sold.

23       h.   The Mexican Mafia LACJ Enterprise does not limit its

24 extortion to the sale of drugs and the operation of the kitty.  The

25 enterprise may subject any person or inmate in a Mexican Mafia LACJ

26 Enterprise controlled neighborhood, facility, or module to extortion

27 for any money-generating activity he or she engages in while in the

28 enterprise controlled territory.

1          i.   The Mexican Mafia LACJ Enterprise has self-imposed
2  rules handed down by the Mexican Mafia.  These rules, referred to as
3  "reglas," are imposed to maintain fear and compliance among Surenos.
4  Because these rules provide a basis for being fined as well as
5  assaulted, they are a key part of the Mexican Mafia LACJ Enterprise's
6  extortion scheme.  If a southern California Hispanic gang member
7  should break one of these rules, discipline is imposed by a
8  facilitator, shot-caller, or secretary of the Mexican Mafia member in
9  control of the facility.  Such discipline is frequently imposed in
10 the form of a fine or an assault.  Assaults are often referred to as
11 "13 Seconds," "26 Seconds," or "39 Seconds."  The premise underlying
12 these punishments is that a person who breaks an enterprise rule
13 should be punished by beatings for either 13 seconds, or for a
14 multiple of 13 seconds.  Thirteen seconds is a less severe form of
15 punishment that usually involves two individuals assaulting the
16 offender for thirteen seconds.  Thirty-nine seconds is a more severe
17 form of punishment that involves three (or in some cases more)
18 individuals assaulting the offender for 39.  Thirty-nine seconds can
19 have different variations.  For example, thirty-nine seconds could be
20 issued in the form of three 13-second assaults on the same day
21 (sometimes referred to as "breakfast, lunch, and dinner") or it could
22 be one 39-second assault.  A 39-second punishment where three
23 individuals assault an offender for 39 consecutive seconds is also
24 commonly referred to as a "smash out" because the offender is usually
25 moved out of the area after the assault for his own safety by prison
26 or jail personnel.  Finally, "sopas," the Spanish word for "soups,"
27 is another common term for an assault.
28 ///

1          j.    One of the most important rules for which discipline
2   may be imposed by the Mexican Mafia LACJ Enterprise is a prohibition
3   on cooperating with law enforcement.

4          k.    Another important rule of the Mexican Mafia that is
5   enforced within the Mexican Mafia LACJ Enterprise is that any inmate
6   who is in custody for a sex offense is to be assaulted on sight.
7   After the sex offender is assaulted, the Mexican Mafia then extorts
8   payment from the sex offender in exchange for the Mexican Mafia's
9   agreement that there will be no further assaults.

10          l.    The most serious form of discipline is being put on
11   the "green light list" or being "greenlighted."  Being placed on the
12   green light list means that every Sureno is obligated to severely
13   assault the person, even if death is likely to result.  Only
14   true/full members of the Mexican Mafia can put a person, group, or
15   entire gang on the green light list.  Those who are put on a green
16   light list can be removed by the payment of a hefty fine.

17   B.   PURPOSES OF THE ENTERPRISE

18          5.    The purposes of the Mexican Mafia LACJ Enterprise include,
19   but are not limited to, the following:

20          a.    Enriching members and associates of the Mexican Mafia
21   LACJ Enterprise through, among other things, the control of and
22   participation in the distribution of controlled substances both
23   within LACJ and in Mexican Mafia-controlled territories outside of
24   LACJ, extortion of others engaged in the distribution of controlled
25   substances and other crimes within and outside of LACJ, and extortion
26   of inmates within LACJ.

27   ///
28   ///

b.  Maintaining control and authority over LACJ, often through threats, intimidation, and acts of violence against LACJ inmates.

c.  Maintaining control and authority over LACJ in order to maintain general Mexican Mafia discipline and to ensure that the rules and orders are obeyed.

d.  Promoting and enhancing the Mexican Mafia LACJ Enterprise's members and associates and their activities.

e.  Punishing Mexican Mafia members and associates who do not comply with the rules and orders of the Mexican Mafia in general, including and especially those who cooperate with law enforcement.

C.  <u>MEANS AND METHODS OF THE ENTERPRISE</u>

6.  The means and methods by which the defendants and their associates conduct and participate in the conduct of the affairs of the Mexican Mafia LACJ Enterprise include the following:

a.  Engaging in drug trafficking, including the smuggling of controlled substances into LACJ, as a means to generate income.

b.  Engaging in extortion, including the operation of the kitty within LACJ, and including fines for violations of Mexican Mafia rules, as a means to generate income.

c.  Working together to collect a portion of the proceeds of drug trafficking conducted by others both outside of LACJ and inside of LACJ, such as through the thirds tax, as a means to generate income.

d.  Committing, attempting to commit, and threatening to commit acts of violence to protect and expand the enterprise's criminal operation, including assaults, murders, acts of intimidation, and threats of violence directed against rival gang

1   members, witnesses to the Mexican Mafia LACJ Enterprise's criminal

2   conduct, and Mexican Mafia members and associates who do not follow

3   the rules and orders of the Mexican Mafia in general.

4        e.   Promoting a climate of fear, particularly among rival

5   gang members, potential witnesses to the enterprise's criminal

6   conduct, Hispanic gang members, Paisas, or others who may cooperate

7   with law enforcement within LACJ and throughout southern California,

8   through acts of violence and threats to commit acts of violence.

9        f.   Engaging in the aforementioned criminal activity in

10  the presence of other Mexican Mafia LACJ Enterprise members or

11  associates in order to enhance the status of those affirmatively

12  conducting the criminal acts, and committing the aforementioned

13  criminal activity for the purpose of earning the respect of Mexican

14  Mafia LACJ Enterprise members in the hope of achieving higher status.

15       g.   In the case of more senior members of the Mexican

16  Mafia LACJ Enterprise and their designated assistants, including

17  secretaries, shot-callers, and facilitators, providing instructions

18  to junior members and associates regarding distribution of controlled

19  substances, including smuggling controlled substances into LACJ,

20  collection of drug and extortion proceeds, commission of acts of

21  violence, commission of fraud and identity theft, and providing

22  verification that such crimes have occurred.

23       h.   In the case of more junior members and associates of

24  the Mexican Mafia LACJ Enterprise, engaging in the smuggling of

25  controlled substances into LACJ, carrying out assaults in LACJ and

26  elsewhere, and committing fraud and identity theft, all on the orders

27  of more senior members and associates.

28  ///

D.    OBJECT OF THE CONSPIRACY

7.    Beginning on a date unknown, and continuing to the date of this Indictment, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendants JOSE LANDA-RODRIGUEZ, LUIS VEGA, GABRIEL ZENDEJAS-CHAVEZ, RAFAEL LEMUS, LUIS GARCIA, ALVINO MUNOZ, DANIEL CERVANTES, MIGUEL CALDERON, ERNESTO VARGAS, MIGUEL RODRIGUEZ, GILBERT PARRA, GERARDO TAPIA, DONATO GONZALES, MIGUEL GARCIA, HECTOR DUARTE, SAMANTHA RIVERA, MARK LANDEROS, JONATHAN VERDEJA, CECILIA VIRGEN, LAUREEN GARCIA, NANCY DUARTE, VALERIE TREJO, GENESSIS BLANCO, KELLY JO BELL, JOSE FLORES, MARK LEVY, VALENTIN CORDOVA, FRANKIE MEGORADO, JOSE OLEA, MANUEL JIMENEZ, ALAVARO LEYVA, CHRIS FERREIRA, DAVID BERNARDINO, ANDREW PINEDA, ALONDRA GOMEZ, MIRIAM MEZA, ANA MARTINEZ, ALVARO RUIZ, ADRIAN ARAIZA, GAIL PONCE, DIANA MARTINEZ, MARLON CORNEJO, ANGEL SANCHEZ, JUAN REYES, RICHARD BAILEY, MICHAEL BENNETT, EDWIN AYALA, DAVID VILLALOBOS, and DAVID DIAZ, and others known and unknown to the Grand Jury, being persons employed by and associated with the Mexican Mafia LACJ Enterprise, an enterprise which was engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of:

multiple acts involving:

a.    Murder, in violation of California Penal Code Sections 21a, 31, 182, 187, 189, and 664;

b.    Kidnapping, in violation of California Penal Code Sections 21a, 31, 182, 207, 209, and 664;

c.    Robbery, in violation of California Penal Code Sections 21a, 31, 182, 211, 212, 212.5, 213, 215, and 664;

d.    Extortion, in violation of California Penal Code Sections 21a, 31, 182, 518, 519, 524, and 664;

multiple offenses involving:

e.    the distribution of, possession with intent to distribute, and conspiracy to possess with intent to distribute and distribute controlled substances, including methamphetamine, heroin, cocaine, cocaine base, and marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and 846;

and multiple acts indictable under the following provisions of federal law:

f.    Title 18, United States Code, Section 1512, Tampering with a Witness;

g.    Title 18, United States Code, Section 1513, Retaliating against a witness;

h.    Title 18, United States Code, Sections 1956 and 1957, Money Laundering;

i.    Title 18, United States Code, Section 1028, Identity Fraud; and

j.    Title 18, United States Code, Section 1029, Access Device Fraud.

8.    It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

///

E.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
     ACCOMPLISHED

     9.   The object of the conspiracy was to be accomplished, in
substance, as follows:

     a.   Defendants JOSE LANDA-RODRIGUEZ and LUIS VEGA and
deceased Mexican Mafia member 1 ("DMM-1") and deceased Mexican Mafia
member 2 ("DMM-2"), as full members of the Mexican Mafia, would have
the right to control and collect criminal proceeds, including
proceeds from extortion and the sale of controlled substances, from
neighborhoods or correctional facilities.

          i.   DMM-1 would control the Los Angeles County Jail
System from around October 2007 until his death on June 20, 2013.

          ii.  Defendant JOSE LANDA-RODRIGUEZ would control the
Los Angeles County Jail System from on or about June 20, 2013, until
at least January 26, 2016, except that he would cede control of NCCF
to DMM-2, on or about July 6, 2014.

          iii. Defendant LUIS VEGA would carry out Mexican Mafia
business within the Los Angeles County Jail System with the blessing
of DMM-1 from around July 2012 until the death of DMM-1 on June 20,
2013.

          iv.  DMM-2 would control NCCF from July 6, 2014,
through his death in June 2016.

     b.   Defendants GABRIEL ZENDEJAS-CHAVEZ, RAFAEL LEMUS, LUIS
GARCIA, ALVINO MUNOZ, DANIEL CERVANTES, MIGUEL CALDERON, ERNESTO
VARGAS, MIGUEL RODRIGUEZ, GILBERT PARRA, GERARDO TAPIA, and DONATO
GONZALES, and unindicted co-conspirator 1 ("UICC-1"), would act as
facilitators for one or more full members of the Mexican Mafia who
was also a member of the Mexican Mafia LACJ Enterprise and would act

1   with the authority of that Mexican Mafia LACJ Enterprise member in

2   directing the criminal activities of the Mexican Mafia LACJ

3   Enterprise, including extortion and the sale of controlled

4   substances.

5           i.   UICC-1 would carry out the orders of DMM-1 within

6   the Los Angeles County Jail System from about July 2012 through on or

7   about June 20, 2013.

8           ii.  UICC-1 would carry out the orders of defendant

9   JOSE LANDA-RODRIGUEZ within the Los Angeles County Jail System from

10  on or about June 20, 2013, through on or about November 5, 2013.

11          iii. Defendant GABRIEL ZENDEJAS-CHAVEZ, from outside

12  the Los Angeles County Jail System, would use his position as an

13  attorney to assist defendants JOSE LANDA-RODRIGUEZ and LUIS GARCIA,

14  DMM-2, and other co-conspirators, with activities inside and outside

15  the Los Angeles County Jail System.

16          iv.  Defendant RAFAEL LEMUS, from outside the Los

17  Angeles County Jail system, would work for and carry out the orders

18  for DMM-2, including collecting drug proceeds, fines, and kitty

19  extortion from NCCF from on or before February 4, 2014, through

20  November 22, 2015.

21          v.   Defendant LUIS GARCIA, from inside the Los

22  Angeles County Jail System, would work for and carry out the orders

23  of defendant JOSE LANDA-RODRIGUEZ from on or about November 5, 2013,

24  through on or about May 28, 2014.

25          vi.  Defendant ALVINO MUNOZ, from both inside and

26  outside the Los Angeles County Jail System, would work for and carry

27  out the orders of defendant JOSE LANDA-RODRIGUEZ from about April

28  2015 through at least July 2015.

vii. Defendant DANIEL CERVANTES, from outside the Los Angeles County Jail System, would work for and carry out the orders of DMM-1 from on or about October 22, 2012, through on or about May 10, 2013.

viii.    Defendant MIGUEL CALDERON, from outside the Los Angeles County Jail System, would work to direct activities within NCCF, MCJ, and Twin Towers on behalf of defendant JOSE LANDA-RODRIGUEZ from on or about June 20, 2013, through on or about June 30, 2013.

ix. Defendant ERNESTO VARGAS, from outside the Los Angeles County Jail System, would work to direct activities within NCCF on behalf of defendant JOSE LANDA-RODRIGUEZ from on or about October 1, 2013, through on or about July 6, 2014.

x.    Defendant MIGUEL RODRIGUEZ, from outside the Los Angeles County Jail System, would work to direct activities within NCCF on behalf of DMM-2, from on or about July 6, 2014, until on or about October 23, 2014.

xi. Defendant GILBERT PARRA, from both inside and outside the Los Angeles County Jail System, would direct the activities within NCCF on behalf of defendant JOSE LANDA-RODRIGUEZ from on or about October 10, 2013, to on or about December 26, 2013.

xii. Defendant GERARDO TAPIA, from outside the Los Angeles County Jail System, would direct drug trafficking activities outside the Los Angeles County Jail System on behalf of DMM-2 from on or about April 18, 2014, through on or about May 9, 2014.

xiii.    Defendant DONATO GONZALEZ, from both inside and outside the Los Angeles County Jail System, would direct activities within and outside the Los Angeles County Jail System on

behalf of DMM-2 from on or about April 18, 2014, through on or about May 9, 2014.

      c.   Defendants MIGUEL GARCIA, HECTOR DUARTE, SAMANTHA RIVERA, MARK LANDEROS, and JONATHAN VERDEJA, and unindicted co-conspirator 2 ("UICC-2"), unindicted co-conspirator 3 ("UICC-3") unindicted co-conspirator 4 ("UICC-4"), and unindicted co-conspirator 5 ("UICC-5"), would act as facilitators for one or more full members of the Mexican Mafia, and would carry out specific orders related to the criminal activities of the Mexican Mafia LACJ Enterprise, including extortion and the sale of controlled substances, in specific locations, including LACJ.

      i.   UICC-3, from inside the Los Angeles County Jail System, would direct activities at MCJ and Twin Towers on behalf of DMM-1 from on or about December 18, 2012, through on or about June 20, 2013.

      ii.  Defendant MIGUEL GARCIA, from inside the Los Angeles County Jail System, would direct activities at NCCF on behalf of DMM-1 from on or about April 5, 2013, through on or about April 12, 2013.

      iii. Unindicted co-conspirator 9 ("UICC-9"), from inside the Los Angeles County Jail System, would direct activities at MCJ and Twin Towers on behalf of defendant JOSE LANDA-RODRIGUEZ from on or about June 23, 2013, through on or about July 3, 2013.

      iv.  Defendant HECTOR DUARTE, from inside the Los Angeles County Jail System, would direct activities at NCCF on behalf of DMM-2 from on or about July 6, 2014, through on or about November 10, 2014.

///

1         v.    Defendant SAMANTHA RIVERA, from outside the Los

2 Angeles County Jail System, would coordinate defendant JOSE LANDA-

3 RODRIGUEZ'S dealings with other Mexican Mafia members from on or

4 about June 20, 2013, through on or about December 18, 2015.

5         vi.  Defendant MARK LANDEROS, from inside the Los

6 Angeles County Jail System, would direct activities at MCJ and Twin

7 Towers on behalf of defendant JOSE LANDA-RODRIGUEZ, from on or about

8 July 24, 2013, through on or about June 5, 2014.

9         vii. Defendant JONATHAN VERDEJA, from inside the Los

10 Angeles County Jail System, would direct activities at NCCF on behalf

11 of defendant JOSE LANDA-RODRIGUEZ from on or about October 16, 2013,

12 through on or about December 26, 2013.

13         viii.   UICC-2, from inside the Los Angeles County

14 Jail System, would direct activities at MCJ and Twin Towers on behalf

15 of defendant JOSE LANDA-RODRIGUEZ.

16         ix.  UICC-4, from inside the Los Angeles County Jail

17 System, would direct activities at NCCF on behalf of defendant JOSE

18 LANDA-RODRIGUEZ from on or about June 20, 2013, through on or about

19 June 30, 2013.

20         x.   UICC-5, from outside LACJ, would direct

21 activities at NCCF on behalf of DMM-2, from on or about August 22,

22 2015, through June 4, 2016.

23      d.   Defendants CECILIA VIRGEN, LAUREEN GARCIA, NANCY

24 DUARTE, VALERIE TREJO, GENESSIS BLANCO, and KELLY JO BELL, and UICC-

25 6, would act as secretaries for high-level Mexican Mafia LACJ

26 Enterprise associates, passing messages regarding, facilitating

27 communication about, and keeping records of the criminal activities

28 ///

of the Mexican Mafia LACJ Enterprise, including extortion and the sale of controlled substances.

       i.    Defendant CECILIA VIRGEN would act as the secretary for defendant DANIEL CERVANTES for activities inside the Los Angeles County Jail System from on or about December 18, 2012, through on or about May 22, 2013.

       ii.    Defendant LAUREEN GARCIA would act as the secretary for defendant ERNESTO VARGAS for activities inside NCCF from on or about October 1, 2013, through on or about November 1, 2013.

       iii. Defendant NANCY DUARTE would act as the secretary for defendant HECTOR DUARTE for activities at NCCF from on or about July 6, 2014, through on or about October 23, 2014.

       iv.    Defendant VALERIE TREJO would act as the secretary for UICC-3 for activities at MCJ and Twin Towers from on or about February 2013, through on or about June 20, 2013.

       v.    Defendant KELLY JO BELL would act as a secretary for defendant ALVINO MUNOZ from August 19, 2015, through October 14, 2015.

       vi.   Defendants GENESSIS BLANCO would act as a secretary for DMM-2 and UICC-6 for activities inside NCCF from on or about August 22, 2015, through on or about October 23, 2015.

       vii. UICC-6 would act as a secretary for defendant MARK LANDEROS in January 2016.

       e.    Unindicted co-conspirator 7 ("UICC-7") would carry out the orders of DMM-1, UICC-1, and UICC-3 to control Twin Towers from on or about July 17, 2012, through on or about June 20, 2013.

///

1        f.   Defendants JOSE FLORES, MARK LEVY, VALENTIN CORDOVA,

2  FRANKIE MEGORADO, JOSE OLEA, MANUEL JIMENEZ, ALAVARO LEYVA, CHRIS

3  FERREIRA, MIGUEL GARCIA, DAVID BERNARDINO, and ANDREW PINEDA, and

4  unindicted co-conspirators Robert Ramirez, UICC-4, unindicted co-

5  conspirator 8 ("UICC-8"), unindicted co-conspirator 10 ("UICC-10"),

6  unindicted co-conspirator 11 ("UICC-11"), and unindicted co-

7  conspirator 12 ("UICC-12"), would carry out the orders of the Mexican

8  Mafia LACJ Enterprise within specific portions of the Los Angeles

9  County Jail System, thereby facilitating the criminal activities of

10  the Mexican Mafia LACJ Enterprise, including extortion and the sale

11  of controlled substances.

12        i.   Defendant JOSE FLORES would carry out the orders

13  of defendant CECILIA VIRGEN in NCCF from on or about December 19,

14  2012, through on or about January 22, 2013.

15        ii.  UICC-8 would carry out the orders of defendant

16  CECILIA VIRGEN inside NCCF from on or about October 26, 2012, through

17  on or about December 28, 2012.

18        iii. Defendant MARK LEVY would carry out the orders of

19  defendant CECILIA VIRGEN inside NCCF from on or about February 10,

20  2013, through on or about February 13, 2013.

21        iv.  Defendant VALENTIN CORDOVA would carry out the

22  orders of defendant CECILIA VIRGEN inside NCCF from on or about April

23  2, 2013, through on or about May 20, 2013.

24        v.   UICC-11 would carry out the orders of defendant

25  CECILIA VIRGEN inside NCCF from on or about March 25, 2013, through

26  on or about May 23, 2013.

27        vi.  Defendant FRANKIE MEGORADO would carry out the

28  orders of defendant CECILIA VIRGEN inside NCCF from on or about April

6, 2013, through on or about May 22, 2013, and would carry out the orders of defendant LAUREEN GARCIA inside NCCF from on or about May 23, 2013, through October 5, 2013.

vii. Defendant JOSE OLEA would carry out the orders of defendant CECILIA VIRGEN inside NCCF from on or about April 7, 2013, through on or about April 13, 2013.

viii. UICC-10 would carry out the orders of UICC-3 inside MCJ and Twin Towers from on or about December 30, 2012, through on or about May 30, 2013.

ix. UICC-4 would carry out the orders of defendant MIGUEL CALDERON inside NCCF from on or about June 20, 2013, through on or about June 30, 2013.

x. Defendant MANUEL JIMENEZ would carry out the orders of defendant LAUREEN GARCIA inside NCCF from on or about October 1, 2013, through on or about November 1, 2013.

xi. Defendant ALAVARO LEYVA would carry out the orders of defendant LAUREEN GARCIA inside NCCF from on or about October 2, 2013, through on or about October 5, 2013.

xii. Defendant CHRIS FERREIRA would carry out the orders of defendant NANCY DUARTE inside NCCF from on or about July 6, 2014, through on or about July 25, 2014.

xiii. Defendant MIGUEL GARCIA would carry out the orders of defendant ERNESTO VARGAS inside NCCF from on or about September 24, 2013, through on or about October 21, 2013.

xiv. Defendant DAVID BERNARDINO would carry out the orders of defendant NANCY DUARTE inside NCCF from at least no later than September 1, 2014 through at least no earlier than September 6, 2014.

xv.  Defendant ANDREW PINEDA would carry out the orders of defendant GENESSIS BLANCO inside NCCF from on or about August 22, 2015, through on or about October 23, 2015.

xvi. Unindicted co-conspirator Robert Ramirez would carry out the orders of defendant KELLY JO BELL at MCJ from on or about August 19, 2015, through on or about October 14, 2015.

xvii.  UICC-12 would carry out the orders of defendant MARK LANDEROS in MCJ in January 2016.

g.  Defendants ALONDRA GOMEZ, MIRIAM MEZA, ANA MARTINEZ, ALVARO RUIZ, ADRIAN ARAIZA, GAIL PONCE, and DIANA MARTINEZ, and unindicted co-conspirators Kristen Ayala, unindicted co-conspirator 14 ("UICC-14"), unindicted co-conspirator 15 ("UICC-15"), and unindicted co-conspirator 16 ("UICC-16"), would assist Mexican Mafia LACJ Enterprise members and associates in directing activities inside and outside the Los Angeles County Jail System, thereby facilitating the criminal activities of the Mexican Mafia LACJ Enterprise, including extortion and the sale of controlled substances.

i.  Defendant ALONDRA GOMEZ would assist defendant DANIEL CERVANTES in collecting and laundering the proceeds of Mexican Mafia LACJ Enterprise activities.

ii.  UICC-14 would pass DMM-1's directions regarding the collection and laundering of the proceeds of Mexican Mafia LACJ Enterprise activities to defendant DANIEL CERVANTES.

iii. Defendant MIRIAM MEZA would assist UICC-3 and defendant CECILIA VIRGEN in collecting proceeds of Mexican Mafia LACJ Enterprise activities.

///
///

1         iv.  Defendant ANA MARTINEZ would assist UICC-10 by

2 obtaining "burnout" phones, arranging the smuggling of drugs into the

3 Los Angeles County Jail System, and collecting money for UICC-3.

4         v.   Unindicted co-conspirator Kristen Ayala would

5 assist defendant MARK LANDEROS in smuggling drugs into the Los

6 Angeles County Jail System.

7         vi.  Defendant ALVARO RUIZ would assist defendant

8 ==DONATO GONZALES== by organizing shipments of drugs into the Los Angeles

9 County Jail System, and would assist defendant JOSE LANDA-RODRIGUEZ

10 by passing messages.

11         vii. Defendant ADRIAN ARAIZA would assist defendant

12 DANIEL CERVANTES by providing drugs to be smuggled into the Los

13 Angeles County Jail System.

14         viii.   UICC-15 would assist UICC-3 by moving the

15 kitty money from defendant ANGEL SANCHEZ's inmate trust account to

16 defendant VALERIE TREJO.

17         ix.  Defendant GAIL PONCE would pass defendant HECTOR

18 DUARTE's orders to defendant DAVID BERNARDINO.

19         x.   UICC-16 would pass messages to and from UICC-12.

20         xi.  Defendant DIANA MARTINEZ would assist defendant

21 GERARDO TAPIA in trafficking controlled substances, and in carrying

22 out orders to commit acts of violence on behalf of Mexican Mafia LACJ

23 Enterprise members.

24       h.  Defendants MARLON CORNEJO, JUAN REYES, RICHARD BAILEY,

25 MICHAEL BENNETT, EDWIN AYALA, DAVID VILLALOBOS, DAVID DIAZ, ANGEL

26 SANCHEZ, VALERIE TREJO, KELLY JO BELL, MARK LANDEROS, LUIS GARCIA,

27 ANA MARTINEZ, and others known and unknown to the Grand Jury, would

28 carry out the orders and business of the Mexican Mafia LACJ

Enterprise in furtherance of its criminal activities, including extortion and the sale of controlled substances.

      i.    Defendants MARK LANDEROS, LUIS GARCIA, DAVID VILLALOBOS, and DAVID DIAZ, and others known and unknown to the Grand Jury would engage in acts of violence inside the Los Angeles County Jail System to enforce Mexican Mafia rules and discipline, to collect debts on behalf of the Mexican Mafia LACJ Enterprise, including proceeds from the sale of controlled substances, and to extort on behalf of the Mexican Mafia LACJ Enterprise.

      ii.   Defendants RICHARD BAILEY, VALERIE TREJO, KELLY JO BELL, and ANA MARTINEZ and others known and unknown to the grand jury would assist in the smuggling of drugs into the Los Angeles County Jail System.

      iii. Unindicted co-conspirators known and unknown to the Grand Jury would smuggle drugs into the Los Angeles County Jail System.

      iv.   Defendants MARLON CORNEJO, JUAN REYES, MICHAEL BENNETT, EDWIN AYALA, and others known and unknown to the grand jury would smuggle drugs within the Los Angeles County Jail System.

      v.    Defendants MARLON CORNEJO, JUAN REYES, MICHAEL BENNETT, EDWIN AYALA, and others known and unknown to the grand jury would smuggle written communications within the Los Angeles County Jail System.

      vi.   Defendant ANGEL SANCHEZ would allow his inmate trust account to be used to move and launder Mexican Mafia LACJ Enterprise proceeds.

///

///

F.    OVERT ACTS

10.   In furtherance of the conspiracy and to accomplish its object, on or about the following dates, defendants JOSE LANDA-RODRIGUEZ, LUIS VEGA, GABRIEL ZENDEJAS-CHAVEZ, RAFAEL LEMUS, LUIS GARCIA, ALVINO MUNOZ, DANIEL CERVANTES, MIGUEL CALDERON, ERNESTO VARGAS, MIGUEL RODRIGUEZ, GILBERT PARRA, GERARDO TAPIA, DONATO GONZALES, MIGUEL GARCIA, HECTOR DUARTE, SAMANTHA RIVERA, MARK LANDEROS, JONATHAN VERDEJA, CECILIA VIRGEN, LAUREEN GARCIA, NANCY DUARTE, VALERIE TREJO, GENESSIS BLANCO, KELLY JO BELL, JOSE FLORES, MARK LEVY, VALENTIN CORDOVA, FRANKIE MEGORADO, JOSE OLEA, MANUEL JIMENEZ, ALAVARO LEYVA, CHRIS FERREIRA, DAVID BERNARDINO, ANDREW PINEDA, ALONDRA GOMEZ, MIRIAM MEZA, ANA MARTINEZ, ALVARO RUIZ, ADRIAN ARAIZA, GAIL PONCE, DIANA MARTINEZ, MARLON CORNEJO, ANGEL SANCHEZ, JUAN REYES, RICHARD BAILEY, MICHAEL BENNETT, EDWIN AYALA, DAVID VILLALOBOS, and DAVID DIAZ, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Orders to Assault or Kill Persons in Violation of Mexican Mafia Rules and to Collect Taxes in LACJ

Overt Act No. 1:    On or before July 17, 2012, defendant LUIS VEGA, in a handwritten kite, ordered unindicted co-conspirator 17 ("UICC-17") to make sure that J.L. would be assaulted for falsely claiming to have authority within the Mexican Mafia.

Overt Act No. 2:    On or before July 17, 2012, defendant LUIS VEGA, in a handwritten "kite," ordered UICC-17 to ensure that a disrespectful Sureno would be stabbed 13 times as discipline for disrespecting Mexican Mafia member defendant LUIS VEGA.

Overt Act No. 3:   On or before July 17, 2012, defendant LUIS VEGA ordered UICC-17 to collect the thirds tax from a Sureno known as "Cyco."

Appointment of Humberto Miranda to Run Mexican Mafia LACJ Enterprise Business within Twin Towers, Including Collection of Extortion Proceeds

Overt Act No. 4:   On or before July 17, 2012, defendant LUIS VEGA ordered that UICC-7 run Twin Towers, including the collection of the "kitty," the collection of the thirds tax, and the collection of fines.

Overt Act No. 5:   From July 17, 2012, through January 19, 2013, UICC-7 ran Twin Towers, including the collection of kitty money, the collection of the thirds tax, and the collection of fines.

Overt Act No. 6:   Prior to January 2, 2013, UICC-7 ordered that a Sureno known as "Rooster" be assaulted for losing previous kites intended for UICC-7.

Smuggling and Possession of Cocaine and Methamphetamine within LACJ and Collection of the Thirds Tax

Overt Act No. 7:   On or before September 10, 2012, J.M. possessed and distributed cocaine and methamphetamine within MCJ.

Overt Act No. 8:   On or before September 10, 2012, J.M. paid his thirds tax on the cocaine and methamphetamine to UICC-1.

Overt Act No. 9:   On September 10, 2012, defendant MARLON CORNEJO possessed J.M.'s thirds tax, consisting of approximately 2.25 grams of cocaine and .09 grams of methamphetamine, in order to give it to UICC-1.

///

///

1   Overt Act No. 10:   On September 10, 2012, J.M. possessed

2   approximately .15 grams of cocaine within LACJ with intent to

3   distribute.

4   Laundering of Money from LACJ

5   Overt Act No. 11:   From August 22, 2012, through at least May

6   9, 2013, defendant ALONDRA GOMEZ opened and maintained a post office

7   box for the purpose of collecting payments from Mexican Mafia LACJ

8   Enterprise activities.

9   Overt Act No. 12:   On October 22, 2012, defendant DANIEL

10  CERVANTES met with a person he believed to be a criminal associate,

11  but who was actually an undercover agent from Homeland Security

12  Investigations (the "HSI UC"), to launder the proceeds of Mexican

13  Mafia LACJ Enterprise activities.

14  Overt Act No. 13:   On October 22, 2012, defendant DANIEL

15  CERVANTES gave $9,239 in money orders representing proceeds of

16  Mexican Mafia LACJ Enterprise activities to the HSI UC for the HSI UC

17  to launder by negotiating the money orders in exchange

18  Overt Act No. 14:   On October 22, 2012, defendant DANIEL

19  CERVANTES received from the HSI UC approximately $8,315 in cash

20  representing the proceeds from the negotiation of the money orders.

21  Laundering of Money from LACJ

22  Overt Act No. 15:   On November 5, 2012, defendant DANIEL

23  CERVANTES met with the HSI UC and gave approximately $11,032 in money

24  orders representing proceeds of Mexican Mafia LACJ Enterprise

25  activities to the HSI UC for the HSI UC to launder by negotiating the

26  money orders in exchange for a fee.

27  ///

28  ///

Overt Act No. 16:   On November 6, 2012, defendant DANIEL CERVANTES received from the HSI UC approximately $9,928 in cash representing the proceeds from the negotiation of the money orders.

Assault of R.G. for Interfering with Drug Trafficking

Overt Act No. 17:   Prior to December 6, 2012, defendant CECILIA VIRGEN ordered defendant JOSE FLORES to have R.G. assaulted for violating Mexican Mafia rules by opening drugs that belonged to the Mexican Mafia LACJ Enterprise without authorization.

Overt Act No. 18:   On or before December 6, 2012, defendant JOSE FLORES ordered that R.G. be assaulted for violating Mexican Mafia rules by opening drugs that belonged to the Mexican Mafia LACJ Enterprise without authorization.

Overt Act No. 19:   On December 6, 2012, unindicted co-conspirators assaulted R.G. on defendant JOSE FLORES' orders.

Overt Act No. 20:   On December 20, 2012, in a recorded telephone call, defendant CECILIA VIRGEN advised defendant JOSE FLORES that R.G. had been assaulted.

Overt Act No. 21:   On December 20, 2012, in a recorded telephone call, defendant CECILIA VIRGEN ordered that R.G. be assaulted again, and defendant JOSE FLORES suggested that the assault be for 39 seconds.

Laundering of Money from LACJ

Overt Act No. 22:   On November 9, 2012, UICC-14 called defendant DANIEL CERVANTES from LACJ, and in coded language during this recorded telephone call, defendant DANIEL CERVANTES told UICC-14 that he had $13,000 in proceeds of Mexican Mafia LACJ Enterprise activities and asked what he should do with it.

///

38

1     Overt Act No. 23:   On November 9, 2012, UICC-14 asked DMM-1

2   what DANIEL CERVANTES should do with the $13,000.

3     Overt Act No. 24:   On November 9, 2012, in a recorded telephone

4   conversation, UICC-14 passed on to defendant DANIEL CERVANTES DMM-1's

5   directions that defendant DANIEL CERVANTES should launder all $13,000

6   and that $12,000 of Mexican Mafia LACJ Enterprise proceeds be given

7   to DMM-1's wife.

8     Overt Act No. 25:   On December 6, 2012, defendant DANIEL

9   CERVANTES met with the HSI UC and gave approximately $13,000 in money

10  orders representing proceeds of Mexican Mafia LACJ Enterprise

11  activities in LACJ to the HSI UC for the HSI UC to launder by

12  negotiating the money orders in exchange for a fee.

13    Overt Act No. 26:   On December 7, 2012, defendant DANIEL

14  CERVANTES received from the HSI UC approximately $10,237 in cash

15  representing the proceeds from the negotiation of the money orders

16  and approximately $2,100 in uncashed money orders.

17    Overt Act No. 27:   On December 13, 2012, defendant DANIEL

18  CERVANTES arranged for the HSI UC to meet with defendant ALONDRA

19  GOMEZ for the purpose of laundering approximately $2,100 in money

20  orders representing proceeds from Mexican Mafia LACJ Enterprise

21  activities.

22    Overt Act No. 28:   On December 13, 2012, defendant ALONDRA

23  GOMEZ met with the HSI UC and negotiated approximately $2,100 in

24  money orders representing proceeds of Mexican Mafia LACJ Enterprise

25  activities in LACJ.

26  ///

27  ///

28  ///

Extortion and Assault of J.D.

    Overt Act No. 29:  On December 18, 2012, in a recorded telephone call, defendant CECILIA VIRGEN asked UICC-3 to collect a debt owed to her by J.D. or to assault J.D. if he did not pay.

    Overt Act No. 30:  From December 18, 2012, through February 11, 2013, UICC-3 arranged for J.D. to be repeatedly assaulted in LACJ for failing to pay a debt.

    Overt Act No. 31:  Prior to January 18, 2013, unindicted co-conspirator 18 ("UICC-18") allowed his LACJ inmate trust account to be used to collect the debt from J.D.

    Overt Act No. 32:  On January 25, 2013, UICC-3 told defendant CECILIA VIRGEN that $200 from J.D. had been placed on UICC-18's LACJ inmate trust account.

    Overt Act No. 33:  On January 29, 2013, in a recorded telephone call, defendant CECILIA VIRGEN asked UICC-3 if J.D. had paid his debt.

    Overt Act No. 34:  On February 7, 2013, in a recorded telephone call, UICC-3 instructed defendant VALERIE TREJO to pass a message to defendant CECILIA VIRGEN that J.D. had not paid his debt, and defendant VALERIE TREJO confirmed that she sent the message.

    Overt Act No. 35:  On February 11, 2013, in a recorded telephone call, UICC-3 again instructed defendant VALERIE TREJO to tell defendant CECILIA VIRGEN that J.D. had not paid the debt.

    Overt Act No. 36:  On February 11, 2013, in a recorded telephone call, UICC-3 told defendant CECILIA VIRGEN that J.D. had not paid the debt but had been assaulted, and UICC-3 and defendant CECILIA VIRGEN discussed where they could find J.D. outside of LACJ.

///

Extortion of L.O.

Overt Act No. 37:   From December 17, 2012, through December 30, 2012, UICC-3 extorted approximately $2,000 worth of heroin from L.O.

Overt Act No. 38:   From December 19, 2012, through December 30, 2012, in recorded telephone calls from UICC-3, defendant CECILIA VIRGEN discussed her plans to obtain drugs provided by L.O. as a result of extortion and to have the drugs smuggled into LACJ.

Smuggling of Heroin and Methamphetamine within LACJ

Overt Act No. 39:   On December 19, 2012, UICC-3 arranged to transport approximately 5.33 grams of black tar heroin and 1.65 grams of a mixture or substance containing a detectable amount of methamphetamine from MCJ to NCCF to be sold on behalf of the Mexican Mafia LACJ Enterprise.

Overt Act No. 40:   On December 19, 2012, defendant JUAN REYES transported approximately 5.33 grams of black tar heroin and 1.65 grams of a mixture or substance containing a detectable amount of methamphetamine from MCJ to NCCF in his body on behalf of the Mexican Mafia LACJ Enterprise.

Overt Act No. 41:   On December 23, 2012, in a recorded telephone call, defendant CECILIA VIRGEN informed UICC-3 that the black tar heroin and methamphetamine carried by defendant JUAN REYES had been seized by law enforcement.

Assault and Extortion of S.M.

Overt Act No. 42:   Prior to December 21, 2012, defendant CECILIA VIRGEN ordered that S.M. be assaulted because he was in bad standing with the Mexican Mafia LACJ Enterprise.

Overt Act No. 43:   On December 21, 2012, unindicted co-conspirators assaulted S.M.

1 Smuggling of Heroin into LACJ

2     Overt Act No. 44:   From October 26, 2012, through October 31,

3 2012, in recorded telephone calls, UICC-8 and unindicted co-

4 conspirator 19 ("UICC-19") arranged for an attorney, unindicted co-

5 conspirator 20 ("UICC-20") to bring heroin into LACJ by hiding the

6 heroin in a greeting card that UICC-19 would give to UICC-20 to pass

7 to UICC-8.

8     Overt Act No. 45:   Prior to and on December 22, 2012, in

9 recorded telephone calls, defendant CECILIA VIRGEN discussed with

10 UICC-8 the plan to smuggle heroin into LACJ, and defendant CECILIA

11 VIRGEN directed UICC-8 to allow her to add approximately one-half

12 ounce of heroin into the heroin-filled greeting card.

13     Overt Act No. 46:   On December 24, 2012, in a recorded

14 telephone conversation, UICC-8 and UICC-19 ordered approximately one

15 and one-half ounces of heroin from unindicted co-conspirator 21

16 ("UICC-21") and discussed that the destination for the heroin was

17 LACJ.

18     Overt Act No. 47:   On December 25, 2012, UICC-19 purchased

19 approximately one and one-half ounces of heroin from UICC-21.

20     Overt Act No. 48:   On December 28, 2012, as arranged by

21 defendant CECILIA VIRGIN, UICC-8, UICC-19, UICC-20 attempted to

22 smuggle a greeting card containing approximately 23.8 grams of heroin

23 into LACJ, but were caught by LASD deputies.

24 Collection of the Kitty

25     Overt Act No. 49:   From July 14, 2012, through May 22, 2013,

26 defendant MIRIAM MEZA collected kitty proceeds, drug proceeds, and

27 other extortion proceeds from LACJ and placed that money onto the

28 ///

1  inmate trust accounts of unindicted co-conspirators UICC-3 and

2  UICC-18.

3  <u>Orders to Assault R.G. and "Stomper" from the Rockwood gang because</u>

4  <u>of R.G.'s Interference with Drug Trafficking</u>

5      <u>Overt Act No. 50:</u>  From December 29, 2012, through December 31,

6  2012, in recorded telephone calls from defendant JOSE FLORES,

7  defendant CECILIA VIRGEN ordered that R.G. be assaulted for

8  protesting his previous assault and that a Sureno known as "Stomper"

9  from the Rockwood gang be assaulted for speaking up on behalf of R.G.

10  <u>Money Laundering Using an Inmate Trust Account</u>

11      <u>Overt Act No. 51:</u>  On or before December 27, 2012, UICC-7

12  directed his subordinates to put the kitty and drug money onto the

13  inmate trust account of defendant ANGEL SANCHEZ.

14      <u>Overt Act No. 52:</u>  From December 23, 2012, through January 31,

15  2013, defendant ANGEL SANCHEZ allowed his LACJ inmate trust account

16  to be used by the Mexican Mafia LACJ Enterprise to launder the kitty

17  and drug money.

18      <u>Overt Act No. 53:</u>  On or before January 25, 2013, defendant

19  MARK LANDEROS sent a kite to inform UICC-3 that the kitty money was

20  being placed on the LACJ inmate trust account of defendant ANGEL

21  SANCHEZ.

22      <u>Overt Act No. 54:</u>  From December 23, 2012, through January 19,

23  2013, in recorded telephone conversations, defendant ANGEL SANCHEZ

24  and UICC-15 discussed withdrawing the Mexican Mafia LACJ Enterprise's

25  money from defendant ANGEL SANCHEZ' LACJ inmate trust account.

26      <u>Overt Act No. 55:</u>  From on or before January 11, 2013, through

27  January 31, 2013, UICC-15, withdrew the kitty and drug money from

28  ///

1  defendant ANGEL SANCHEZ' LACJ inmate trust account to be given to

2  defendant VALERIE TREJO for UICC-3.

3  Order to Assault or Murder J.R.

4      Overt Act No. 56:   In September 2011, defendant LUIS VEGA

5  ordered J.R. to allow his home to be used to store weapons and drugs.

6      Overt Act No. 57:   On November 16, 2011, because of J.R.'s

7  refusal to allow his home to be used to store weapons and drugs,

8  defendant LUIS VEGA gathered fellow gang members, obtained a firearm,

9  and went to J.R.'s residence to threaten him into agreeing to allow

10  his home to be used to store weapons and drugs.

11      Overt Act No. 58:   On or after November 16, 2011, defendant

12  LUIS VEGA placed J.R. on the "Green Light" list because J.R. called

13  the police and caused defendant LUIS VEGA's arrest.

14      Overt Act No. 59:   On December 1, 2012, upon learning that J.R.

15  was in LACJ, defendant LUIS VEGA sent a kite ordering that J.R. be

16  murdered to a person defendant LUIS VEGA thought was a fellow MS-13

17  gang member, but who was actually J.R.

18  Laundering of Money from LACJ

19      Overt Act No. 60:   On January 9, 2013, defendant DANIEL

20  CERVANTES met with and gave approximately $10,046 in money orders

21  representing proceeds of Mexican Mafia LACJ Enterprise activities to

22  the HSI UC for the HSI UC to launder by negotiating the money orders

23  in exchange for a fee.

24      Overt Act No. 61:   On January 10, 2013, defendant DANIEL

25  CERVANTES received from the the HSI UC approximately $9,414 in cash

26  representing the proceeds from the negotiation of the money orders.

27  ///

28  ///

Attempted Smuggling of Marijuana and Correspondence Related to
Extortion and Money Laundering into LACJ

Overt Act No. 62:    On January 18, 2013, unindicted co-
conspirator 22 ("UICC-22") transported, in his body, marijuana, a
kite discussing extortion and money laundering, and three roll calls
from UICC-7 intended for UICC-1.

Smuggling of Heroin and Methamphetamine into LACJ

Overt Act No. 63:    From December 19, 2012, through January 22,
2013, defendants CECILIA VIRGEN and JOSE FLORES, and UICC-3 and
unindicted co-conspirator 23 ("UICC-23"), arranged to smuggle
approximately 64.6 grams of heroin and approximately 36.7 grams of
methamphetamine into LACJ on behalf of DMM-1.

Overt Act No. 64:    On January 19, 2013, at defendant CECILIA
VIRGEN's direction, UICC-23 possessed and smuggled in his body at
least 64.6 grams of heroin and 36.7 grams of methamphetamine into
LACJ for DMM-1.

Overt Act No. 65:    On January 22, 2013, UICC-23 gave an unknown
amount of a controlled substance to UICC-3 in LACJ.

Possession of Methamphetamine, Cash, and Firearms

Overt Act No. 66:    On January 29, 2013, ADRIAN ARAIZA possessed
with intent to distribute approximately 6,317.7 grams of
methamphetamine, on behalf of DMM-1.

Overt Act No. 67:    On January 29, 2013, ADRIAN ARAIZA possessed
two firearms in order to protect the approximately 6,317.7 grams of
methamphetamine.

Overt Act No. 68:    On January 29, 2013, defendant ADRIAN ARAIZA
possessed approximately $444,372 in drug proceeds on behalf of DMM-1.

Attempted Murder of M.A.

Overt Act No. 69:   On February 7, 2013, defendant LUIS GARCIA attempted to kill M.A. in LACJ because M.A. was on the "Green Light" list.

Assault and Extortion of S.M.

Overt Act No. 70:   From February 10, 2013, through February 13, 2013, in recorded telephone calls, defendants CECILIA VIRGEN and MARK LEVY arranged for S.M. to be assaulted until he made a payment to the Mexican Mafia LACJ Enterprise.

Overt Act No. 71:   On February 13, 2013, unindicted coconspirators assaulted S.M. because of his bad standing with the Mexican Mafia LACJ Enterprise.

Smuggling of Methamphetamine, Heroin, and Marijuana into LACJ

Overt Act No. 72:   From January 22, 2013, through February 28, 2013, defendants CECILIA VIRGEN, VALERIE TREJO, and RICHARD BAILEY, and unindicted co-conspirators Richard Griego and UICC-3, arranged for heroin, methamphetamine and marijuana to be smuggled to UICC-3 in LACJ on behalf of DMM-1.

Overt Act No. 73:   On February 12, 2013, defendant RICHARD BAILEY packaged methamphetamine, heroin, and marijuana for unindicted co-conspirator Richard Griego to smuggle into LACJ.

Overt Act No. 74:   On February 28, 2013, unindicted co-conspirator Richard Griego  possessed in his body and attempted to smuggle approximately 26.2 grams of pure methamphetamine, approximately 62.9 grams of heroin, and approximately 11.75 grams of marijuana into LACJ for UICC-3 and DMM-1.

///

///

///

46

Assault of I.E. for Taking Mexican Mafia LACJ Enterprise Extortion
Proceeds and for Cooperating with Law Enforcement

Overt Act No. 75:   On March 15, 2013, unindicted co-
conspirators assaulted I.E. at the direction of defendant VALENTIN
CORDOVA.

Overt Act No. 76:   On April 12, 2013, in a recorded telephone
call, defendant VALENTIN CORDOVA reported to defendant CECILIA VIRGEN
that he had ordered that I.E. be assaulted because I.E. had been
taking Mexican Mafia LACJ Enterprise proceeds and had told LACJ
deputies about a previous assault on him, so that defendant CECILIA
VIRGEN could inform other facilities that I.E. should be assaulted.

Assault and Extortion of S.M.

Overt Act No. 77:   Prior to March 21, 2013, defendant CECILIA
VIRGEN ordered that S.M. be assaulted until he made a payment to the
Mexican Mafia LACJ Enterprise.

Overt Act No. 78:   On March 21, 2013, unindicted co-
conspirators assaulted S.M. because of his bad standing with the
Mexican Mafia LACJ Enterprise.

Assault of R.K. and Planned Assault of G.S. for Cooperating with Law
Enforcement

Overt Act No. 79:   On or before March 25, 2013, UICC-11 ordered
that R.K. be assaulted because UICC-11 suspected that R.K. had
cooperated with law enforcement.

Overt Act No. 80:   On March 25, 2013, unindicted co-
conspirators R.K. on UICC-11's orders because of R.K.'s suspected
cooperation with law enforcement.

Overt Act No. 81:   From April 6, 2013, through May 21, 2013,
UICC-3 and defendant CECILIA VIRGEN discussed, in recorded telephone

1 calls, locating G.S. in order to have him assaulted as discipline for

2 his suspected cooperation with law enforcement.

Assault of A.R. in Order to Commit Extortion

4     Overt Act No. 82:   On March 31, 2013, defendant MARK LANDEROS

5 and unindicted co-conspirator 25 ("UICC-25") assaulted A.R. because

6 they believed A.R. was in LACJ for a sexual assault.

Assault and Extortion of J.M.-2

8     Overt Act No. 83:   On or before April 2, 2013, defendant

9 VALENTIN CORDOVA ordered the assault of J.M.-2 because J.M.-2 lied

10 about his identity to the Mexican Mafia LACJ Enterprise.

11     Overt Act No. 84:   On April 2, 2013, unindicted co-conspirators

12 assaulted J.M.-2 because of his bad standing with the Mexican Mafia

13 LACJ Enterprise.

14     Overt Act No. 85:   On April 6, 2013, in a recorded telephone

15 call, defendant CECILIA VIRGEN ordered that J.M.-2 be assaulted until

16 he pays his debt to the Mexican Mafia LACJ Enterprise.

Extortion of J.M.-3

18     Overt Act No. 86:   From April 6, 2013, through May 20, 2013, in

19 recorded telephone conversations, defendant CECILIA VIRGEN spoke to

20 UICC-3 and defendants VALENTIN CORDOVA and FRANKIE MEGORADO about

21 finding J.M.-3 in LACJ to collect a debt that J.M.-3 owed to the

22 Mexican Mafia LACJ Enterprise.

23     Overt Act No. 87:   On April 6, 2013, in a recorded telephone

24 conversation, defendant VALENTIN CORDOVA told defendant CECILIA

25 VIRGEN he would look for J.M.-3.

26     Overt Act No. 88:   On May 16, 2013, in a recorded telephone

27 conversation, UICC-3 told defendant CECILIA VIRGEN that J.M.-3 had

28 paid his debt to the Mexican Mafia.

48

Overt Act No. 89:  On May 19, 2013, in a recorded telephone conversation, defendant CECILIA VIRGEN told defendant FRANKIE MEGORADO that J.M.-3 still owed money to the Mexican Mafia, but that she was going to allow J.M.-3 to pay $400 instead of $600, and defendant FRANKIE MEGORADO provided J.M.-3's name and booking number to CECILIA VIRGEN so that he could be located.

Assault of Defendent MIGUEL GARCIA for not Remitting the Proper Drug and Extortion Proceeds

Overt Act No. 90:  From April 5, 2013, through April 12, 2013, in recorded telephone conversations, defendant CECILIA VIRGEN ordered defendant JOSE OLEA to assault defendant MIGUEL GARCIA and to replace defendant MIGUEL GARCIA as the shot-caller of the 700 floor of NCCF because defendant MIGUEL GARCIA had not been properly remitting extortion and drug proceeds and because defendant MIGUEL GARCIA's wife had disrespected defendant CECILIA VIRGEN during the dispute over the proceeds.

Overt Act No. 91:  On or before April 9, 2013, defendant JOSE OLEA ordered that defendant MIGUEL GARCIA be assaulted.

Overt Act No. 92:  On April 9, 2013, unidentified co-conspirators assaulted defendant MIGUEL GARCIA as directed by defendant JOSE OLEA.

Overt Act No. 93:  On April 10, 2013, in a recorded telephone conversation, defendant CECILIA VIRGEN directed defendant JOSE OLEA to continue assaulting defendant MIGUEL GARCIA until defendant MIGUEL GARCIA surrendered the roll calls, the address to which to send kitty and other money, phone numbers, and calling cards to defendant JOSE OLEA.

///

**Overt Act No. 94:**  On April 12, 2013, after defendant JOSE OLEA told defendant CECILIA VIRGEN in a recorded telephone call that defendant MIGUEL GARCIA had complied, defendant CECILIA VIRGEN ordered that defendant MIGUEL GARCIA be assaulted until he left the 700 floor of NCCF.

**Overt Act No. 95:**  On April 12, 2013, defendant JOSE OLEA arranged for defendant MIGUEL GARCIA to be assaulted again.

**Overt Act No. 96:**  On April 12, 2013, unidentified co-conspirators assaulted defendant MIGUEL GARCIA as directed by defendant JOSE OLEA.

Assault of L.M. for Attempting to Evade Extortion

**Overt Act No. 97:**  On April 23, 2013, Mark Martinez, Amo West, Ramiro Andrade, Oswaldo Quintero, Nicholas Escarcega, Christian Fuentes, Francisco Ruiz, and Jose Vera assaulted L.M. in order to maintain Mexican Mafia LACJ Enterprise discipline and punish L.M. for attempting to evade extortion.

**Overt Act No. 98:**  On April 23, 2013, unknown co-conspirators moved the unconscious body of L.M. in order to prevent the detection of the beating of L.M.

**Overt Act No. 99:**  On April 23, 2013, unindicted co-conspirator Ramiro Andrade and other unknown co-conspirators cleaned blood and other evidence of an assault from the location of the beating of L.M. to prevent the detection of the beating of L.M..

Assaults of J.V. and M.M.F.

**Overt Act No. 100:**  On April 28, 2013, an unindicted co-conspirator assaulted J.V. for volunteering for and backing out of an agreed upon assault.

///

**Overt Act No. 101:** On April 28, 2013, unindicted co-conspirators assaulted M.M.F. for violating a Mexican Mafia LACJ Enterprise rule against associating with African-American inmates.

Laundering of Money from LACJ

**Overt Act No. 102:** On May 9, 2013, defendant DANIEL CERVANTES met with and gave the HSI UC approximately $7,976 in money orders representing proceeds of Mexican Mafia LACJ Enterprise activities for the HSI UC to launder by negotiating the money orders in exchange for a fee.

**Overt Act No. 103:** On May 10, 2013, defendant DANIEL CERVANTES received from the ICE UC $7,178 in cash representing proceeds from the negotiation of the money orders.

Possession of Methamphetamine and Mexican Mafia LACJ Enterprise Correspondence Regarding Extortion in LACJ

**Overt Act No. 104:** On May 13, 2013, in LACJ, defendant MICHAEL BENNETT possessed inside his body approximately 5.5 grams of methamphetamine, which he intended to give to UICC-1.

**Overt Act No. 105:** On May 13, 2013, defendant MICHAEL BENNETT carried a message regarding extortion and leadership within LACJ in his body from UICC-3 intended for UICC-1.

**Overt Act No. 106:** On May 13, 2013, UICC-3 reported to UICC-1 that MCJ had paid $1,500 in kitty money, that he had fined a Sureno $600 and ordered that the Sureno be assaulted for losing drugs, and identified various other shot-callers within LACJ.

Possession of Cocaine and Methamphetamine and Correspondence Related to Drug Trafficking and Extortion

**Overt Act No. 107:** On May 15, 2013, in LACJ, defendant EDWIN AYALA possessed with the intent to distribute to others on behalf of

the Mexican Mafia LACJ Enterprise approximately .6 grams of cocaine base in the form of crack cocaine and approximately .54 grams of methamphetamine.

Overt Act No. 108:  On May 15, 2013, defendant EDWIN AYALA possessed two kites from UICC-11 intended for UICC-3 and unindicted co-conspirator 27 ("UICC-27").

Conspiracy to Extort and Assault J.J.

Overt Act No. 109:  On May 17, 2013, in a recorded telephone call, defendants CECILIA VIRGEN, FRANKIE MEGORADO, and VALENTIN CORDOVA discussed having J.J. assaulted for interfering with the orderly administration of Mexican Mafia LACJ Enterprise operations, including the handling of drug and extortion proceeds.

Overt Act No. 110:  On May 20, 2013, in a recorded telephone call, defendant CECILIA VIRGEN directed defendant FRANKIE MEGORADO to arrange the assault of J.J. in order to maintain Mexican Mafia LACJ Enterprise discipline.

Overt Act No. 111:  On May 20, 2013, in a recorded telephone call, defendant FRANKIE MEGORADO agreed to arrange the assault of J.J. as directed by defendant CECILIA VIRGEN.

Possession of Mexican Mafia LACJ Enterprise Records

Overt Act No. 112:  On May 22, 2013, defendant CECILIA VIRGEN possessed records of the Mexican Mafia LACJ Enterprise's racketeering activities in LACJ, including drug trafficking and extortion.

Smuggling of Methamphetamine, Heroin and Marijuana into LACJ

Overt Act No. 113:  From May 22, 2013, through May 30, 2013, in recorded telephone conversations, UICC-10 and defendant ANA MARTINEZ coordinated the smuggling of heroin, methamphetamine, and marijuana to UICC-3 in LACJ; UICC-10 directed defendant ANA MARTINEZ to mark

the drugs with "Kahn" to indicate that they were for UICC-3; and UICC-10 directed defendant ANA MARTINEZ to package the drugs in the cutoff fingers of black latex gloves.

Overt Act No. 114:  On May 23, 2013, defendant ANA MARTINEZ obtained heroin, methamphetamine, and marijuana from an unknown supplier and packaged the drugs for smuggling into LACJ.

Overt Act No. 115:  From May 2013 through August 7, 2013, defendant ANA MARTINEZ possessed digital scales and narcotics packaging to facilitate the smuggling of drugs into LACJ on behalf of the Mexican Mafia LACJ Enterprise.

Money Laundering

Overt Act No. 116:  On May 24, 2013, in a recorded telephone conversation, UICC-10 directed defendant ANA MARTINEZ to transfer $500 of Mexican Mafia LACJ Enterprise drug money to defendant VALERIE TREJO.

Overt Act No. 117:  On May 24, 2013, defendant ANA MARTINEZ transferred $500 of Mexican Mafia LACJ Enterprise drug money to defendant VALERIE TREJO via money order.

Identity Theft and Access Device Fraud

Overt Act No. 118:  From May 2013 through at least August 2013, defendant ANA MARTINEZ obtained identity profiles, opened fraudulent Verizon phone accounts based on those profiles, and provided those phone numbers to UICC-10 to give to other Mexican Mafia LACJ Enterprise associates so that they could carry out Mexican Mafia LACJ Enterprise business by making free phone calls.

Overt Act No. 119:  On August 7, 2013, defendant ANA MARTINEZ possessed in her residence hundreds of stolen identity profiles to ///

use to open fraudulent phone accounts to further Mexican Mafia LACJ

Enterprise communications to and from LACJ.

Defendant JOSE LANDA-RODRIGUEZ takes over Mexican Mafia LACJ

Enterprise Operations, Including Drug Trafficking and Extortion

    Overt Act No. 120: Beginning on June 21, 2013, following the death of DMM-1, defendant JOSE LANDA-RODRIGUEZ took over all Mexican Mafia LACJ Enterprise operations within LACJ.

    Overt Act No. 121: Beginning June 21, 2013, following the death of DMM-1, UICC-9 assumed a position as a top lieutenant to defendant JOSE LANDA-RODRIGUEZ for running Mexican Mafia LACJ Enterprise operations in LACJ.

    Overt Act No. 122: Beginning June 21, 2013, following the death of DMM-1, defendant MIGUEL CALDERON assumed a position as an out-of-custody "secretary" for defendant JOSE LANDA-RODRIGUEZ to facilitate Mexican Mafia LACJ Enterprise operations in LACJ.

    Overt Act No. 123: Beginning June 21, 2013, following the death of DMM-1, UICC-4 took over as the shot-caller of the 800 and 900 dorms in NCCF to run Mexican Mafia LACJ Enterprise operations for defendant JOSE LANDA-RODRIGUEZ.

    Overt Act No. 124: Beginning June 26, 2013, following the death of DMM-1, defendant MIGUEL GARCIA took over as the shot-caller of the 500, 600, and 700 dorms in NCCF to run Mexican Mafia LACJ Enterprise operations for defendant JOSE LANDA-RODRIGUEZ.

    Overt Act No. 125: On June 24, 2013, defendant JOSE LANDA-RODRIGUEZ told defendant SAMANTHA RIVERA that he was taking over all of LACJ and directed defendant SAMANTHA RIVERA to inform defendant MIGUEL CALDERON.

///

1    **Overt Act No. 126:** From June 24, 2013, through at least

2    December 18, 2015, defendant SAMANTHA RIVERA passed communications

3    from defendant JOSE LANDA-RODRIGUEZ to other Mexican Mafia members.

4        **Overt Act No. 127:** On June 28, 2013, defendant MIGUEL CALDERON

5    directed UICC-9 to send the kitty money to a post office box that he

6    controlled and to send the drug and fine money to another post office

7    box that he controlled.

8        **Overt Act No. 128:** On June 23, 2013, July 6, 2013, and July 26,

9    2013, defendant MIGUEL CALDERON made deposits of approximately $200

10   in kitty proceeds into the LACJ inmate trust account of defendant

11   JOSE LANDA-RODRIGUEZ.

12   Smuggling of Methamphetamine into LACJ

13       **Overt Act No. 129:** From July 24, 2013, through August 14, 2013,

14   defendant MARK LANDEROS and unindicted co-conspirators Kristen Ayala,

15   Jonathan Rodriguez, Bryanna McCullah, Juan NMN Garcia, and unindicted 

16   co-conspirator 31 ("UICC-31") arranged to smuggle approximately one

17   ounce of methamphetamine and one ounce of marijuana into LACJ.

18       **Overt Act No. 130:** On July 25, 2013, in a recorded telephone

19   conversation, defendant MARK LANDEROS asked UICC-31 to smuggle drugs

20   into LACJ.

21       **Overt Act No. 131:** On August 3, 2013, in a recorded telephone

22   conversation between defendant MARK LANDEROS and unindicted co-

23   conspirators Kristen Ayala and Juan NMN Garcia, defendant MARK

24   LANDEROS asked unindicted co-conspirator Juan NMN Garcia to supply

25   methamphetamine and marijuana, and unindicted co-conspirator Juan NMN

26   Garcia agreed to do so and gave prices for the drugs.

27       **Overt Act No. 132:** On August 13, 2013, in a recorded telephone

28   conversation, defendant MARK LANDEROS spoke to unindicted co-

55

1   conspirator Jonathan Rodriguez and gave him instructions regarding

2   the drugs to be smuggled into LACJ.

3       Overt Act No. 133:   On August 14, 2013, acting on defendant MARK

4   LANDEROS' instructions, unindicted co-conspirator Jonathan Rodriguez

5   attempted to smuggle into LACJ approximately 22.7 grams of

6   methamphetamine inside his body.

7   JUAN REYES Appointed as Shot-Caller for 800 Floor of NCCF

8       Overt Act No. 134:   On or before August 7, 2013, defendant

9   FRANKIE MEGORADO sent a kite to defendant JUAN REYES appointing

10  defendant JUAN REYES as shot-caller for the 800 floor of MCJ on

11  behalf of the Mexican Mafia LACJ Enterprise, and providing

12  instructions regarding extortion and discipline.

13  Smuggling of Heroin within LACJ

14      Overt Act No. 135:   On September 24, 2013, unindicted co-

15  conspirator 32 ("UICC-32") attempted to smuggle .39 grams of heroin

16  from Twin Towers to defendant MIGUEL GARCIA at NCCF.

17  LAUREEN GARCIA Acts as the Secretary for NCCF and MANUEL JIMENEZ Acts

18  as a Shot-Caller for NCCF by imposing Discipline and Collecting

19  Extortion Proceeds and Laundering Them

20      Overt Act No. 136:   In October 2013, defendant LAUREEN GARCIA

21  served as the Mexican Mafia LACJ Enterprise secretary for NCCF and in

22  that capacity ordered assaults as discipline and for violations of

23  Mexican Mafia rules, collected "Green Dot" numbers representing

24  proceeds from Mexican Mafia LACJ Enterprise extortion activities from

25  defendant MANUEL JIMENEZ, and directed defendant MANUEL JIMENEZ to

26  send extortion money to a post office box that defendant LAUREEN

27  GARCIA controlled.

28  ///

56

Overt Act No. 137: On October 3, 2013, in a recorded telephone conversation, defendant LAUREEN GARCIA appointed MANUEL JIMENEZ and an unindicted co-conspirator known as "Fatboy" from the Blythe Street gang to run Mexican Mafia LACJ Enterprise activities in parts of NCCF.

Overt Act No. 138: On October 7, 2013, in a recorded telephone conversation, defendant MANUEL JIMENEZ provided to defendant LAUREEN GARCIA the number to a Green Dot card/account that contained $100 in Mexican Mafia LACJ Enterprise proceeds.

Overt Act No. 139: On October 11, 2013, in a recorded telephone conversation, defendant LAUREEN GARCIA gave the post office box address for kitty money to defendant MANUEL JIMENEZ.

Overt Act No. 140: On October 12, 2013, in a recorded telephone conversation, defendant LAUREEN GARCIA ordered defendant ALAVARO LEYVA to fine a Sureno known as "Oso" $600 for violating Mexican Mafia LACJ Enterprise rules.

Overt Act No. 141: On October 12, 2013, in a recorded telephone conversation, defendant ALAVARO LEYVA told defendant LAUREEN GARCIA that he would fine the Sureno known as "Oso" $600 and have him assaulted three times for 39 seconds, and defendant LAUREEN GARCIA agreed.

Overt Act No. 142: On October 14, 2013, in a recorded telephone conversation, defendant LAUREEN GARCIA gave the post office box address for kitty money to defendant ALAVARO LEYVA.

Overt Act No. 143: On October 14, 2013, in a recorded telephone conversation, defendant ALAVARO LEYVA told defendant LAUREEN GARCIA about inmates in NCCF who were causing problems and suggested that they be fined $1,000.

1    Overt Act No. 144:  On October 14, 2013, in a recorded telephone

2    conversation, defendant LAUREEN GARCIA agreed to the $1,000 fines for

3    Oso and other inmates who were causing problems in NCCF and ordered

4    that they be assaulted as well.

5    Overt Act No. 145:  On October 27, 2013, defendant LAUREEN

6    GARCIA put $50 on the inmate trust account of defendant JOSE LANDA-

7    RODRIGUEZ.

8    Overt Act No. 146:  On November 1, 2013, defendant LAUREEN

9    GARCIA possessed sixty-seven money orders representing $3,240 in

10   Mexican Mafia LACJ Enterprise proceeds.

11   Assault of FRANKIE MEGORADO for Failing to Run Mexican Mafia LACJ

12   Enterprise Drug Trafficking and Extortion, Properly

13   Overt Act No. 147:  On or before October 2, 2013, in a recorded

14   telephone conversation, defendant ALAVARO LEYVA told defendant

15   LAUREEN GARCIA that defendant FRANKIE MEGORADO should be assaulted

16   because he was not running Mexican Mafia LACJ Enterprise operations

17   properly, including by not remitting the proper amount of drug and

18   extortion proceeds.

19   Overt Act No. 148:  On October 2, 2013, in a recorded telephone

20   conversation, defendant LAUREEN GARCIA ordered defendant ALAVARO

21   LEYVA to have defendant FRANKIE MEGORADO assaulted because he was not

22   running Mexican Mafia LACJ Enterprise operations properly.

23   Overt Act No. 149:  On or after October 2, 2013, defendant

24   ALAVARO LEYVA ordered that defendant FRANKIE MEGORADO be assaulted.

25   Overt Act No. 150:  On October 5, 2013, unindicted co-

26   conspirators assaulted defendant FRANKIE MEGORADO.

27   ///

28   ///

Greenlighting of Rafael Carrillo

Overt Act No. 151:  On or before October 10, 2013, defendant JOSE LANDA-RODRIGUEZ ordered that UICC-1 be seriously assaulted for undermining defendant GILBERT PARRA'S authority to collect extortion and proceeds.

Overt Act No. 152:  On October 10, 2013, defendant GILBERT PARRA passed on defendant JOSE LANDA-RODRIGUEZ' order that UICC-1 be seriously assaulted to maintain the efficiency of the Mexican Mafia LACJ Enterprise's extortion and drug trafficking activities.

Overt Act No. 153:  On October 14, 2013, defendant GILBERT PARRA attempted to pass on to NCCF orders that UICC-1 be seriously assaulted.

Overt Act No. 154:  On October 14, 2013, UICC-9 attempted to smuggle into NCCF kites containing orders and instructions from defendants GILBERT PARRA and JOSE LANDA-RODRIGUEZ.

Conspiracy to Assault J.J. for Interfering with Drug Trafficking and Extortion

Overt Act No. 155:  From October 10, 2013 through October 21, 2013, defendants JOSE LANDA-RODRIGUEZ and ERNESTO VARGAS ordered that J.J. be assaulted for undermining defendant MIGUEL GARCIA's authority to collect extortion and drug proceeds.

Overt Act No. 156:  On or before October 23, 2013, Juan Jimenez was assaulted on the orders of defendant ERNESTO VARGAS in order to maintain the efficiency of Mexican Mafia LACJ Enterprise extortion and drug trafficking activities.

Overt Act No. 157:  On October 23, 2013, in a recorded telephone conversation, defendants ERNESTO VARGAS and MIGUEL GARCIA discussed unindicted co-conspirator J.J.'s assault as discipline for

1   questioning defendant MIGUEL GARCIA's status in the Mexican Mafia

2   LACJ Enterprise.

3   <u>JONATHAN VERDEJA Facilitates Mexican Mafia LACJ Enterprise Activities</u>

4   <u>at NCCF Including Drug Trafficking, Extortion, and Related Money</u>

5   <u>Laundering</u>

6   <u>Overt Act No. 158:</u>  From about October 16, 2013, through

7   December 26, 2013, defendant JONATHAN VERDEJA acted as the

8   facilitator for NCCF on behalf of the Mexican Mafia LACJ Enterprise;

9   defendant JONATHAN VERDEJA coordinated and collected kitty money and

10  oversaw the distribution of drugs in NCCF.

11  <u>Overt Act No. 159:</u>  On October 17, 2013, in recorded telephone

12  conversations, defendant JONATHAN VERDEJA called unindicted co-

13  conspirator 33 ("UICC-33"), who gave the post office box address for

14  Mexican Mafia LACJ Enterprise money and payments to defendant

15  JONATHAN VERDEJA, and defendant JONATHAN VERDEJA agreed to send the

16  payments to that address and directed UICC-33 to pass messages

17  through defendant JONATHAN VERDEJA's secretary, unindicted co-

18  conspirator 34 ("UICC-34").

19  <u>Overt Act No. 160:</u>  On October 18, 2013, in a recorded telephone

20  conversation, defendant JONATHAN VERDEJA told UICC-34 to open a post

21  office box, told UICC-34 that he will send kitty money to her, and

22  told UICC-34 to put the money on his inmate trust account.

23  <u>Overt Act No. 161:</u>  On October 19, 2013, in a recorded telephone

24  conversation, defendant JONATHAN VERDEJA told UICC-34 to give the

25  post office box address to NCCF shot-callers who will be calling her.

26  <u>Overt Act No. 162:</u>  On October 22, 2013, in a recorded telephone

27  conversation, defendant JONATHAN VERDEJA told UICC-34 how to instruct

28  NCCF shot-callers to properly fill out money orders.

Overt Act No. 163:  On October 29, 2013, in a recorded telephone conversation, defendant JONATHAN VERDEJA told UICC-34 to give the post office box address to "Greedy" and "Laughing Boy;" UICC-34 told defendant JONATHAN VERDEJA that she had already received one money order, that she was unhappy that her name was on it, and that she preferred to deal in Green Dot numbers.

Overt Act No. 164:  On October 30, 2013, in a recorded telephone conversation, defendant JONATHAN VERDEJA told UICC-34 that she will be receiving twenty-eight money orders representing proceeds of Mexican Mafia LACJ Enterprise activities.

Overt Act No. 165:  On November 10, 2013, in a recorded telephone conversation, UICC-34 told defendant JONATHAN VERDEJA that she had received kitty payments from dorms 822 and 823, and defendant JONATHAN VERDEJA told her to cash them.

Overt Act No. 166:  On November 15, 2013, in a recorded telephone conversation, an unidentified female co-conspirator told defendant JONATHAN VERDEJA that she had eight money orders representing Mexican Mafia LACJ Enterprise proceeds and defendant JONATHAN VERDEJA told the unidentified female co-conspirator to keep two for herself and he would tell her what to do with the rest.

Overt Act No. 167:  On November 19, 2013, in a recorded telephone conversation, defendant JONATHAN VERDEJA told unindicted co-conspirator 35 ("UICC-35") that more money orders will be sent and that they are important.

Overt Act No. 168:  On November 21, 2013, in a recorded telephone conversation, defendant JONATHAN VERDEJA reported on how things were going at NCCF to defendant GILBERT PARRA and told

///

unindicted co-conspirator 36 ("UICC-36") to give money orders to defendant GILBERT PARRA.

Overt Act No. 169: On December 1, 2013, in a recorded telephone conversation, defendant JONATHAN VERDEJA told UICC-35 that she will be receiving more Green Dot numbers and UICC-35 told defendant JONATHAN VERDEJA that she had five Green Dot numbers and one money order.

Overt Act No. 170: On December 4, 2013, in a recorded telephone conversation, UICC-35 told defendant JONATHAN VERDEJA that she had one Green Dot number, five money orders, and one money-gram and that her Green Dot account had been frozen for potential money laundering.

Overt Act No. 171: On December 8, 2013, in a recorded telephone conversation, UICC-35 reported to defendant JONATHAN VERDEJA that she had ten money orders and one money-gram and defendant JONATHAN VERDEJA told her to give them to an unidentified co-conspirator.

Overt Act No. 172: On December 9, 2013, in a recorded telephone conversation, UICC-36 reported to defendant JONATHAN VERDEJA that she had twenty money orders and defendant JONATHAN VERDEJA told UICC-36 to keep one for herself and give the rest to UICC-35.

Overt Act No. 173: On December 9, 2013, in a recorded telephone conversation, defendant JONATHAN VERDEJA told UICC-35 to get nineteen money orders from UICC-36 and to give them to defendant GILBERT PARRA.

Conspiracy to Assault G.S.

Overt Act No. 174: On October 20, 2013, in a recorded telephone conversation, defendant LAUREEN GARCIA ordered that G.S. be assaulted for mentioning defendant JOSE LANDA-RODRIGUEZ' name too much.

Possession of Heroin and Mexican Mafia LACJ Enterprise Correspondence within LACJ

Overt Act No. 175: On November 5, 2013, an UICC-2 gave six doses of heroin that was prepackaged for sale to unindicted co-conspirator 37 ("UICC-37") to sell to other persons inside LACJ.

Overt Act No. 176: On November 5, 2013, UICC-37 possessed six doses of heroin that was prepackaged for sale with intent to sell it to other persons inside LACJ.

Overt Act No. 177: On November 5, 2013, UICC-37 transported a kite written by defendant MARK LANDEROS, containing instructions that defendant LUIS GARCIA was the facilitator for defendant JOSE LANDA-RODRIGUEZ for MCJ and Twin Towers, his orders were to be respected, and anyone expressing disobedience to him should be assaulted for 39 seconds.

Possession of Mexican Mafia LACJ Enterprise Correspondence Related to Drug Trafficking and Extortion

Overt Act No. 178: On December 4, 2013, defendant LUIS GARCIA possessed kites directing the activities of the Mexican Mafia LACJ Enterprise inside LACJ, including drug trafficking and Extortion.

Assault of UICC-32 for Losing Mexican Mafia LACJ Enterprise Heroin

Overt Act No. 179: On or before October 1, 2013, defendant MIGUEL GARCIA ordered that UICC-32 be assaulted as discipline for losing heroin that belonged to the Mexican Mafia LACJ Enterprise.

Overt Act No. 180: On October 1, 2013, in a recorded telephone conversation, defendant LAUREEN GARCIA passed on to defendant MANUEL JIMENEZ defendant MIGUEL GARCIA's order that UICC-32 be assaulted inside LACJ as discipline for losing the heroin he had attempted to smuggle into NCCF.

Overt Act No. 181:  On or after October 1, 2013, defendant MANUEL JIMENEZ passed along the order to assault UICC-32.

Overt Act No. 182:  On December 5, 2013, unindicted co-conspirators assaulted UICC-32.

Assault of O.A. for Failing to Conduct Mexican Mafia LACJ Enterprise Operations, Including Drug Trafficking and Extortion, Properly

Overt Act No. 183:  On or before December 12, 2013, defendant LUIS GARCIA ordered that O.A. be assaulted and replaced as a shot-caller.

Overt Act No. 184:  On December 12, 2013, unindicted co-conspirators assaulted O.A. to remove him as a shot-caller.

Possession of Heroin Within LACJ and Extortion

Overt Act No. 185:  On or before December 18, 2013, UICC-2 arranged for approximately 43.7 grams of heroin to be given to unindicted co-conspirator Jonathan Rodriguez to smuggle into Twin Towers for UICC-2 and defendant LUIS GARCIA.

Overt Act No. 186:  On December 18, 2013, unindicted co-conspirator Jonathan Rodriguez possessed approximately 43.7 grams of heroin with intent to distribute it to others on behalf of defendant JOSE LANDA-RODRIGUEZ.

Overt Act No. 187:  On or before January 30, 2014, UICC-2 wrote a kite to defendant MARK LANDEROS to explain that unindicted co-conspirator Jonathan Rodriguez had been fined $5,000 and would have to smuggle more drugs into LACJ because he lost the heroin seized from him on December 18, 2013, and that another Sureno had lost thirds in the form of two grams of methamphetamine.

///
///

Possession of Mexican Mafia LACJ Enterprise Material

    Overt Act No. 188:  On January 31, 2014, defendant LUIS GARCIA possessed a razor blade, two pens, and contact information for defendants JOSE LANDA-RODRIGUEZ and SAMANTHA RIVERA and others.

Defendant GABRIEL ZENDEJAS-CHAVEZ Hosts an Eme Meeting at his Law Office

    Overt Act No. 189:  On February 4, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ met with defendants RAFAEL LEMUS and MIGUEL RODRIGUEZ, DMM-2, and others in defendant GABRIEL ZENDEJAS-CHAVEZ' law office to discuss Eme business, including the passing of messages to Eme members in California State Prison by defendant GABRIEL ZENDEJAS-CHAVEZ, the passing of messages to defendant JOSE LANDA-RODRIGUEZ, obtaining drugs for DMM-2 to have sold, and problems La Eme was having with A.E., an Eme member in bad standing, and his brother G.E.

Possession of Mexican Mafia LACJ Correspondence

    Overt Act No. 190:  On February 17, 2014, defendant LUIS GARCIA possessed kites that discussed Mexican Mafia sanctioned assaults, the identity of Mexican Mafia LACJ Enterprise leaders within LACJ, and reflected that defendant LUIS GARCIA was the highest ranking shotcaller in LACJ for defendant JOSE LANDA-RODRIGUEZ.

Defendant GABRIEL ZENDEJAS-CHAVEZ Uses His Status as an Attorney to Meet With and Pass Messages to Mexican Mafia Members in Pelican Bay State Prison

    Overt Act No. 191:  On February 18, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ used his status as an attorney to visit and pass messages to Mexican Mafia member 1, Mexican Mafia member 2, Mexican Mafia member 3, Mexican Mafia member 4, and Mexican Mafia member 5.

Overt Act No. 192: On February 18, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ attempted to smuggle a written message to a Mexican Mafia member at the Security Housing Unit at Pelican Bay State Prison.

Overt Act No. 193: On February 19, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ used his status as an attorney to visit and pass messages to Mexican Mafia member 6, Mexican Mafia member 7, Mexican Mafia member 8, Mexican Mafia member 9, and Mexican Mafia member 10.

Attorney GABRIEL ZENDEJAS-CHAVEZ and UICC-38 Discuss Collecting and Laundering Mexican Mafia LACJ Enterprise Proceeds

Overt Act No. 194: On March 27, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ, via text-message, directed UICC-38 to bring kitty proceeds to his law office.

Overt Act No. 195: On April 9, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ, via text-message, directed UICC-38 to send him $1,000.

Overt Act No. 196: On April 9, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ, via text-message, agreed to deliver $300 to each of two Mexican Mafia members at the ADX Florence federal prison in Colorado.

Overt Act No. 197: On April 10, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ exchanged text messages with UICC-38 in which he agreed to deliver $400 to two persons in Colorado and to keep $200 for himself.

Overt Act No. 198: On April 12, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ travelled to the ADX Florence federal prison in Colorado to visit Mexican Mafia member 11.

///

1    **Overt Act No. 199:** On April 14, 2014, defendant GABRIEL

2    ==ZENDEJAS-CHAVEZ,== via text-message, provided defendant DONATO

3    GONZALES' name and booking number to UICC-38 so she could forward

4    Mexican Mafia LACJ Enterprise proceeds to defendant DONATO GONZALES.

5    **Overt Act No. 200:** On April 18, 2014, defendant GABRIEL

6    ==ZENDEJAS-CHAVEZ== told UICC-38 that he had money to return to her

7    because one of the Mexican Mafia members in Colorado could not have

8    visitors.

9    ==Defendant GABRIEL ZENDEJAS-CHAVEZ Facilitates the Extortion of the==

10   ==Mongols Outlaw Motorcycle Gang and the Intimidation of a Victim of a==

11   ==Jail Stabbing==

12   **Overt Act No. 201:** On April 8, 2014, defendant GABRIEL

13   ==ZENDEJAS-CHAVEZ== used his status as an attorney to meet defendant LUIS

14   GARCIA and discuss Mexican Mafia business including the Mexican

15   Mafia's extortion of the Mongols outlaw motorcycle gang and that they

16   would be extorting the Mongols outlaw motorcycle gang for $100,000.

17   **Overt Act No. 202:** On April 8, 2014, defendant GABRIEL

18   ==ZENDEJAS-CHAVEZ== agreed to travel to Pelican Bay State Prison on June

19   25, 2014, to get support for the extortion proposal from other

20   Mexican Mafia members.

21   **Overt Act No. 203:** On April 8, 2014, defendant GABRIEL

22   ==ZENDEJAS-CHAVEZ== agreed to contact unindicted co-conspirator 39

23   ("UICC-39") to tell defendant LUIS GARCIA's stabbing victim, M.A.,

24   not to cooperate with law enforcement in exchange for being taken off

25   the "Green Light" list.

26   **Overt Act No. 204:** On April 8, 2014, defendant GABRIEL

27   ==ZENDEJAS-CHAVEZ== explained to defendant LUIS GARCIA how to use the

28   ///

1  legal system to delay his trial in order to remain in LACJ as a

2  facilitator.

3     Overt Act No. 205:  On April 9, 2014, defendant GABRIEL

4  ZENDEJAS-CHAVEZ, via text-message, directed UICC-38 to send him

5  $1,000 and UICC-39's phone number per the instructions of defendant

6  LUIS GARCIA.

7     Overt Act No. 206:  On April 23, 2014, via text-message, UICC-38

8  sent defendant GABRIEL ZENDEJAS-CHAVEZ a phone number for the

9  national president of the Mongols outlaw motorcycle gang.

10     Overt Act No. 207:  On June 25, 2014, defendant GABRIEL

11  ZENDEJAS-CHAVEZ used his status as an attorney to meet with and pass

12  messages to Mexican Mafia member 1, Mexican Mafia member 4, Mexican

13  Mafia member 6, Mexican Mafia member 8, and Mexican Mafia member 10

14  at Pelican Bay State Prison.

15  Possession of Mexican Mafia LACJ Enterprise Correspondence Discussing

16  Drug Trafficking and Extortion

17     Overt Act No. 208:  On April 14, 2014, defendant LUIS GARCIA

18  possessed in his cell in LACJ two razor blades, a syringe, and more

19  than 100 kites discussing Mexican Mafia LACJ Enterprise business,

20  including: (1) defendant LUIS GARCIA's status as the highest ranking

21  shot-caller in LACJ; (2) the smuggling of drugs into LACJ; (3) the

22  thirds tax; (4) Green Dot numbers reflecting Mexican Mafia LACJ

23  Enterprise proceeds; and (5) a request from defendant ALVINO MUNOZ

24  that he be allowed to play a larger role in the smuggling of drugs

25  into LACJ on behalf of the Mexican Mafia LACJ Enterprise.

26  ///

27  ///

28  ///

Defendant MARK LANDEROS Collects Thirds Taxes

Overt Act No. 209: On February 13, 2014, defendant MARK LANDEROS taxed R.H. the amount of approximately one-third of R.H.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 210: On February 14, 2014, defendant MARK LANDEROS taxed J.B. the amount of approximately one-third of J.B.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 211: On February 14, 2014, defendant MARK LANDEROS taxed U.R. the amount of approximately one-third of U.R.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 212: On February 18, 2014, defendant MARK LANDEROS taxed M.V. the amount of approximately one-third of M.V.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 213: On March 1, 2014, defendant MARK LANDEROS taxed L.M. the amount of approximately one-third of L.M.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 214: On March 2, 2014, defendant MARK LANDEROS taxed P.C.-2 the amount of approximately one-third of P.C.-2's drugs for the right to sell the remainder in LACJ.

Overt Act No. 215: On March 9, 2014, defendant MARK LANDEROS taxed G.P. the amount of approximately one-third of G.P.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 216: On March 9, 2014, defendant MARK LANDEROS accepted drugs that were confiscated by an unidentified unindicted co-conspirator from a Sureno who did not pay the thirds tax.

Overt Act No. 217: On March 10, 2014, defendant MARK LANDEROS taxed G.M. the amount of approximately one-third of G.M.' drugs for the right to sell the remainder in LACJ.

1    **Overt Act No. 218:** On March 11, 2014, defendant MARK LANDEROS

2    taxed J.G. the amount of approximately one-third of J.G.'s drugs for

3    the right to sell the remainder in LACJ.

4    **Overt Act No. 219:** On March 11, 2014, defendant MARK LANDEROS

5    taxed N.G. the amount of approximately one-third of N.G.'s drugs for

6    the right to sell the remainder in LACJ.

7    **Overt Act No. 220:** On March 13, 2014, defendant MARK LANDEROS

8    taxed J.S.-2 the amount of approximately one-third of J.S.-2's drugs

9    for the right to sell the remainder in LACJ.

10   **Overt Act No. 221:** On March 15, 2014, defendant MARK LANDEROS

11   taxed R.V. the amount of approximately one-third of R.V.'s drugs for

12   the right to sell the remainder in LACJ.

13   **Overt Act No. 222:** On March 16, 2014, defendant MARK LANDEROS

14   taxed D.A. the amount of approximately one-third of D.A.'s drugs for

15   the right to sell the remainder in LACJ.

16   **Overt Act No. 223:** On March 17, 2014, defendant MARK LANDEROS

17   taxed R.R. the amount of approximately one-third of R.R.'s drugs for

18   the right to sell the remainder in LACJ.

19   **Overt Act No. 224:** On March 19, 2014, defendant MARK LANDEROS

20   taxed H.G. the amount of approximately one-third of H.G.'s drugs for

21   the right to sell the remainder in LACJ.

22   **Overt Act No. 225:** On March 19, 2014, defendant MARK LANDEROS

23   taxed D.A. the amount of approximately one-third of D.A.'s drugs for

24   the right to sell the remainder in LACJ.

25   **Overt Act No. 226:** On March 23, 2014, defendant MARK LANDEROS

26   taxed M.M. the amount of approximately one-third of M.M.'s drugs for

27   the right to sell the remainder in LACJ.

28   ///

Overt Act No. 227:  On March 25, 2014, defendant MARK LANDEROS taxed J.E. the amount of approximately one-third of J.E.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 228:  On March 25, 2014, defendant MARK LANDEROS taxed J.A. the amount of approximately one-third of J.A.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 229:  On April 4, 2014, defendant MARK LANDEROS taxed J.M.-4 the amount of approximately one-third of J.M.-4's drugs for the right to sell the remainder in LACJ.

Overt Act No. 230:  On April 8, 2014, defendant MARK LANDEROS taxed J.S.-2 the amount of approximately one-third of J.S.-2's drugs for the right to sell the remainder in LACJ.

Overt Act No. 231:  On April 8, 2014, defendant MARK LANDEROS taxed J.H. the amount of approximately one-third of J.H.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 232:  On April 13, 2014, defendant MARK LANDEROS taxed R.O. the amount of approximately one-third of R.O.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 233:  On April 14, 2014, defendant MARK LANDEROS taxed L.O. the amount of approximately one-third of L.O.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 234:  On April 15, 2014, defendant MARK LANDEROS taxed J.P. the amount of approximately one-third of J.P.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 235:  On April 16, 2014, defendant MARK LANDEROS taxed F.M. the amount of approximately one-third of F.M.'s drugs for the right to sell the remainder in LACJ.

///

71

Overt Act No. 236:  On April 16, 2014, defendant MARK LANDEROS taxed M.G. the amount of approximately one-third of M.G.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 237:  On April 17, 2014, defendant MARK LANDEROS taxed S.M. the amount of approximately one-third of S.M.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 238:  On April 18, 2014, defendant MARK LANDEROS taxed R.E. the amount of approximately one-third of R.E.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 239:  On April 22, 2014, defendant MARK LANDEROS taxed R.A. the amount of approximately one-third of R.A.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 240:  On April 24, 2014, defendant MARK LANDEROS taxed R.C. the amount of approximately one-third of R.C.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 241:  On April 24, 2014, defendant MARK LANDEROS taxed defendant MIGUEL GARCIA the amount of approximately one-third of defendant MIGUEL GARCIA's drugs for the right to sell the remainder in LACJ.

Overt Act No. 242:  On April 26, 2014, defendant MARK LANDEROS taxed P.M. the amount of approximately one-third of P.M.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 243:  On April 28, 2014, defendant MARK LANDEROS possessed a ledger detailing his collection of the thirds tax.

Attempted Murder of J.B.-2 and Kidnapping and Assault and Attempted Murder of C.R.

Overt Act No. 244:  On December 16, 2013, an unidentified co-conspirator repeatedly stabbed J.B.-2 in the head on defendant JOSE

72

1  LANDA-RODRIGUEZ's orders, in retaliation for defendant ALVARO RUIZ

2  defying defendant JOSE LANDA-RODRIGUEZ.

3      Overt Act No. 245:  On or before April 21, 2014, defendant JOSE

4  LANDA-RODRIGUEZ sanctioned a kidnapping of C.R. in retaliation for

5  defendant ALVARO RUIZ defying defendant JOSE LANDA-RODRIGUEZ.

6      Overt Act No. 246:  On April 21, 2014, defendant DAVID DIAZ sent

7  a coded text message to defendant DIANA MARTINEZ stating that C.R.

8  needed to be assaulted on Mexican Mafia LACJ Enterprise orders.

9      Overt Act No. 247:  On April 22, 2014, defendants DIANA MARTINEZ

10 and DAVID DIAZ picked up C.R. from C.R.'s residence in the City of

11 Pomona and drove C.R. to defendant DAVID VILLALOBOS' residence in San

12 Bernardino County so that defendant DAVID VILLALOBOS could detain and

13 assault C.R.

14     Overt Act No. 248:  On April 22, 2014, defendant DAVID

15 VILLALOBOS obtained duct tape and attempted to restrain C.R. in the

16 garage of his residence in San Bernardino County so that he could

17 kill C.R.

18     Overt Act No. 249:  On April 22, 2014, defendant DAVID

19 VILLALOBOS assaulted C.R. with the intent to kill C.R.

20 Smuggling of Heroin and Methamphetamine into LACJ

21     Overt Act No. 250:  From April 18, 2014, through April 20, 2014,

22 defendants GABRIEL ZENDEJAS-CHAVEZ, DONATO GONZALES, and ALVARO RUIZ,

23 and unindicted co-conspirator Frank Herrera, arranged for heroin and

24 methamphetamine to be smuggled into MCJ.

25     Overt Act No. 251:  On April 22, 2014, unindicted co-

26 conspirator Martin Salazar possessed and hid approximately 2.37 grams

27 of heroin and 7.75 grams of methamphetamine that had been smuggled

28 ///

73

1  into LACJ by unindicted co-conspirator Ramon Amaya on behalf of the

2  Mexican Mafia LACJ Enterprise.

3   Overt Act No. 252:  Between April 25, 2014, and May 9, 2014,

4  defendant DONATO GONZALES wrote a kite to defendant LUIS GARCIA that

5  the "legal team" had sent drugs to defendant DONATO GONZALES and

6  asked defendant LUIS GARCIA to look out for those drugs.

7   Overt Act No. 253:  On June 2, 2014, defendant DONATO GONZALES

8  wrote a coded letter, disguised as legal mail, to defendant GABRIEL

9  ZENDEJAS-CHAVEZ stating that he had not received the heroin and

10  methamphetamine.

11  **Defendant GABRIEL ZENDEJAS-CHAVEZ Uses His Status as an Attorney to**

12  **Pass Mexican Mafia Orders Regarding Assaults, Murder, and Drug**

13  **Trafficking**

14   Overt Act No. 254:  On April 22, 2014, defendant GABRIEL

15  ZENDEJAS-CHAVEZ used his status as an attorney to meet with defendant

16  LUIS GARCIA and pass an order that "Dreamer" from the 18th Street

17  gang, "Demon" from 18th Street gang, and "Blanco" from the VNE gang

18  be assaulted or killed, pass messages from Mexican Mafia members at

19  the ADX Florence federal prison, discuss other Mexican Mafia business

20  including obtaining drugs from Mexican drug cartels, and report that

21  he would be travelling to Mexico to work on an alliance with a drug

22  cartel.

23   Overt Act No. 255:  Between May 5, 2014, and May 11, 2014,

24  defendant GABRIEL ZENDEJAS-CHAVEZ travelled to Mexico.

25  **Defendant GABRIEL ZENDEJAS-CHAVEZ Used his Status to Pass Mexican**

26  **Mafia Messages to JOSE LANDA-RODRIGUEZ**

27   Overt Act No. 256:  On April 22, 2014, defendant GABRIEL

28  ZENDEJAS-CHAVEZ used his status as an attorney to meet with defendant

1  JOSE LANDA-RODRIGUEZ and pass a message from Mexican Mafia member 11

2  that Federal Mexican Mafia members would not be recognizing three

3  State Mexican Mafia members as brothers.

4       Overt Act No. 257:  On April 22, 2014, during his meeting with

5  defendant JOSE LANDA-RODRIGUEZ, defendant GABRIEL ZENDEJAS-CHAVEZ

6  passed a message from DMM-2 about removing A.E. from Mexican Mafia

7  membership.

8       Overt Act No. 258:  Between April 22, 2014, and April 25, 2014,

9  defendant JOSE LANDA-RODRIGUEZ passed a message to defendant DONATO

10  GONZALES to confirm that A.E. was being removed from Mexican Mafia

11  membership.

12       Overt Act No. 259:  From April 25, 2014, through May 9, 2014,

13  defendant JOSE LANDA-RODRIGUEZ directed defendant LUIS GARCIA to have

14  defendant GABRIEL ZENDEJAS-CHAVEZ use his status as an attorney to

15  obtain documentation that a Mexican Mafia associate was cooperating

16  with law enforcement to justify the murder of that Mexican Mafia

17  associate.

18  Possession of Methamphetamine

19       Overt Act No. 260:  On April 30, 2014, defendant DIANA MARTINEZ

20  drove defendant GERARDO TAPIA to pick up approximately four pounds,

21  or 1,746 grams, of methamphetamine for further distribution.

22       Overt Act No. 261:  On April 30, 2014, defendant GERARDO TAPIA

23  possessed approximately four pounds, or 1,746 grams, of

24  methamphetamine for further distribution.

25  Defendant GABRIEL ZENDEJAS-CHAVEZ Uses His Status as an Attorney to

26  Discuss Mexican Mafia Business

27       Overt Act No. 262:  On April 28, 2014, and May 5, 2014,

28  defendant GABRIEL ZENDEJAS-CHAVEZ used his status as an attorney to

75

meet separately with defendants LUIS GARCIA, DONATO GONZALES, and
JOSE LANDA-RODRIGUEZ at LACJ.

Overt Act No. 263:  On April 28, 2014, and May 5, 2014, in
meetings at LACJ, defendant GABRIEL ZENDEJAS-CHAVEZ informed
defendant LUIS GARCIA: that Federal Mexican Mafia members at the ADX
Florence federal prison had not voted for Mexican Mafia membership
for "Psycho"; that Mexican Mafia member 11 had placed "Wolf" in
charge of the 18th Street gang; that Mexican Mafia member 9 had
advised that Deceased Mexican Mafia members 3 and 4 were feuding, and
to not get dragged into the feud; and to hold off on the assaults of
"Dreamer" from the 18th Street gang, "Demon" from 18th Street gang,
and "Blanco" from the VNE gang, that they had previously discussed.

Possession of Methamphetamine, Including Methamphetamine to be
Smuggled into LACJ

Overt Act No. 264:  On May 9, 2014, defendant GERARDO TAPIA
possessed approximately 558.6 grams of methamphetamine in his
residence with the intent to distribute the methamphetamine,
including to smuggle some of it into LACJ.

Overt Act No. 265:  On May 9, 2014, DMM-2 possessed, in
defendant GERARDO TAPIA's residence, a letter concerning Mexican
Mafia business written by DMM-2 and Green Dot numbers related to
Mexican Mafia LACJ Enterprise activities.

JOSE LANDA-RODRIGUEZ Orders the Assault of Mark Landeros and the
Distribution of Mexican Mafia Proceeds

Overt Act No. 266:  Between April 25, 2014, and May 9, 2014,
defendant JOSE LANDA-RODRIGUEZ ordered defendant LUIS GARCIA to
assault and fine MARK LANDEROS for violating Mexican Mafia rules, to
///

1   remove him as the shotcaller and to place another person as a

2   shotcaller.

3       Overt Act No. 267:  Between April 25, 2014, and May 9, 2014,

4   defendant JOSE LANDA-RODRIGUEZ directed the payment of thousands of

5   dollars of Mexican Mafia proceeds to other members.

6   Defendant GABRIEL ZENDEJAS-CHAVEZ Informs Others that LUIS GARCIA had

7   Dropped Out of the Mexican Mafia

8       Overt Act No. 268:  On May 28, 2014, in a recorded telephone

9   call, defendants GABRIEL ZENDEJAS-CHAVEZ and JOSE LANDA-RODRIGUEZ

10   discussed the fact that defendant LUIS GARCIA had "dropped-out" of

11   the Mexican Mafia and should not be included in Mexican Mafia

12   business any longer.

13       Overt Act No. 269:  From May 28, 2014, through at least May 30,

14   2014, defendant GABRIEL ZENDEJAS-CHAVEZ informed other co-

15   conspirators that defendant LUIS GARCIA had "dropped-out" of the

16   Mexican Mafia.

17       Overt Act No. 270:  Between May 18, 2014, and July 16, 2014,

18   defendant GABRIEL ZENDEJAS-CHAVEZ wrote, in correspondence disguised

19   as legal mail, to Mexican Mafia member 12 at Pelican Bay State Prison

20   that defendant LUIS GARCIA had "dropped-out" of the Mexican Mafia.

21   HECTOR DUARTE and NANCY DUARTE Carry out Mexican Mafia LACJ

22   Enterprise Business at NCCF on behalf of DMM-2

23       Overt Act No. 271:  From at least July 6, 2014, through November

24   10, 2014, DMM-2 directed defendant HECTOR DUARTE to run NCCF on

25   behalf of the Mexican Mafia LACJ Enterprise; defendant HECTOR DUARTE

26   collected kitty money, assigned fines as discipline, ordered assaults

27   to maintain discipline, and passed messages to defendant NANCY DUARTE

28   to be passed to DMM-2's secretary, defendant MIGUEL RODRIGUEZ.

1    Overt Act No. 272:  From at least July 6, 2014, through October

2    23, 2014, defendant NANCY DUARTE assisted defendant HECTOR DUARTE in

3    running the Mexican Mafia LACJ Enterprise's activities in NCCF on

4    behalf of DMM-2, including by passing messages between defendant

5    HECTOR DUARTE and defendant MIGUEL RODRIGUEZ, who was DMM-2's

6    secretary.

7    Overt Act No. 273:  On July 6, 2014, in a recorded telephone

8    conversation, defendant HECTOR DUARTE told defendant NANCY DUARTE

9    that, based on information from defendant CHRIS FERREIRA, an unknown

10   Hispanic gang member was to be assaulted and extorted for $1,000 for

11   dealing with African-American inmates.

12   Overt Act No. 274:  On July 25, 2014, in a recorded telephone

13   conversation, defendant CHRIS FERREIRA relayed Green-Dot card numbers

14   to defendant NANCY DUARTE representing $425 in Mexican Mafia LACJ

15   Enterprise extortion money.

16   Overt Act No. 275:  On August 4, 2014, defendant NANCY DUARTE

17   directed an unknown floor shot-caller within NCCF to send

18   "everything," that is, the drug and extortion money, to defendant

19   HECTOR DUARTE because defendant HECTOR DUARTE was in charge of NCCF

20   for DMM-2.

21   Overt Act No. 276:  On August 6, 2014, defendant HECTOR DUARTE

22   gave defendant NANCY DUARTE a Green Dot number representing kitty

23   proceeds.

24   Overt Act No. 277:  On August 15, 2014, in a recorded telephone

25   conversation, defendants MIGUEL RODRIGUEZ, HECTOR DUARTE, and NANCY

26   DUARTE discussed Mexican Mafia LACJ Enterprise matters including

27   defendant NANCY DUARTE giving defendant MIGUEL RODRIGUEZ Green Dot

28   numbers representing proceeds from Mexican Mafia LACJ Enterprise

activities, and discipline to be imposed on an unknown Hispanic gang member because the unknown Hispanic gang member had "dropped-out" and gone into protective custody.

Overt Act No. 278: On August 15, 2014, in a recorded telephone conversation, defendant HECTOR DUARTE asked defendant MIGUEL RODRIGUEZ how much discipline to impose on an unknown Hispanic gang member, and defendant MIGUEL RODRIGUEZ conferred with DMM-2 then told defendant HECTOR DUARTE how to administer discipline and to decide on an amount for a fine.

Overt Act No. 279: On August 15, 2014, in a recorded telephone conversation, defendant HECTOR DUARTE stated that he would impose a $10,000 fine and order that an unknown Hispanic gang member be beaten three times for 39 seconds.

Overt Act No. 280: On August 15, 2014, in a recorded telephone conversation, defendant MIGUEL RODRIGUEZ directed defendant HECTOR DUARTE to control the Mexican Mafia LACJ Enterprise's activities in the south and north facilities of NCCF.

Overt Act No. 281: On August 15, 2014, in a recorded telephone conversation, defendant NANCY DUARTE relayed messages between defendant HECTOR DUARTE and defendant MIGUEL RODRIGUEZ and DMM-2 about discipline of an unknown Hispanic gang member and other Mexican Mafia LACJ Enterprise business.

Overt Act No. 282: On August 20, 2014, in a recorded telephone conversation, defendants HECTOR DUARTE, NANCY DUARTE, and MIGUEL RODRIGUEZ discussed Mexican Mafia LACJ Enterprise matters; defendant HECTOR DUARTE gave defendant NANCY DUARTE Green Dot numbers representing kitty proceeds; defendant MIGUEL RODRIGUEZ told defendant HECTOR DUARTE that DMM-2 was upset about not receiving

1   $10,000 in fine money and that the north facility of NCCF was a month

2   behind in making their payments; and defendant MIGUEL RODRIGUEZ

3   informed defendant HECTOR DUARTE that DMM-2 wanted the shot-caller

4   for the north facility to be changed.

5        Overt Act No. 283:  On August 31, 2014, in a recorded telephone

6   call, defendant HECTOR DUARTE relayed Green Dot card numbers to

7   defendant NANCY DUARTE representing $385 in Mexican Mafia LACJ

8   Enterprise extortion money.

9        Overt Act No. 284:  On August 31, 2014, in a recorded telephone

10  call, defendant HECTOR DUARTE directed defendant NANCY DUARTE that a

11  Sureno was to be assaulted for losing Mexican Mafia LACJ Enterprise

12  extortion money.

13       Overt Act No. 285:  On October 23, 2014, defendant NANCY DUARTE

14  possessed ledgers containing her records of Mexican Mafia LACJ

15  Enterprise kitty, drug, and fine debts and payments.

16  Directions to Send Mexican Mafia LACJ Enterprise Business and

17  Proceeds Through Defendant GABRIEL ZENDEJAS-CHAVEZ

18       Overt Act No. 286:  On August 30, 2014, unindicted co-

19  conspirator 43 ("UICC-43") possessed a kite written by another

20  unknown co-conspirator directing that Mexican Mafia LACJ Enterprise

21  proceeds from drug sales in LACJ and kitty money from LACJ should be

22  sent to defendant GABRIEL ZENDEJAS-CHAVEZ and directing that

23  defendant ERNESTO VARGAS be recognized as having the authority to run

24  NCCF.

25  Assault and Extortion of M.C. for Interfering with Mexican Mafia LACJ

26  Enterprise Extortion

27       Overt Act No. 287:  From August 20, 2014, and September 26,

28  2014, defendants GAIL PONCE, DAVID BERNARDINO, HECTOR DUARTE, and

1  NANCY DUARTE processed the proceeds of the Mexican Mafia LACJ
2  Enterprises extortion and drug trafficking activities using Green Dot
3  accounts.

4      Overt Act No. 288:  On September 1, 2014, in a recorded
5  telephone call, defendant DAVID BERNARDINO reported to defendant GAIL
6  PONCE that a Paisa was taxing inmates and asked defendant GAIL PONCE
7  to get instructions from defendants HECTOR DUARTE and NANCY DUARTE as
8  to how to deal with the Paisa.

9      Overt Act No. 289:  On September 1 or 2, 2014, defendant GAIL
10 PONCE told defendant NANCY DUARTE that defendant DAVID BERNARDINO
11 wanted instructions on how to deal with the Paisa who was taxing
12 inmates.

13     Overt Act No. 290:  On September 2, 2014, in a recorded
14 telephone call, defendant NANCY DUARTE told defendant HECTOR DUARTE
15 about the Paisa who was taxing inmates and asked if defendant HECTOR
16 DUARTE wanted the Paisa to be assaulted.

17     Overt Act No. 291:  On September 2, 2014, in a recorded
18 telephone call, defendant HECTOR DUARTE told defendant NANCY DUARTE
19 that defendant DAVID BERNARDINO should investigate which Mexican
20 Mafia member the Paisa claims to work for and to assault the Paisa
21 for 39 seconds.

22     Overt Act No. 292:  On September 2 or 3, 2014, defendant NANCY
23 DUARTE passed along to defendant GAIL PONCE defendant HECTOR DUARTE's
24 message that defendant DAVID BERNARDINO should investigate which
25 Mexican Mafia member the Paisa claims to work for and to assault the
26 Paisa for 39 seconds.

27     Overt Act No. 293:  On September 3, 2014, in a recorded
28 telephone call, defendant GAIL PONCE passed along to defendant DAVID

1   BERNARDINO defendant HECTOR DUARTE's message that defendant DAVID

2   BERNARDINO should investigate which Mexican Mafia member the Paisa

3   claimed to work for and to assault the Paisa for 39 seconds.

4       Overt Act No. 294: On September 3 or 4, 2014, defendant DAVID

5   BERNARDINO ordered that the Paisa, now known to be M.C., be

6   assaulted.

7       Overt Act No. 295: On September 4, 2014, unindicted co-

8   conspirators assaulted M.C. as discipline for disrespecting Mexican

9   Mafia LACJ Enterprise's authority.

10       Overt Act No. 296: On September 5, 2014, in a recorded

11   telephone call, defendant DAVID BERNARDINO reported to defendant GAIL

12   PONCE that the Paisa, Marco Calderon, had been assaulted, but that

13   the assault was not completed because Marco Calderon screamed and

14   deputies interceded before the assault "could really get going."

15   Assault of E.O to Collect an Extortion Debt

16       Overt Act No. 297: On September 7, 2014, in a recorded

17   telephone call, defendant MIGUEL RODRIGUEZ directed HECTOR DUARTE to

18   have E.O. assaulted for failing to pay the Mexican Mafia LACJ

19   Enterprise's thirds tax and for lying about doing so under the

20   authority of another Mexican Mafia member.

21       Overt Act No. 298: On September 8, 2014, defendant HECTOR

22   DUARTE ordered that E.O. be assaulted and his drugs were to be

23   confiscated because E.O. had lied about another Mexican Mafia member

24   "blessing" the drugs.

25       Overt Act No. 299: On September 9, 2014, unindicted co-

26   conspirators assaulted E.O. as discipline for violating Mexican

27   Mafia LACJ Enterprise rules.

28   ///

1    Overt Act No. 300: On September 11, 2014, unindicted co-

2    conspirators assaulted E.O. as discipline for violating Mexican Mafia

3    LACJ Enterprise rules.

4    Conspiracy to Remove Mexican Mafia Member A.E. From Power and to Take

5    Over His Territories

6    Overt Act No. 301: On or before April 25, 2014, defendant JOSE

7    LANDA-RODRIGUEZ wrote a kite to defendant DONATO GONZALES to inform

8    him that defendants JOSE LANDA-RODRIGUEZ, DMM-2, and other Mexican

9    Mafia members intended to strip Mexican Mafia membership from A.E.

10    Overt Act No. 302: On or before April 25, 2014, defendant JOSE

11    LANDA-RODRIGUEZ wrote a kite to defendant LUIS GARCIA to inform him

12    that defendant JOSE LANDA-RODRIGUEZ, DMM-2, and other Mexican Mafia

13    members intended to strip Mexican Mafia membership from A.E.

14    Overt Act No. 303: On or before April 25, 2014, defendant

15    GABRIEL ZENDEJAS-CHAVEZ passed a message from DMM-2 to defendant JOSE

16    LANDA-RODRIGUEZ regarding the decision to strip Mexican Mafia

17    membership from A.E.

18    Overt Act No. 304: On June 30, 2014, in a recorded telephone

19    conversation, defendant JOSE LANDA-RODRIGUEZ and unindicted co-

20    conspirator 45 ("UICC-44") discussed threatening the life of D.C.

21    because of his alignment with Mexican Mafia member A.E. and his

22    collecting of taxes in areas controlled by defendant JOSE LANDA-

23    RODRIGUEZ.

24    Overt Act No. 305: In or around August 2014, defendants GABRIEL

25    ZENDEJAS-CHAVEZ, RAFAEL LEMUS, ERNESTO VARGAS, and MIGUEL RODRIGUEZ

26    met at defendant GABRIEL ZENDEJAS-CHAVEZ' law office and discussed

27    A.E. being removed from the Mexican Mafia and other members taking

28    over his territories.

Overt Act No. 306:  On September 14, 2014, an unknown co-conspirator killed D.C. because of his alignment with A.E. and his collection of taxes in areas controlled by defendant JOSE LANDA-RODRIGUEZ.

Overt Act No. 307:  On October 22, 2014, defendant MIGUEL RODRIGUEZ passed a message to defendant JOSE LANDA-RODRIGUEZ from defendant RAFAEL LEMUS that Mexican Mafia members were in agreement about stripping A.E. of his membership and taking over his territories.

Overt Act No. 308:  On November 11, 2014, an unknown co-conspirator killed D.E. because of his alignment with A.E.

**Defendant GABRIEL ZENDEJAS-CHAVEZ Used His Status as an Attorney to Pass Messages About Mexican Mafia Business**

Overt Act No. 309:  On September 2, 2014, September 3, 2014, and October 1, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ used his status as an attorney to visit ten Mexican Mafia members at Pelican Bay State Prison, including Mexican Mafia member 4, and pass messages about new Mexican Mafia members and about the identity of possible cooperators.

Overt Act No. 310:  Between October 1, 2014, and October 22, 2014, after visiting Pelican Bay State Prison, defendant GABRIEL ZENDEJAS-CHAVEZ reported to defendants RAFAEL LEMUS and MIGUEL RODRIGUEZ that: defendant GABRIEL ZENDEJAS-CHAVEZ had found paperwork that defendant LUIS GARCIA, unindicted co-conspirator 45 ("UICC-45"), and UICC-38 were cooperating with law enforcement; Mexican Mafia Member 4 confirmed that "Cartoon" from the Canta Ranas gang was now a Mexican Mafia member; and A.E. had been stripped of his territories.

Overt Act No. 311:  On or before October 22, 2014, defendant MIGUEL RODRIGUEZ wrote a kite at the direction of DMM-2's secretary,

1  defendant RAFAEL LEMUS, stating that defendant GABRIEL ZENDEJAS-
2  CHAVEZ had found paperwork that defendant LUIS GARCIA, UICC-38, and
3  UICC-45 were cooperating with law enforcement, that "Cartoon" from
4  the Canta Ranas gang was now an Eme member, that A.E. had been
5  stripped of his territories, and that the accompanying drugs belonged
6  to DMM-2 and Mexican Mafia member 13.
7  Smuggling of Heroin and Mexican Mafia LACJ Enterprise Correspondence
8  into LACJ
9      Overt Act No. 312:  On or before October 21, 2014, defendant
10  MIGUEL RODRIGUEZ directed unindicted co-conspirator Marco Meza to
11  smuggle drugs and a kite into LACJ on behalf of DMM-2.
12      Overt Act No. 313:  On October 22, 2014, at the direction of
13  defendant MIGUEL RODRIGUEZ, unindicted co-conspirator Marco Meza
14  smuggled approximately 18.82 grams of heroin into LACJ on behalf of
15  the Mexican Mafia.
16      Overt Act No. 314:  On October 22, 2014, unindicted co-
17  conspirator Marco Meza possessed a kite from defendant MIGUEL
18  RODRIGUEZ to defendant JOSE LANDA-RODRIGUEZ discussing Mexican Mafia
19  LACJ Enterprise business, including the identity of potential
20  cooperators as determined by defendant GABRIEL ZENDEJAS-CHAVEZ, the
21  identity of a new Mexican Mafia member, and the standing of other
22  Mexican Mafia members.
23  Possession of Heroin to be Smuggled into LACJ
24      Overt Act No. 315:  On October 23, 2014, defendant MIGUEL
25  RODRIGUEZ possessed approximately 25.78 grams of heroin at his
26  residence with the intent to distribute it to other persons,
27  including by smuggling into LACJ.
28  ///

Possession of Methamphetamine, Heroin, and Cocaine, Including to be Smuggled into LACJ and Possession of a Firearm

Overt Act No. 316:  On October 24, 2014, defendant ERNESTO VARGAS possessed approximately 601.2 grams of methamphetamine, approximately 501.3 grams of heroin, approximately 83.4 grams of cocaine, and approximately 1.4 grams of cocaine base in the form of crack cocaine with the intent to distribute to others, including by smuggling into LACJ, for the benefit of the Mexican Mafia LACJ Enterprise.

Overt Act No. 317:  On October 24, 2014, defendant ERNESTO VARGAS possessed a firearm, namely, a Kimber model Custom 2 .45 caliber pistol, and ammunition, in order to protect narcotics for the benefit of the Mexican Mafia LACJ Enterprise.

Attorney GABRIEL ZENDEJAS-CHAVEZ Passes Mexican Mafia Messages

Overt Act No. 318:  On October 30, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ visited Mexican Mafia member 11 at the ADX Florence federal prison in Colorado and showed secret messages to Mexican Mafia member 11.

Assaults of R.B. and M.G.

Overt Act No. 319:  On August 22, 2015, in a recorded telephone conversation, defendant GENESSIS BLANCO told unindicted co-conspirator 48 ("UICC-48") to tell defendant ANDREW PINEDA to have R.B. assaulted because he was not recognizing the authority of DMM-2 and was interfering with Mexican Mafia LACJ Enterprise activities, including drug trafficking and extortion.

Overt Act No. 320:  On August 22, 2015, in a recorded telephone conversation, defendant ANDREW PINEDA told defendant GENESSIS BLANCO that M.G. was causing problems by not respecting the authority of

1   DMM-2 and interfering with Mexican Mafia LACJ Enterprise activities,

2   including drug trafficking and extortion.

3      Overt Act No. 321:  On August 22, 2015, in a recorded telephone

4   conversation, defendant GENESSIS BLANCO told defendant ANDREW PINEDA

5   to have M.G. assaulted because he was not recognizing the authority

6   of DMM-2 and was interfering with Mexican Mafia LACJ Enterprise

7   activities, including drug trafficking and extortion.

8      Overt Act No. 322:  On August 22, 2015, defendant ANDREW PINEDA

9   ordered that R.B. and M.G. be assaulted for not recognizing the

10   authority of DMM-2 and interfering with Mexican Mafia LACJ Enterprise

11   activities, including drug trafficking and extortion.

12      Overt Act No. 323:  On August 23, 2015, unindicted co-

13   conspirators assaulted R.B. and M.G..

14      Overt Act No. 324:  On and before October 23, 2015, defendant

15   GENESSIS BLANCO possessed records of the Mexican Mafia LACJ

16   Enterprises activities, including records of extortion and drug

17   trafficking.

18   Murder of P.C.

19      Overt Act No. 325:  On April 5, 2015, in a recorded telephone

20   conversation, defendant ALVINO MUNOZ discussed a dispute over

21   neighborhood taxation and fines of Echo Park gang members with P.C.,

22   and P.C. told defendant ALVINO MUNOZ that he takes orders from

23   another Mexican Mafia member and would not talk to defendant ALVINO

24   MUNOZ about it, and would only talk to defendant JOSE LANDA-

25   RODRIGUEZ.

26      Overt Act No. 326:  On April 5, 2015, in a recorded telephone

27   conversation, defendant ALVINO MUNOZ discussed with unindicted co-

28   conspirator 50 ("UICC-50") the dispute with P.C.

1     Overt Act No. 327:  On April 27, 2015, defendant SAMANTHA RIVERA

2 initiated a three-way call from defendant JOSE LANDA-RODRIGUEZ to

3 Mexican Mafia member 14 and DMM-2, and in a recorded telephone

4 conversation, defendant JOSE LANDA-RODRIGUEZ discussed with Mexican

5 Mafia member 14 that defendant ALVINO MUNOZ had sent someone to

6 collect the fines of Echo Park gang members, but P.C. was interfering

7 with the collection of the fine and was disrespectful to defendant

8 ALVINO MUNOZ.

9     Overt Act No. 328:  On April 27, 2015, in the three-way call

10 initiated by defendant SAMANTHA RIVERA, defendant JOSE LANDA-

11 RODRIGUEZ discussed with DMM-2 that P.C. was interfering in his

12 business and tried to push a "hard line" with defendant ALVINO MUNOZ.

13     Overt Act No. 329:  On July 19, 2015, in a recorded telephone

14 conversation, defendant ALVINO MUNOZ and UICC-50 discussed that P.C.

15 had blocked the payment of a fine, UICC-50 stated that P.C. worked

16 for another Mexican Mafia member, and defendant ALVINO MUNOZ told

17 UICC-50 to shut down P.C.'s activities.

18     Overt Act No. 330:  On July 19, 2015, in a recorded telephone

19 conversation, defendant JOSE LANDA-RODRIGUEZ told defendant SAMANTHA

20 RIVERA that P.C. is interfering and that defendant SAMANTHA RIVERA

21 and Mexican Mafia member 4 should talk to him.

22     Overt Act No. 331:  On July 19, 2015, in coded language during a

23 recorded telephone conversations, UICC-9, on defendant JOSE LANDA-

24 RODRIGUEZ' orders, told unindicted co-conspirator 51 ("UICC-51") the

25 following: that P.C. was defying defendant JOSE LANDA-RODRIGUEZ; that

26 defendant JOSE LANDA-RODRIGUEZ was angry; to meet with P.C. and

27 "teach him a little lesson"; to tell P.C. to stay on his side of "the

28 bridge"; that P.C. was on the "Green Light" list; that defendant JOSE

1   LANDA-RODRIGUEZ wants P.C. "cut loose"; that defendant JOSE LANDA-

2   RODRIGUEZ' decision is "final"; that there will be punishment for

3   disregarding what defendant JOSE LANDA-RODRIGUEZ said; that UICC-51

4   should contact DMM-2 to confirm the order; and that defendant JOSE

5   LANDA-RODRIGUEZ was very angry, "pacing back and forth" and wanted to

6   teach P.C. a lesson.

7        Overt Act No. 332:  On July 26, 2015, in a recorded telephone

8   conversation, UICC-9 told UICC-51 that defendant JOSE LANDA-RODRIGUEZ

9   put P.C. on the Green Light list and told UICC-51 to have an

10  unidentified co-conspirator lure P.C. in.

11       Overt Act No. 333:  On November 21, 2015, unknown co-

12  conspirators shot and killed P.C.

13  ==Defendant RAFAEL LEMUS Assists Robert Ruiz in Running Mexican Mafia==

14  ==LACJ Enterprise Business, Including Drug Trafficking and Extortion==

15       Overt Act No. 334:  Beginning in or prior to February 2014, and

16  continuing until at least May 2015, defendant RAFAEL LEMUS assisted

17  DMM-2 in running Mexican Mafia LACJ Enterprise business.  Defendant

18  RAFAEL LEMUS assisted in obtaining drugs from Mexico and passed

19  messages from DMM-2 to others including to and from defendant GABRIEL

20  ==ZENDEJAS-CHAVEZ.==

21       Overt Act No. 335:  On February 11, 2015, in a recorded

22  telephone conversation, defendant RAFAEL LEMUS told an associate of

23  A.E. that the areas formerly controlled by A.E. now belonged to

24  defendant JOSE LANDA-RODRIGUEZ, DMM-2, and their associates.

25       Overt Act No. 336:  On May 8, 2015, defendant RAFAEL LEMUS

26  possessed approximately $11,500 and Mexican Mafia-related

27  correspondence at his residence.

28  ///

Overt Act No. 337:  On November 20, 2015, in a recorded telephone conversation, defendant HECTOR DUARTE explained to UICC-5 the money he collected as a shotcaller in NCCF.

Overt Act No. 338:  On November 20, 2015, UICC-5 connected defendant RAFAEL LEMUS into a three-way call with defendant HECTOR DUARTE.

Overt Act No. 339:  On November 20, 2015, in a recorded telephone conversation, defendant RAFAEL LEMUS told defendant HECTOR DUARTE that he would investigate HECTOR DUARTE's "numbers," that is, the amount of Mexican Mafia LACJ Enterprise drug trafficking and extortion proceeds he forwarded, and asked HECTOR DUARTE if anyone could verify his numbers.

Overt Act No. 340:  On November 20, 2015, in a recorded telephone conversation, defendant RAFAEL LEMUS told defendant HECTOR DUARTE that UICC-5 is the "Senora" for DMM-2, that people should listen to UICC-5, and that failure to recognize UICC-5 will result in an assault.

Overt Act No. 341:  On November 22, 2015, in a recorded telephone conversation, defendant RAFAEL LEMUS told defendant ANDREW PINEDA and UICC-5 that defendant MIGUEL RODRIGUEZ has no status with the Mexican Mafia LACJ Enterprise and that anyone using defendant MIGUEL RODRIGUEZ' name will be assaulted.

Overt Act No. 342:  On November 22, 2015, in a recorded telephone conversation, defendant RAFAEL LEMUS stated that he has the authority to appoint secretaries, that he appointed UICC-5, and that anyone who gives UICC-5 trouble will "hear from him" and have problems that follow them outside of LACJ.

///

Smuggling of Methamphetamine and Heroin into LACJ

Overt Act No. 343: From August 19, 2015, through September 1, 2015, defendants ALVINO MUNOZ and KELLY JO BELL, and unindicted co-conspirator Robert Ramirez, arranged to smuggle drugs into LACJ for the benefit of defendant JOSE LANDA-RODRIGUEZ.

Overt Act No. 344: On August 19, 2015, in a recorded telephone conversation, defendants ALVINO MUNOZ and KELLY JO BELL discussed smuggling drugs into LACJ.

Overt Act No. 345: On August 28, 2015, in a recorded telephone conversation, defendant KELLY JO BELL told defendant ALVINO MUNOZ that she was on her way to deliver drugs to the individual who would smuggle them into LACJ.

Overt Act No. 346: On August 28, 2015, defendant KELLY JO BELL delivered approximately 41.8 grams of methamphetamine to unindicted co-conspirator Alejandro Martinez to smuggle into LACJ for defendant JOSE LANDA-RODRIGUEZ.

Overt Act No. 347: On September 1, 2015, in a recorded telephone conversation, unindicted co-conspirator Robert Ramirez discussed with another unindicted co-conspirator the fact that unindicted co-conspirator Alejandro Martinez had the drugs to be smuggled into LACJ for defendant JOSE LANDA-RODRIGUEZ.

Overt Act No. 348: On August 30, 2015, unindicted co-conspirator Alejandro Martinez possessed approximately 41.8 grams of methamphetamine and 61.83 grams of heroin inside his body and got himself arrested in order to bring the methamphetamine and heroin into LACJ.

Overt Act No. 349: On September 1, 2015, in a recorded telephone conversation, defendant KELLY JO BELL learned that an

1    unindicted co-conspirator inside LACJ knew about unindicted co-
2    conspirator Alejandro Martinez smuggling drugs into LACJ, had located
3    unindicted co-conspirator Alejandro Martinez , and would keep
4    defendant KELLY JO BELL updated as to the status of the drugs.

5        Overt Act No. 350:  On October 14, 2015, defendant KELLY JO BELL
6    possessed approximately 12.0 grams of methamphetamine and ledgers
7    regarding Mexican Mafia LACJ Enterprise business.

8    Assault of C.G. for Interfering with Drug Trafficking and Extortion

9        Overt Act No. 351:  On January 16, 2016, in a recorded telephone
10   call, defendant MARK LANDEROS and UICC-6 discussed having C.G.
11   assaulted in retaliation for C.G. attempting to take control of LACJ
12   away from defendant JOSE LANDA-RODRIGUEZ.

13       Overt Act No. 352:  On January 16, 2016, in a recorded telephone
14   call, at defendant MARK LANDEROS' direction, UICC-6 called an
15   unindicted co-conspirator and relayed defendant MARK LANDEROS' order
16   that C.G. was to be assaulted.

17       Overt Act No. 353:  On January 16, 2016, in a recorded telephone
18   call, UICC-6 relayed an unindicted co-conspirator's message that C.G.
19   was working under the orders of other Mexican Mafia members.

20       Overt Act No. 354:  On January 16, 2016, UICC-6 relayed a
21   message to UICC-16 that C.G. was to be assaulted under the authority
22   of defendant JOSE LANDA-RODRIGUEZ for interfering with Mexican Mafia
23   LACJ Enterprise operations, including drug trafficking and extortion.

24       Overt Act No. 355:  On January 16, 2016, in a recorded telephone
25   call, UICC-16 relayed the order that C.G. was to be assaulted to
26   UICC-12, a shot-caller in LACJ.

27   ///
28   ///

1       Overt Act No. 356: On January 26, 2016, on the orders from

2  defendant MARK LANDEROS and UICC-12, unindicted co-conspirators

3  assaulted C.G. at the direction of the Mexican Mafia LACJ Enterprise.

4  G.    SPECIAL SENTENCING ALLEGATIONS

5       11. Beginning on a date unknown to the Grand Jury, and

6  continuing to on or about the date of this Indictment, in Los Angeles

7  County, within the Central District of California, and elsewhere,

8  defendants JOSE LANDA-RODRIGUEZ, LUIS VEGA, GABRIEL ZENDEJAS-CHAVEZ,

9  RAFAEL LEMUS, LUIS GARCIA, ALVINO MUNOZ, DANIEL CERVANTES, MIGUEL

10  CALDERON, ERNESTO VARGAS, MIGUEL RODRIGUEZ, GILBERT PARRA, GERARDO

11  TAPIA, DONATO GONZALES, MIGUEL GARCIA, HECTOR DUARTE, SAMANTHA

12  RIVERA, MARK LANDEROS, JONATHAN VERDEJA, CECILIA VIRGEN, LAUREEN

13  GARCIA, NANCY DUARTE, VALERIE TREJO, GENESSIS BLANCO, KELLY JO BELL,

14  JOSE FLORES, MARK LEVY, VALENTIN CORDOVA, FRANKIE MEGORADO, JOSE

15  OLEA, MANUEL JIMENEZ, ALAVARO LEYVA, CHRIS FERREIRA, DAVID

16  BERNARDINO, ANDREW PINEDA, ALONDRA GOMEZ, MIRIAM MEZA, ANA MARTINEZ,

17  ALVARO RUIZ, ADRIAN ARAIZA, GAIL PONCE, DIANA MARTINEZ, MARLON

18  CORNEJO, ANGEL SANCHEZ, JUAN REYES, RICHARD BAILEY, MICHAEL BENNETT,

19  and EDWIN AYALA, and others known and unknown to the Grand Jury,

20  conspired and agreed with each other to knowingly and intentionally

21  (i) distribute, and (ii) possess with intent to distribute:

22       a.   at least 500 grams of a mixture and substance

23  containing a detectable amount of methamphetamine, a Schedule II

24  controlled substance, in violation of Title 21, United States Code,

25  Sections 846 and (b)(1)(A)(viii);

26       b.   at least 50 grams of methamphetamine, a Schedule II

27  controlled substance, in violation of Title 21, United States Code,

28  Sections 846 and (b)(1)(A)(viii);

     c.  at least a kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(i).

12.  On or about July 17, 2012, in Los Angeles County, within the Central District of California, defendant LUIS VEGA unlawfully willfully, deliberately, and with premeditation, attempted to intentionally kill an unknown Sureno with malice aforethought, in violation of California Penal Code Sections 31, 187, 189, and 664.

13.  Beginning no later than on or about December 1, 2012, and continuing to on or about an unknown date, in Los Angeles County, within the Central District of California, defendant LUIS VEGA unlawfully, willfully, deliberately, and with premeditation, attempted to intentionally kill J.R. with malice aforethought, in violation of California Penal Code Sections 31, 187, 189, and 664.

14.  On or about February 7, 2013, in Los Angeles County, within the Central District of California, defendant LUIS GARCIA unlawfully, willfully, deliberately, and with premeditation, attempted to intentionally kill M.A. with malice aforethought, in violation of California Penal Code Sections 31, 187, 189, and 664.

15.  On or about December 16, 2013, in Los Angeles County, within the Central District of California, defendants JOSE LANDA-RODRIGUEZ and others unknown to the Grand Jury conspired unlawfully to kill J.B.-2 with malice aforethought, in violation of California Penal Code Sections 182 and 187.

16.  From on or about April 5, 2015, through on or about November 21, 2015, in Los Angeles County, within the Central District of California, defendants JOSE LANDA-RODRIGUEZ and others unknown to

94

the Grand Jury conspired unlawfully to kill P.C. with malice aforethought, in violation of California Penal Code Sections 182 and 187.On or about April 22, 2014, in Los Angeles and San Bernardino Counties, within the Central District of California, defendants DAVID VILLALOBOS and DAVID DIAZ unlawfully conspired to kill C.R. with malice aforethought, in violation of California Penal Code Sections 182 and 187.

COUNT TWO

[18 U.S.C. §§ 1959(a)(3), 2]

1.    Paragraphs 1 through 13 of the General Allegations of this Indictment and paragraphs 2 through 6 of Count One are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.    At all times relevant to this Indictment, the Mexican Mafia LACJ Enterprise including its leaders, members, and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, although not a legal entity, which is engaged in, and the activities of which affected, interstate and foreign commerce.    The Mexican Mafia LACJ Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.    3.    At all times relevant to this Indictment, the Mexican Mafia LACJ Enterprise, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), consisting of:

multiple acts involving:

a.    Murder, in violation of California Penal Code Sections 21a, 31, 182, 187, 189, and 664;

b.    Kidnapping, in violation of California Penal Code Sections 21a, 31, 182, 207, 209, and 664;

c.    Robbery, in violation of California Penal Code Sections 21a, 31, 182, 211, 212, 212.5, 213, 215, and 664;

d.    Extortion, in violation of California Penal Code Sections 21a, 31, 182, 518, 519, 524, and 664;

multiple offenses involving:

e.   the distribution of, possession with intent to distribute, and conspiracy to possess with intent to distribute and distribute controlled substances, including methamphetamine, heroin, cocaine, cocaine base, and marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and 846;

and multiple acts indictable under the following provisions of federal law:

f.   Title 18, United States Code, Section 1512, Tampering with a Witness;

g.   Title 18, United States Code, Section 1513, Retaliating against a witness;

h.   Title 18, United States Code, Sections 1956 and 1957, Money Laundering;

i.   Title 18, United States Code, Section 1028, Identity Fraud; and

j.   Title 18, United States Code, Section 1029, Access Device Fraud.

4.   On or about March 31, 2013, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing position in the Mexican Mafia LACJ Enterprise, an enterprise engaged in racketeering activity, defendants MARK LANDEROS, also known as ("aka") "Smokey," aka "Troy," aka "Hot," and JUAN LEONARD GARCIA, aka "Little John," aka "Trevor," unlawfully and knowingly assaulted A.R. with a dangerous weapon, which assault resulted in serious bodily injury, in violation of California Penal Code Sections 21a, 664, 245(a)(1), (4).

COUNT THREE

[18 U.S.C. § 1959(a)(6)]

1.    Paragraphs 1 through 13 of the General Allegations of this Indictment, paragraphs 2 through 6 of Count One, and Paragraphs 2 and 3 of Count Two of this Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.    On or about April 23, 2013, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing position in the Mexican Mafia LACJ Enterprise, an enterprise engaged in racketeering activity, defendants MARK MARTINEZ, also known as ("aka") "Brat," AMO WEST, aka "Chico," RAMIRO ANDRADE, aka "Scrappy," OSWALDO QUINTERO, aka "Sporty," NICHOLAS ESCARCEGA, aka "Tweeks," CHRISTIAN FUENTES, aka "Nino," FRANCISCO RUIZ, aka "Pancho," aka "Scooby," and JOSE VERA, aka "Sapo," and others known and unknown to the Grand Jury, unlawfully and knowingly conspired to commit assault resulting in serious bodily injury against L.M. by means of force likely to produce great bodily injury, in violation of California Penal Code Sections 21a, 664, 245(a)(4).

Case 2:13-cr-00106-DOC  Document 551-1  Filed 06/24/22  Page 100 of 137  Page ID
Case 2:16-cr-00173-CW  Document 551  Filed 06/29/18  Page 99 of 136  Page ID
#:9106

COUNT FOUR

[18 U.S.C. §§ 1959(a)(1), 2(a)]

1.    Paragraphs 1 through 13 of the General Allegations of this Indictment, paragraphs 2 through 6 of Count One, and Paragraphs 2 and 3 of Count Two of this Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.    On or about April 22, 2014, in Los Angeles and San Bernardino Counties, within the Central District of California, for the purpose of maintaining and increasing position in the Mexican Mafia LACJ Enterprise, an enterprise engaged in racketeering activity, defendant DAVID VILLALOBOS, also known as "Grumpy," DAVID DIAZ, aka "Stomps," and DIANA MARTINEZ, aka "Devine," aiding and abetting each other, unlawfully and knowingly kidnapped C.R., in violation of California Penal Code Section 207.

## COUNT FIVE

[18 U.S.C. § 1959(a)(5)]

1.   Paragraphs 1 through 13 of the General Allegations of this Indictment, paragraphs 2 through 6 of Count One, and Paragraphs 2 and 3 of Count Two of this Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.   On or about April 22, 2014, in Los Angeles and San Bernardino Counties, within the Central District of California, for the purpose of maintaining and increasing position in the Mexican Mafia LACJ Enterprise, an enterprise engaged in racketeering activity, defendants DAVID VILLALOBOS, also known as ("aka") "Grumpy," DAVID DIAZ, aka "Stomps," and DIANA MARTINEZ, aka "Devine," and others known and unknown to the Grand Jury, unlawfully and knowingly conspired to kidnap C.R., in violation of California Penal Code Sections 182 and 207.

COUNT SIX

[21 U.S.C § 846]

1.   Paragraphs 1 through 13 of the General Allegations of this Indictment, and paragraphs 1 through 6 of Count One of this Indictment, are re-alleged and incorporated by reference as though fully set forth herein.

A.   OBJECTS OF THE CONSPIRACY

2.   Beginning on a date unknown to the Grand Jury and continuing to on or about the date of this Indictment, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendants JOSE LANDA-RODRIGUEZ, also known as ("aka") "Jose Rodriguez-Landa," aka "Jose Landa," aka "Jose Rodriguez," aka "Fox," aka "Fox Tapia," aka "F-X," aka "Alejandro Tapia," aka "Cola Rojo," aka "Red Tail," aka "Pops," aka "Tio," aka "The General," aka "Taras," aka "The Old Man," aka "The Animal," aka "Old School" ("JOSE LANDA-RODRIGUEZ"), LUIS VEGA, aka "Little One," aka "L-1," aka "Tito" ("LUIS VEGA"), GABRIEL ZENDEJAS-CHAVEZ, aka "Corbatas" ("GABRIEL ZENDEJAS-CHAVEZ"), RAFAEL LEMUS, aka "Ere," aka "The Voice," aka "La Voz" ("RAFAEL LEMUS"), LUIS GARCIA, aka "Hefty," aka "Grimm," aka "H" ("LUIS GARCIA"), ALVINO MUNOZ, aka "Bino," aka "B" ("ALVINO MUNOZ"), DANIEL CERVANTES, aka "Maniac," aka "J," aka "Paisa Jose" ("DANIEL CERVANTES"), MIGUEL CALDERON, aka "Big Speedy," aka "Mickey" ("MIGUEL CALDERON"), ERNESTO VARGAS, aka "Huero" aka "Huero Caballero," aka "Paisa Huero" ("ERNESTO VARGAS"), MIGUEL RODRIGUEZ, aka "Rebel," aka "Pee Wee," aka "R" ("MIGUEL RODRIGUEZ"), GILBERT PARRA, aka "Droopy," aka "Chavo" ("GILBERT PARRA"), GERARDO TAPIA, aka "Jerry" ("GERARDO TAPIA"), DONATO GONZALES, aka "Nato," aka "Nasty," aka "Debo," aka "Ray" ("DONATO GONZALES"), MIGUEL

GARCIA, aka "Toro," aka "Hulk," aka "T," aka "Horns" ("MIGUEL
GARCIA"), HECTOR DUARTE, aka "Lil Man," aka "Hecko" ("HECTOR
DUARTE"), SAMANTHA RIVERA, aka "Sam," aka "S" ("SAMANTHA RIVERA"),
MARK LANDEROS, aka "Smokey," aka "Troy," aka "Hot" ("MARK LANDEROS"),
JONATHAN VERDEJA, "Hardcore," aka "Duke" ("JONATHAN VERDEJA"),
CECILIA VIRGEN, aka "Cecilia DeLeon," aka "Sessy," aka "Hazel," aka
"Gia," aka "Sky," aka "Hooker" ("CECILIA VIRGEN"), LAUREEN GARCIA,
aka "L" ("LAUREEN GARCIA"), NANCY DUARTE, aka "Pink" ("NANCY
DUARTE"), VALERIE TREJO, aka "Val" ("VALERIE TREJO"), GENESSIS
BLANCO, aka "Pink" ("GENESSIS BLANCO"), KELLY JO BELL ("KELLY JO
BELL"), JOSE FLORES, aka "Silent," aka "Lo" ("JOSE FLORES"), MARK
LEVY, aka "Cloudy," aka "C3" ("MARK LEVY"), VALENTIN CORDOVA, aka
"Teen" ("VALENTIN CORDOVA"), FRANKIE MEGORADO, aka "Frankie
Mejorado," aka "Slick," aka "Junior," aka "Speedy" ("FRANKIE
MEGORADO"), JOSE OLEA, aka "Sniper" ("JOSE OLEA"), MANUEL JIMENEZ,
aka "Porky" ("MANUEL JIMENEZ"), ALAVARO LEYVA, aka "Flaco," aka
"Trigger" ("ALAVARO LEYVA"), CHRIS FERREIRA, aka "Caveman" ("CHRIS
FERREIRA"), DAVID BERNARDINO, aka "Downer" ("DAVID BERNARDINO"),
ANDREW PINEDA, aka "Mighty," aka "Shy Boy" ("ANDREW PINEDA"), ALONDRA
GOMEZ ("ALONDRA GOMEZ"), MIRIAM MEZA ("MIRIAM MEZA"), ANA MARTINEZ,
aka "Ana America," aka "Bandit" ("ANA MARTINEZ"), ALVARO RUIZ, aka
"Roach" ("ALVARO RUIZ"), ADRIAN ARAIZA, aka "Chemo" ("ADRIAN
ARAIZA"), GAIL PONCE, aka "Bashful" ("GAIL PONCE"), DIANA MARTINEZ,
aka "Devine" ("DIANA MARTINEZ"), MARLON CORNEJO, aka "Maniac"
("MARLON CORNEJO"), ANGEL SANCHEZ, aka "Lil Triste" ("ANGEL
SANCHEZ"), JUAN REYES, aka "Cosmo" ("JUAN REYES"), RICHARD BAILEY,
aka "Spooks," aka "Nigger Richard," aka "Half and Half" ("RICHARD
BAILEY"), MICHAEL BENNETT, aka "Irish" ("MICHAEL BENNETT"), EDWIN

102

1    AYALA, aka "Happy" ("EDWIN AYALA"), ROBERT RAMIREZ, aka "Wiz"

2    ("ROBERT RAMIREZ"), KRISTEN AYALA ("KRISTEN AYALA"), RICHARD GRIEGO,

3    aka "Twisted," aka "Pretzel" ("RICHARD GRIEGO"), JONATHAN RODRIGUEZ,

4    aka "Sharkie" ("JONATHAN RODRIGUEZ"), BRYANNA MCCULLAH, aka "Bee Bee"

5    ("BRYANNA MCCULLAH"), JUAN NMN GARCIA, aka "Trouble" ("JUAN NMN

6    GARCIA"), JONATHAN MENDEZ, aka "Casper," aka "Smokes" ("JONATHAN

7    MENDEZ"), MARTIN SALZAR aka "Sweeper" ("MARTIN SALAZAR"), RAMON

8    AMAYA, aka "Lil Happy" ("RAMON AMAYA"), FRANK HERRERA, aka "Dopey,"

9    aka "Ben" ("FRANK HERRERA"), ALEJANDRO MARTINEZ, aka "Smokey"

10   ("ALEJANDRO MARTINEZ"), and MARCO MEZA, aka "Green Eyes," aka "Ojos"

11   ("MARCO MEZA"), and others known and unknown to the Grand Jury,

12   conspired and agreed with each other to knowingly and intentionally

13   distribute, and possess with intent to distribute, the following

14   controlled substances:

15          a.    at least 500 grams of a mixture and substance

16   containing a detectable amount of methamphetamine, a Schedule II

17   controlled substance, in violation of Title 21, United States Code,

18   Sections 841(a)(1) and (b)(1)(A)(viii);

19          b.    at least 50 grams of methamphetamine, a Schedule II

20   controlled substance, in violation of Title 21, United States Code,

21   Sections 841(a)(1) and (b)(1)(A)(viii);

22          c.    at least 100 grams of a mixture and substance

23   containing a detectable amount of heroin, a Schedule I narcotic drug

24   controlled substance, in violation of Title 21, United States Code,

25   Sections 841(a)(1) and (b)(1)(B)(i);

26          d.    cocaine, a Schedule II narcotic drug controlled

27   substance, in violation of Title 21, United States Code, Sections

28   841(a)(1) and (b)(1)(C); and

Case 2:13-cr-00175-CJC Document 1 Filed 03/29/18 Page 104 of 236 Page ID #:104

1         e.  marijuana, a Schedule I controlled substance, in

2  violation of Title 21, United States Code, Sections 841(a)(1) and

3  (b)(1)(D).

4  B.   <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE</u>

5      <u>ACCOMPLISHED</u>

6     3.   Paragraph 9 of Count One of this Indictment is re-alleged

7  and incorporated by reference as if fully set forth herein.

8  C.   <u>OVERT ACTS</u>

9     4.   On or about the following dates, in furtherance of the

10  conspiracy, and to accomplish the object of the conspiracy,

11  defendants JOSE LANDA-RODRIGUEZ, LUIS VEGA, GABRIEL ZENDEJAS-CHAVEZ,

12  RAFAEL LEMUS, LUIS GARCIA, ALVINO MUNOZ, DANIEL CERVANTES, MIGUEL

13  CALDERON, ERNESTO VARGAS, MIGUEL RODRIGUEZ, GILBERT PARRA, GERARDO

14  TAPIA, DONATO GONZALES, MIGUEL GARCIA, HECTOR DUARTE, SAMANTHA

15  RIVERA, MARK LANDEROS, JONATHAN VERDEJA, CECILIA VIRGEN, LAUREEN

16  GARCIA, NANCY DUARTE, VALERIE TREJO, GENESSIS BLANCO, KELLY JO BELL,

17  JOSE FLORES, MARK LEVY, VALENTIN CORDOVA, FRANKIE MEGORADO, JOSE

18  OLEA, MANUEL JIMENEZ, ALAVARO LEYVA, CHRIS FERREIRA, DAVID

19  BERNARDINO, ANDREW PINEDA, ALONDRA GOMEZ, MIRIAM MEZA, ANA MARTINEZ,

20  ALVARO RUIZ, ADRIAN ARAIZA, GAIL PONCE, DIANA MARTINEZ, MARLON

21  CORNEJO, ANGEL SANCHEZ, JUAN REYES, RICHARD BAILEY, MICHAEL BENNETT,

22  EDWIN AYALA, ROBERY RAMIREZ, KRISTEN AYALA, RICHARD GRIEGO, JONATHAN

23  RODRIGUEZ, BRYANNA MCCULLAH, JUAN NMN GARCIA, JONATHAN MENDEZ, MARTIN

24  SALAZAR, RAMON AMAYA, FRANK HERRERA, ALEJANDRO MARTINEZ, and MARCO

25  MEZA, and others known and unknown to the Grand Jury, committed and

26  caused to be committed various overt acts within the Central District

27  of California, and elsewhere, including, but not limited to, Overt

28  Acts numbered 1 through 356 as set forth in Section F of Count One of

this Indictment, which are re-alleged and incorporated by reference as if fully set forth herein, in addition to the following:

Smuggling of Heroin and Methamphetamine into LACJ

Overt Act No. 357: From December 19, 2012, through January 22, 2013, defendants CECILIA VIRGEN and JOSE FLORES, UICC-3, and UICC-23, arranged to smuggle approximately 64.6 grams of heroin and approximately 36.7 grams of methamphetamine into LACJ on behalf of DMM-1.

Overt Act No. 358: On January 19, 2013, at defendant CECILIA VIRGEN's direction, UICC-23 possessed and smuggled in his body at least 64.6 grams of heroin and 36.7 grams of methamphetamine into LACJ for DMM-1.

Overt Act No. 359: On January 22, 2013, UICC-23 gave an unknown amount of a controlled substance to UICC-3 in LACJ.

Smuggling of Methamphetamine, Heroin, and Marijuana into LACJ

Overt Act No. 360: From January 22, 2013, through February 28, 2013, defendant RICHARD GRIEGO arranged with defendants CECILIA VIRGEN, VALERIE TREJO, and RICHARD BAILEY, for heroin, methamphetamine, and marijuana to be smuggled to UICC-3 in LACJ on behalf of DMM-1.

Overt Act No. 361: On February 28, 2013, defendant RICHARD GRIEGO possessed in his body and attempted to smuggle approximately 26.2 grams of pure methamphetamine, approximately 62.9 grams of heroin, and approximately 11.75 grams of marijuana into LACJ for UICC-3 and DMM-1.

Smuggling of Methamphetamine into LACJ

Overt Act No. 362: From July 24, 2013, through August 14, 2013, defendant JONATHAN RODRIGUEZ arranged with defendants MARK LANDEROS,

KRISTEN AYALA, BRYANNA MCCULLAH, and JUAN NMN GARCIA, and UICC-31, to smuggle approximately one ounce of methamphetamine and one ounce of marijuana into LACJ.

Overt Act No. 363: On July 25, 2013, in a recorded telephone conversation, defendant KRISTEN AYALA advised UICC-31 on what to do when he arrived at LACJ with the smuggled drugs.

Overt Act No. 364: On August 3, 2013, in a recorded telephone conversation between defendants MARK LANDEROS, JUAN NMN GARCIA, and KRISTEN AYALA, defendant JUAN NMN GARCIA agreed to supply methamphetamine and marijuana for defendant MARK LANDEROS, and gave prices for the drugs.

Overt Act No. 365: On August 3, 2014, defendant JUAN NMN GARCIA provided approximately one ounce of methamphetamine to defendant KRISTEN AYALA so that the methamphetamine could be smuggled into LACJ on behalf of defendant MARK LANDEROS.

Overt Act No. 366: On August 3, 2014, unindicted co-conspirator KRISTEN AYALA obtained and packaged approximately one ounce of methamphetamine so that it could be smuggled into LACJ on behalf of defendant MARK LANDEROS.

Overt Act No. 367: From August 4, 2013, through August 12, 2013, UICC-31 possessed approximately one ounce of methamphetamine for the purpose of smuggling it into LACJ on behalf of defendant MARK LANDEROS.

Overt Act No. 368: On August 13, 2013, defendant BRYANNA MCCULLAH possessed approximately one ounce of methamphetamine and gave that methamphetamine to defendant JONATHAN RODRIGUEZ, with the intent that it be smuggled into LACJ on behalf of defendant MARK LANDEROS.

Overt Act No. 369: On August 13, 2013, in a recorded telephone conversation, defendant JONATHAN RODRIGUEZ agreed with defendant MARK LANDEROS to smuggle drugs into LACJ.

Overt Act No. 370: On August 14, 2013, defendant JONATHAN RODRIGUEZ possessed approximately 22.7 grams of methamphetamine in in his body which was discovered and seized by LASD deputies.

Smuggling of Methamphetamine and Marijuana into LACJ via Kidney Dialysis Center

Overt Act No. 371: On September 21, 2013, defendant JONATHAN MENDEZ attempted to smuggle approximately 51.29 grams of marijuana and 13.2 grams of methamphetamine that had been left in a kidney dialysis center by an unknown co-conspirator.

Possession of Heroin Within LACJ and Extortion

Overt Act No. 372: On or before December 18, 2013, defendant JONATHAN RODRIGUEZ agreed to smuggle approximately 43.7 grams of heroin inside Twin Towers for UICC-2 and defendant LUIS GARCIA.

Overt Act No. 373: On December 18, 2013, in Twin Towers, defendant JONATHAN RODRIGUEZ, intending to distribute the drugs to others on behalf of defendant JOSE LANDA-RODRIGUEZ, possessed approximately 43.7 grams of heroin which was discovered and seized by LASD deputies.

Smuggling of Drugs in LACJ

Overt Act No. 374: Between April 18, 2014, and April 20, 2014, defendant FRANK HERRERA, on behalf of defendants DONATO GONZALEZ and ALVARO RUIZ, obtained methamphetamine and heroin for the purpose of having it smuggled into LACJ.

Overt Act No. 375: From April 20, 2014, through April 22, 2014, an defendant RAMON AMAYA smuggled approximately 2.37 grams of heroin

107

1  and 7.75 grams of methamphetamine into LACJ inside his body, with the

2  intent to distribute the drugs within LACJ.

3      Overt Act No. 376:  On April 22, 2014, defendant MARTIN SALAZAR

4  possessed approximately 2.37 grams of heroin and 7.75 grams of

5  methamphetamine that had been smuggled into LACJ by defendant RAMON

6  AMAYA in order to secrete the drugs from LASD deputies and to further

7  distribute the drugs within LACJ.

8  Smuggling of Heroin into LACJ

9      Overt Act No. 377:  On or before October 22, 2014, defendant

10 MARCO MEZA agreed with defendant MIGUEL RODRIGUEZ to smuggle heroin

11 into LACJ.

12     Overt Act No. 378:  On October 22, 2014, at the direction of

13 defendant MIGUEL RODRIGUEZ, defendant MARCO MEZA smuggled

14 approximately 18.82 grams of heroin into LACJ on behalf of defendant

15 JOSE LANDA-RODRIGUEZ.

16     Overt Act No. 379:  On October 22, 2014, defendant MARCO MEZA

17 called defendant MIGUEL RODRIGUEZ to report that he had arrived at

18 LACJ with the heroin he had smuggled in.

19 Smuggling of Methamphetamine and Heroin into LACJ

20     Overt Act No. 380:  On August 19, 2015, in a recorded telephone

21 conversation, defendant ROBERT RAMIREZ discussed smuggling drugs into

22 LACJ with defendants ALVINO MUNOZ and KELLY JO BELL.

23     Overt Act No. 381:  On September 1, 2015, in a recorded

24 telephone conversation, defendant ROBERT RAMIREZ spoke to an

25 unidentified unindicted co-conspirator who told defendant ROBERT

26 RAMIREZ that defendant ALEJANDRO MARTINEZ had the drugs to be

27 smuggled into LACJ for defendant JOSE LANDA-RODRIGUEZ.

28 ///

Overt Act No. 382:  On September 1, 2015, in a recorded telephone conversation, defendant ROBERT RAMIREZ told defendant KELLY JO BELL that he got the message about defendant ALEJANDRO MARTINEZ smuggling drugs into LACJ, that he located defendant ALEJANDRO MARTINEZ right away, and that he would keep defendant KELLY JO BELL updated as to the status of the drugs.

Overt Act No. 383:  On September 1, 2015, defendant ALEJANDRO MARTINEZ, having smuggled drugs into LACJ, possessed, inside his body, approximately 41.8 grams of methamphetamine and 61.83 grams of heroin, which was discovered and seized by LASD deputies.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about May 13, 2013, in Los Angeles County, within the Central District of California, defendant MICHAEL BENNETT, also known as "Irish," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 5.5 grams, of methamphetamine, a Schedule II controlled substance.

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii); 18 U.S.C. § 2]

On or about August 14, 2014, in Los Angeles County, within the Central District of California, defendant JONATHAN RODRIGUEZ, also known as ("aka") "Sharkie," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 22.7 grams, of methamphetamine, a Schedule II controlled substance.

At the above time and place, defendants MARK LANDEROS, aka "Smokey," aka "Troy," aka "Hot," KRISTEN AYALA, JUAN NMN GARCIA, aka "Trouble," and BRYANNA MCCULLAH, aka "Bee Bee," knowingly and intentionally aided, abetted, counseled, commanded, induced and procured, and willfully caused, the commission of the offense alleged above.

COUNT NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about September 21, 2013, in Los Angeles County, within the Central District of California, defendant JONATHAN MENDEZ, also known as ("aka") "Casper," aka "Smokes," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 13.2 grams, of methamphetamine, a Schedule II controlled substance.

## COUNT TEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(D)]

On or about September 21, 2013, in Los Angeles County, within the Central District of California, defendant JONATHAN MENDEZ, also known as ("aka") "Casper," aka "Smokes," knowingly and intentionally possessed with intent to distribute approximately 51.29 grams of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance.

## COUNT ELEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about December 18, 2013, in Los Angeles County, within the Central District of California, defendant JONATHAN RODRIGUEZ, also known as "Sharkie," knowingly and intentionally possessed with intent to distribute approximately 43.7 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT TWELVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii); 18 U.S.C. § 2]

On or about April 22, 2014, in Los Angeles County, within the Central District of California, defendants MARTIN SALAZAR, also known as ("aka") "Sweeper," and RAMON AMAYA, aka "Lil Happy," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 7.75 grams, of methamphetamine, a Schedule II controlled substance.

At the above time and place, defendants GABRIEL ZENDEJAS-CHAVEZ, aka "Corbatas," DONATO GONZALEZ, aka "Nato," aka Nasty," aka "Debo," aka "Ray," ALVARO RUIZ, aka "Roach," and FRANK HERRERA, aka "Dopey," aka "Ben," knowingly and intentionally aided, abetted, counseled, commanded, induced and procured, and willfully caused, the commission of the offense alleged above.

COUNT THIRTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2]

On or about April 22, 2014, in Los Angeles County, within the Central District of California, defendants MARTIN SALAZAR, also known as ("aka") "Sweeper," and RAMON AMAYA, aka "Lil Happy," knowingly and intentionally possessed with intent to distribute approximately 2.37 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

At the above time and place, defendants GABRIEL ZENDEJAS-CHAVEZ, aka "Corbatas," DONATO GONZALEZ, aka "Nato," aka Nasty," aka "Debo," aka "Ray," ALVARO RUIZ, aka "Roach," and FRANK HERRERA, aka "Dopey," aka "Ben," knowingly and intentionally aided, abetted, counseled, commanded, induced and procured, and willfully caused, the commission of the offense alleged above.

COUNT FOURTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

On or about April 30, 2014, in Los Angeles County, within the Central District of California, defendants GERARDO TAPIA, also known as ("aka") "Jerry," and DIANA MARTINEZ, aka "Devine," each aiding and abetting each other, knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 1,746 grams, of methamphetamine, a Schedule II controlled substance.

## COUNT FIFTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about May 9, 2014, in Los Angeles County, within the Central District of California, defendant GERARDO TAPIA, also known as "Jerry," knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 558.6 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SIXTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

On or about October 22, 2014, in Los Angeles County, within the Central District of California, defendant MARCO MEZA, also known as ("aka") "Green Eyes," aka "Ojos," knowingly and intentionally possessed with intent to distribute approximately 18.82 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

At the above time and place, defendant MIGUEL RODRIGUEZ, aka "Rebel," aka "Pee Wee," aka "R," knowingly and intentionally aided, abetted, counseled, commanded, induced and procured, and willfully caused, the commission of the offense alleged above.

COUNT SEVENTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about October 24, 2014, in Los Angeles County, within the Central District of California, defendant ERNESTO VARGAS, also known as ("aka") "Huero," aka "Huero Caballero," aka "Paisa Huero," knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 601.2 grams, of methamphetamine, a Schedule II controlled substance.

Case 2:13-cr-00196-DOC Document 1551-1 Filed 06/24/22 Page 122 of 137 Page ID
Case 2:13-cr-00175-CW Document 1 Filed 03/29/16 Page 120 of 136 Page ID #:121
#:9128

COUNT EIGHTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i)]

On or about October 24, 2014, in Los Angeles County, within the Central District of California, defendant ERNESTO VARGAS, also known as ("aka") "Huero," aka "Huero Caballero," aka "Paisa Huero," knowingly and intentionally possessed with intent to distribute at least 100 grams, that is, approximately 501.3 grams, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

## COUNT NINETEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about October 24, 2014, in Los Angeles County, within the Central District of California, defendant ERNESTO VARGAS, also known as ("aka") "Huero," aka "Huero Caballero," aka "Paisa Huero," knowingly and intentionally possessed with intent to distribute approximately 1.4 grams of a mixture and substance containing a detectable amount of cocaine base in the form of crack cocaine, a Schedule II narcotic drug controlled substance.

## COUNT TWENTY

### [21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about October 24, 2014, in Los Angeles County, within the Central District of California, defendant ERNESTO VARGAS, also known as ("aka") "Huero," aka "Huero Caballero," aka "Paisa Huero," knowingly and intentionally possessed with intent to distribute approximately 83.4 grams of cocaine, a Schedule II narcotic drug controlled substance.

COUNT TWENTY-ONE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii); 18 U.S.C. § 2]

On or about September 1, 2015, in Los Angeles County, within the Central District of California, defendant ALEJANDRO MARTINEZ, also known as ("aka") "Smokey," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 41.8 grams, of methamphetamine, a Schedule II controlled substance.

At the above time and place, defendants ALVINO MUNOZ, aka "Bino," aka "B," KELLY JO BELL, and ROBERT RAMIREZ, aka "Wiz," knowingly and intentionally aided, abetted, counseled, commanded, induced and procured, and willfully caused, the commission of the offense alleged above.

COUNT TWENTY-TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about September 1, 2015, in Los Angeles County, within the Central District of California, defendant ALEJANDRO MARTINEZ, also known as ("aka") "Smokey," knowingly and intentionally possessed with intent to distribute approximately 61.83 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

At the above time and place, defendants ALVINO MUNOZ, aka "Bino," aka "B," KELLY JO BELL, and ROBERT RAMIREZ, aka "Wiz," knowingly and intentionally aided, abetted, counseled, commanded, induced and procured, and willfully caused, the commission of the offense alleged above.

COUNT TWENTY-THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about October 14, 2015, in Los Angeles County, within the Central District of California, defendant KELLY JO BELL knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 12.0 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-FOUR

[18 U.S.C. §§ 1956(a)(1)(A)(i), 2(b)]

On or about May 9 and May 10, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant DANIEL CERVANTES, also known as ("aka") "Maniac," aka "J," aka "Paisa Jose," knowing that the property involved in the financial transaction described below represented the proceeds of some form of unlawful activity, conducted and willfully caused others to conduct a financial transaction affecting interstate and foreign commerce, namely, the exchange of $7,976 worth of money orders for $7,178 in cash, which transaction, in fact, involved the proceeds of specified unlawful activity, that is, Extortion, in violation of California Penal Code Sections 21(a), 31, 182, 518, 519, 524, and 664, and Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, with the intent to promote the carrying on of such specified unlawful activity.

COUNT TWENTY-FIVE

[18 U.S.C. §§ 1956(a)(1)(A)(i), 2(b)]

On or about May 25, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant ANA MARTINEZ, also known as ("aka") "Ana America," aka "Bandit," knowing that the property involved represented the proceeds of some form of unlawful activity, conducted and willfully caused others to conduct a financial transaction affecting interstate and foreign commerce, namely, the conversion to cash of $500 of money orders, representing the proceeds of extortion and a conspiracy to distribute controlled substances, which transaction, in fact, involved the proceeds of specified unlawful activity, that is, Extortion, in violation of California Penal Code Sections 21(a), 31, 182, 518, 519, 524, and 664, and Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, with the intent to promote the carrying on of such specified unlawful activity.

COUNT TWENTY-SIX

[18 U.S.C. § 1029(a)(3)]

On or about August 7, 2013, in Los Angeles County, within the Central District of California, defendant ANA MARTINEZ, also known as ("aka") "Ana America," aka "Bandit" ("ANA MARTINEZ"), knowingly and with intent to defraud, possessed at least fifteen unauthorized access devices (as defined in Title 18, United States Code, Sections 1029(e)(1) and (3)), namely, approximately 725 social security numbers belonging to persons other than defendant ANA MARTINEZ, along with dates of birth and names of persons other than defendant ANA MARTINEZ, with said possession affecting interstate and foreign commerce.

COUNT TWENTY-SEVEN

[18 U.S.C. § 1028A(a)(1)]

On or about August 7, 2013, in Los Angeles County, within the Central District of California, defendant ANA MARTINEZ, also known as ("aka") "Ana America," aka "Bandit", ("ANA MARTINEZ") knowingly possessed, without legal authority, means of identification that defendant ANA MARTINEZ knew belonged to another person, that is, a social security number and date of birth belonging to M.V., during and in relation to a felony violation of Title 18, United States Code, Section 1029(a)(3), Possession of at least Fifteen Unauthorized Access Devices, as charged in Count Twenty-Six of this Indictment.

## COUNT TWENTY-EIGHT

[18 U.S.C. § 924(c)(1)(A)]

On or about October 24, 2014, in Los Angeles County, within the Central District of California, defendant ERNESTO VARGAS knowingly used and carried a firearm, namely, a Kimber model Custom 2 .45 caliber semi-automatic pistol, bearing serial number K319556, during and in relation to, and possessed that firearm in furtherance of, a crime of violence, namely, Racketeering Conspiracy, in violation of Title 18, United States Code, Section 1962(d), as charged in Count One of this Indictment, and drug trafficking crimes, namely, Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, as charged in Count Six of this Indictment, and Possession with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 841(a)(1), as charged in Counts Seventeen, Eighteen, Nineteen, and Twenty of this Indictment.

COUNT TWENTY-NINE

[18 U.S.C. § 922(g)(1)]

On or about October 24, 2014, in Los Angeles County, within the Central District of California, defendant ERNESTO VARGAS, also known as ("aka") "Huero," aka "Huero Caballero," aka "Paisa Huero" ("VARGAS"), knowingly possessed a firearm, namely, a Kimber model Custom 2 .45 semi-automatic pistol, bearing serial number K319556, and ammunition, namely, seven rounds of Remington .45 caliber ammunition, in and affecting interstate and foreign commerce.

Such possession occurred after defendant VARGAS had been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1) Manufacture of a Controlled Substance, in violation of California Health and Safety Code Section 11379.6, in the Superior Court of the State of California, County of Los Angeles, case number NA048204, on or about April 4, 2001;

(2) Sale of a Controlled Substance, in violation of California Health and Safety Code Section 11379, in the Superior Court of the State of California, case number BA250764, on or about April 15, 2004.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 1963]

5.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963, in the event of any defendant's conviction under Count One of this Indictment.

6.    Defendants shall forfeit to the United States the following property:

a.    All right, title, and interest in:

i.    any and all interest including, without limitation, any and all interest in any and all property (real, personal, tangible, intangible or otherwise) any person acquired or maintained in violation of Title 18, United States Code, Section 1962;

ii.   any and all interest in, security of, claims against, or property or contractual right of any kind affording a source of influence over, any enterprise which any person established, operated, controlled, conducted or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

iii. any and all property (real, personal, tangible, intangible or otherwise) constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of Title 18, United States Code, Section 1962; and

b.    A sum of money equal to the total value of the property described in subsection a.  If more than one defendant is

133

found guilty under Count One each such defendant shall be jointly and severally liable for the entire amount forfeitable pursuant to that Count.

7.    Pursuant to Title 18, United States Code, Section 1963(m), each defendant shall forfeit substitute property, up to the value of the money and property described in the preceding paragraph, if, as the result of any act or omission of a defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[21 U.S.C. § 853]

1.    The allegations contained in the general allegations and in Counts One and Six of this Indictment are hereby repeated, re-alleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 21, United States Code, Section 853. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 21, United States Code, Section 853, in the event of any defendant's conviction under any of Counts Six through Twenty-Three of this Indictment.

2.    Each defendant convicted under any of Counts Six through Twenty-Three shall forfeit to the United States any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation and any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation.

3.    Pursuant to Title 21, United States Code, Section 853(p), each defendant shall forfeit substitute property, up to the value of the total amount described in paragraph 2, if, as the result of any act or omission of said defendant, the property described in paragraph 2, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 924(d); 28 U.S.C. § 2461]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18 United States Code, Section 924(d), of any defendant's conviction under any of Counts Twenty-Eight through Twenty-Nine of this Indictment.

2.    Such defendants shall forfeit to the United States all firearms and ammunition involved in the commission of each such offense, including all firearms and ammunition in this Indictment.

A TRUE BILL

/S/
Foreperson

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

SHAWN J. NELSON
Assistant United States Attorney
Acting Deputy Chief, Organized Crime
 Drug Enforcement Task Force Section

MAX B. SHINER
Assistant United States Attorney
Special Counsel to the United States
 Attorney for Violent Crime