Joseph A. Yanny (SBN 97979)
Andrea X. Ales (SBN 330928)
**YANNY & SMITH**
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone: (310) 551-2966
Facsimile: (310) 551-1949
jyanny@yannylaw.com

Victor Sherman (SBN 38483)
LAW OFFICES OF VICTOR SHERMAN
11400 Olympic Blvd.
Los Angeles, California 90230
Telephone: (424) 371-5930
Facsimile: (310) 399-9029
ssvictor@aol.com

Attorneys for Defendant, **MONGOL NATION**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR 13-106(A)-DOC |
| Plaintiff, | DEFENDANT'S REPLY BRIEF |
| v. | |
| MONGOL NATION, | Date: October 6, 2022<br>Time: 3:00 p.m. |
| An unincorporated association, | Location: Hon. David O. Carter Courtroom |
| Defendant. | |

1

Defendant Mongol Nation, by and through its counsel of record, hereby files its Rebuttal to Plaintiff's Second Submission in Opposition to Defendant's Second Motion for a New Trial.

This rebuttal is based upon the attached, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 29, 2022                              Respectfully submitted,

/s/ Joseph A. Yanny____

Table of Contents

I.  INTRODUCTION ………………………………….........................1

II. ARGUMENTS……………………………………………………....1

   A. Government Wrongly Argues Defendant Has Not Met Its Burden….1

   B. Annie's Questionable Testimony………………………………..6

   C. Dave is Not a Credible Witness………………………………….10

   D. Testimony the Government Forgot to Mention……………………12

III. CONCLUSION………………………………….………………15

i

## Table of Authorities

Cases:

*Berger v. United States*, 295 U.S. 88 (1935)……………………………….….5

*Black v. United States*, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966)……….5

*Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966)…….5

*United States v. DeCologero*, 530 F. 3d 36, 64 (1st Cir. 2008).)…………..……1

*United States v. Zarzour*, 432 F.2d 1, 3 (5th Cir. 1970)……………………..……5

Rules:

Federal Rules of Criminal Procedure 37…………………………. ..……..……...4

18 U.S. Code § 371…………………………………………………….………..15

I. **INTRODUCTION**

The Government claims that there was testimony from numerous witnesses that proved Defendant's ("Mongol Nation" or "Mongols" or "Club") claim to be untrue and that there were no witnesses or evidence that support Defendant's claim. However, this is false because the Government fails to address that David Santillan ("Dave" or "David") perjured himself on the stand as well as failing to focus on Defendant's witnesses (such as Robert Rodriguez and Stephen Stubbs, etc.), Exhibits (such as Exhibit 1 through Exhibit 5, Exhibit 7, Exhibit 10B, Exhibit 10C, Exhibit 13, Exhibit 17, Exhibit 18), and the testimony of both David Santillan and John Ciccone as to the relationship of David Santillan with John Ciccone ("Ciccone") and the ATF. The Government also falsely states that it is the Defense that has the burden. However, contrary to Plaintiff's assertions, once a defendant demonstrates that the confidential relationship between the attorney and the client was violated because of government intrusion into the attorney-client relationship, it is the Government's burden "to show that the defendant was not prejudiced; that burden is a demanding one." *United States v. DeCologero*, 530 F. 3d 36, 64 (1st Cir. 2008).

II. **ARGUMENT**

   A. Government Wrongly Argues Defendant Has Not Met Its Burden

i.    Newly Discovered Evidence

1

The Government claims that Defendant did not show any newly discovered evidence. However, Defendant provided the Court with new evidence including, but not limited to, Exhibit 1, Exhibit 1A, and Exhibit 2, a video with its transcript and a text message created and sent by Annie Santillan ("Annie"), David's wife, to two Mongols members saying that David was simply a "rat", a "CI". Defendant also provided Exhibit 3, a photo of David Santillan with Christopher Cervantes ("Cervantes"), a retired Montebello Police Officer and ATF Task Force member, having a beer together at a bowling alley in Diamond Bar less than 20 miles away from David's residence showing the two men had an ongoing relationship. Once the Defense received the video (Exhibit 1) and text message (Exhibit 2), their investigation began and more information unraveled, such as David's involvement with the Mexican Mafia (Exhibit 13) and an FBI interview with Ciccone discussing his relationship with David (Exhibit 17). Furthermore, the Defendant produced evidence from prior cases (Exhibit 13, Exhibit 15, Exhibit 16, Exhibit 18) that strengthen Defendant's allegations.

The Government states that the Mexican Mafia evidence and witnesses did not appear to be relevant. This is incorrect because the Mexican Mafia evidence and witnesses show that Ciccone knew in January 2010 that David was working with the Mexican Mafia in a conspiracy to extort and extort other third parties. Additionally, David was embezzling tens of thousands of dollars per month from

the Club and its members after becoming President, it seems implausible that the Government did not know this fact. These facts both show why David was afraid to be indicted and why he vehemently demanded that he and Ciccone were not to be called to testify in the jury trial. The Government says that the Mexican Mafia incidents would have occurred years before and are not new evidence, however the Defense did not discover that Dave was involved with the Mexican Mafia until now and therefore, would be considered new evidence. The incidents happened while Dave was the National President of the Mongols and during the time Ciccone was infiltrating both the Mongols and the Mexican Mafia (includes Maravilla).

   The Government states that the Law enforcement contacts with Dave were all in front of other members – even hundreds of other members. However, that contradicts the direct testimony of Robert Rodriguez and Stephen Stubbs, both of whom testified Dave would go off with Ciccone on his own and have private discussions, including daily meetings at Starbucks during trial. Ciccone also testified that there were times where he and Dave called and texted each other. Unless every contact was in a group text or by conference call, there were no witnesses or Club members present. (Transcript - August 25, Volume 2, Page 70, Line 15). We don't know if Dave was an undercover, a formal confidential informant who is paid, or whether Dave was simply "a cooperating source" (as FBI

3

agent Joseph Talamantez testified in US v. Zandajas case) to wit: which is someone who is protected by the Government in exchange for "playing ball" and cooperating in some fashion with the Government. Transcript of Mr. Talamantez testimony available upon request.

    ii.    <u>Government Wrongly Claims Defendant Did Not Show That It Was Diligent</u>

Defendants have made at least a prima facia showing of the accuracy of the allegations against David which form the basis of the instant motion. It was not until July of 2021, that Annie published her now infamous video (Exhibit 1 and Exhibit 1A) and text message (Exhibit 2) to Club brothers indicating for the first time the existence of newly discovered evidence relevant to this motion. This Court has not yet indicated to the Court of Appeals in a request for partial remand of jurisdiction that the "… motion raises a substantial issue…" *Fed. Rules of Crim. Pro. Rule* 37. That would then permit Defense to have complete and open discovery which it has not yet had. Within four months from the Mongols discovering these allegations, they completed their preliminary investigation and filed the instant motion.

    iii.    <u>Government Wrongly Claims Defendant Did Not Show New Evidence That Was Material to Trial Issues, Not Cumulative or Merely Impeaching</u>

4

The Government also wrongly claims that the evidence which Defendant presents by this motion is not material to trial issues. Again, both the applied standard and the application of that standard by the Government are misplaced. *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *Black v. United States*, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966). " *United States v. Zarzour*, 432 F.2d 1, 3 (5th Cir. 1970). In a setting where a motion of new trial, or setting aside of a conviction, or dismissal is premised on Government misconduct invasive of a Defendant's sixth amendment and due process rights, there could be nothing more material.

    iv.    <u>Government Wrongly Claims Defendant Did Not Show That a New Trial Would Probably Result in Acquittal</u>

The Government again misses the point with its argument that the Defendant, did not show that a new trial would result in an acquittal. They couldn't be more wrong. The primary remedy where a motion is made to vacate a conviction and obtain a new trial for Government misconduct, unethically invasive of a defendant's sixth amendment and due process rights, is a striking of the operative pleading and an entry of a judgment of acquittal. Citing again, *Berger v. United States*, 295 U.S. 88 (1935). This is especially true whereas in the instant case all of the guilty individuals in the prosecution's litany of bad deeds, have been convicted and punished for their misconduct, if any, by way of separate proceedings.  In a

5

similar vein, not unexpectedly, the Government while arguing that Mongol member David Martinez killed officer Diamond as he entered the Martinez residence at 4 a.m. but fails to inform the Court that Martinez was acquitted of First-Degree Murder charges in January 2019, on those allegations. Similarly, the Government argues about Mongol member Christopher Ablett's killing of Hells Angels' member Mark Guardado in San Francisco, Guardado being one of five Hells Angels attacking Ablett that evening. However, the Government fails to mention that the jury in our instant case made a finding of not proven against the Mongols for Ablett's activities in December of 2018. Thereby negating any necessity to retry that issue.

### B. Annie's Questionable Testimony

The Government uses Annie's testimony to try to prove that Dave was not an informant. However, the Government does not use specific testimony from Annie that discredits her, such as, on June 6th Annie said her daughter Hunter videotaped Exhibit 1. (Transcript – June 6, Volume 1, Page 26, Line 12). On June 28th, Annie said her daughter Brittany videotaped Exhibit 1 and that only one daughter was in the room. When Counsel confirmed it was Brittany, Annie then changed her answer and said Hunter did the videotaping and said both daughters were in the room. (Transcript - June 28, Volume 1- Page 12, line 21). Additionally, Annie was asked if she knew what Dave was talking about in the video (Exhibit 1),

she stated she didn't know. However, Annie must have understood what Dave was talking about because she determined that he was a rat and sent the video and text message to Club brothers.

> "Q. Do you have an understanding of who he was talking about?
>
> A. Not at the time.
>
> Q. You didn't know John Ciccone?
>
> A. I didn't know who he was referring to at the time."

(Transcript - June 6, Page 35, Line 21). At the next hearing, Annie's testimony showed that she knew who Dave was talking about at the time in the video.

> "Q. What in that video that David said led you to believe that you could represent him as a rat?
>
> A. I guess 'cause he said that name.
>
> Q. Oh, "that name" like?
>
> A. John.
>
> Q. John Ciccone?
>
> A. He didn't say his last name, but I guess I just kinda ran with it.
>
> Q. But you knew who he was talking about.
>
> A. I guess I did, yeah…"

(Transcript - June 28 Volume 1, Page 26, Line 3). Annie further testifies:

7

"Q. What made you believe the name "John" and the indication that he was protecting him made you believe that it would appear that Dave was a rat to the members of the club?

A. I obviously went back to the video, saw the video and used it the way I wanted it to be used, and sent out, because things had transpired from then to July 4th, and that's when I decided to send the video and use it against him."

(Transcript - June 28, Volume 1, Page 27, Line 17).

"Q. [I'm going] to ask you again: What in the video led you to believe that you could use that video's contents to portray David as a rat?

A. John. Cause he said the name "John." So, I thought I would use it to my advantage and see if I can get this to stick.

Q. [...] How many Johns do you know in your life?

A. In this world, in this club, they know who "John" is.

Q. Everybody. And so did you?

A. [...] Yeah"

(Transcript - June 28, Volume 1, Page 28, line 6). Her lack of credibility continues with her questionable reasoning:

"Q. You could have done many other kinds of things to hurt him. Such as turn him into the cops for drugs. He was in possession of them, wasn't he?

A. That's not true. I knew he was using drugs, but how would I turn him in for having drugs on him? I didn't know when he had drugs on him.

Q. Well, when you talked to him you could pretty much be certain he was loaded couldn't you?

8

> A. I could tell that he was inebriated, but I didn't know if he was on drugs at that moment. And I don't think the police would go over there because I'm telling them go over there, he's on drugs."

(Transcript - June 6, Volume 1, Page 53, Line 13). If Annie's moral compass guides her to not call the cops in an effort to "destroy" Dave when he may or may not have drugs on him, why would she send the video and text messages to the Club brothers if she was not certain he was a rat?

In addition, the Government includes Annie's testimony that "David was never alone." (Transcript - June 28 Volume 1- Page 41, Line 11). However, the Government did not include Defense counsel's re-direct when he asked Annie:

> "Q. Annie, you weren't typically involved in club business, were you?
>
> A. No.
>
> Q. So you wouldn't know what David was doing all the time on behalf of the club or as a club member, would you?
>
> A. No.
>
> Q. So if David were out someplace and having a meeting with John Ciccone, you wouldn't necessarily know, would you?
>
> A. No.
>
> Q. If he were having conversations with John Ciccone or someone else from the ATF or the government, you wouldn't necessarily know, would you?
>
> A. No.
>
> Q. You don't check his phone to see who he calls, do you?

9

A. No"

(Transcript - June 28, Volume 1, Page 55, Line 21). Annie switched her testimony multiple times, as seen below where she and Dave contradict each other's testimony. Annie's testimony is weak, and to rely on her testimony is misplaced.

    C. <u>Dave is Not a Credible Witness</u>

The Government also relies on Dave's testimony; however, Dave was found to have lied about many things on the stand. When asked about whether David abused Annie, Annie testified that she got a restraining order to "keep 'em away from me because he abused me physically in Rosarito[…] in front of everybody." (Transcript - June 28, Volume 1- page 11, Line 6). Annie further testified about her abuse from Dave, that she "had bruising on" her "mouth." (Transcript - June 28 Volume 1, page 13, line 6). Furthermore, Annie provides more testimony and said that Dave hit her. (Transcript - June 28, Volume 1, Page 30 Line 15). When David took the stand, he was asked if he hit Annie, David testified he "did not." (Transcript - June 28 Volume 1, Page 79, Line 5). David also lied on the stand when he was asked about whether he was on drugs during the video (Exhibit 1):

    "Q. You were obviously intoxicated on something at the time that tape was made, were you not?

    A. Yeah, alcohol.

    Q. What about any drugs?

10

>A. Alcohol. No drugs."

(Transcript - June 28 Volume, Page 81, Line 1). Annie's testimony says something different:

>"Q. Did you ever ask him what he meant about… "He can't protect me anymore?"
>
>A. No, I didn't.
>
>Q. Weren't you interested?
>
>A. He wasn't making sense. He needed help. **He was on drugs**." (emphasis added).

(Transcript - June 28 Volume 1, page 18, line 13). Another time Dave lied on the stand was when he was questioned about "Hawk," an individual that shadowed Dave when Dave met with Ralph Rocha to extort and conspire to extort. Dave said he had "no idea" who Hawk was. (Transcript - June 28 Volume, Page 73, Line 23). Then on the September 7th hearing, Dave was asked again about Hawk, and he said he didn't know. (Transcript - September 7, Volume 1, Page 94, Line 20). However, after Defense counsel showed Exhibit 19, a video of Dave talking about Hawk, Dave's testimony changed:

>"Q. Who's "Fat ass Hawk"?
>
>A. He's out bad. An old member… for like two months.
>
>Q. He was a member in 2009, though, right?

11

  A. I guess. I don't know. It's been a long time. He hasn't been in the club, like, over 14 years. 13 years, whatever it is."

(Transcript - September 7, Volume 1, Page 96, Line 5). "Hawk" was in the Club 13 years ago, which would line up with the meeting Dave had with Ralph Rocha regarding extortion and conspiracy to extort in Exhibit 13. All of these examples, show that Mr. Santillan does not care whether he is perjuring himself.

  Additionally, when Ciccone took the stand, he testified that he had called Dave before and that they had texted before. (Transcript - September 7, Volume 1, Page 60, Line 13). However, Dave testified that he did not have Ciccone's phone number, he never called Ciccone, he never texted Ciccone, Ciccone never called him, and that Ciccone never texted him. (Transcript - September 7, Volume 1, Page 106, Line 21).

  Mr. Santillan is only interested in aimlessly protecting his self-respect by denying the abuse of his wife, deflecting his involvement with the Mexican Mafia and his conspiracy to extort, and lying about his "inappropriate relationship" with John Ciccone, a member of the Prosecution Team. The Government erroneously relies on David's perjured testimony to sidestep the allegations that David Santillan is, and has been, a cooperator with the Prosecution in this case.

  D. <u>Testimony the Government Forgot to Mention</u>

12

Dave also lied on the stand that he did not meet with Ralph Rocha at Denny's. However, Defendant's witness, Arturo Garcia, testified that he was Ralph Rocha's shadow and Hawk was Dave's shadow during their meeting regarding extortion and conspiracy to extort depicted in Exhibit 13. (Transcript - July 25, Volume 1, Page 50, Line2).

The Government mentioned David's testimony regarding a vote in the courthouse hallway to not put him and Ciccone on the stand, and that the Mongols knew Dave was not going to take the stand. However, the Government forgets to mention the testimony from Mother Chapter Club member, Robert Rodriguez, who testified there was no discussion with the Club that Dave and Ciccone should not take the stand, that Dave did not discuss any of the trial with the Club whatsoever, and that there were times that Dave would go off with Ciccone by himself. (Transcript - August 25, Volume 2, Page 70, Line15). Furthermore, Stephen Stubbs testified that there was no vote in the courthouse hallway with the Defense team regarding whether or not Dave and Ciccone should take the stand. (Transcript - August 25, Volume 1, Page 61, Line 1). Mr. Stubbs also testified that he has witnessed "Dave wav[ing] everybody off" to speak "to Ciccone alone." (Transcript - August 25, Volume 2, Page 19, Line 9).

13

The Government also relies on David when he testified that he did not meet with Ciccone. However, Mr. Stubbs testified that David told him that he was meeting with Ciccone every morning until Judge Carter told them not to. (Transcript - August 25, Volume 1, Page 44, Line 2).

The Government does not address the fact that David Santillan threatened the entire Defense team and their families if he or John Ciccone were called to the stand. David knew that Ciccone, at a minimum, was an essential witness to cover all the bases on culpability. (Transcript - August 25, Volume 1, Page 52, Line 17) (See Exhibit 4 and Exhibit 7). The Government further relies on the testimony of David Santillan, who clearly shows the Court that he is not afraid to perjure himself, and that he is more likely to tell the truth when under the influence instead of under oath.

Some of the witnesses that have been called to this matter are current or former law enforcement personnel. While there is a tendency to blindly trust the testimony of law enforcement, it is the result of a misplaced trust. We ask the Court to take note of a study regarding the proclivity to the members of law enforcement to perjure themselves. Although the study was based upon New York law enforcement around the turn of the century, we don't believe that the change of coasts or the passing of 22 years discredits its contemplation. The bottom line of

the study is that over 75% of law enforcement personnel indicated they were willing to commit perjury to get a conviction. (See https://www.ojp.gov/ncjrs/virtual-library/abstracts/police-perjury-factorial-survey). That's compounded to this case once again with the fact that we are dealing with the ATF, with folks in large part brought you Randy Weaver, Waco Texas, the Fast and the Furious, the Stash House cases, Dobyns v. US, etc.

### III. CONCLUSION

The only fair, just, and equitable thing to be done, given the available facts and the applicable legal standard, is to vacate the conviction in this case in favor of a new trial and then grant a dismissal of the superseding indictment in this case. That should be followed by an order returning all fines and penalties forfeited to the Government as a result of this conviction together with an award of all attorney's fees incurred by the Mongol Nation in defense of this circus. At a minimum, this Court should give notice to the Court of Appeals that it seeks a remand of jurisdiction sufficient to permit further discovery and evidentiary hearings to get to the bottom of what exactly happened in this case. The misconduct engaged in by the Government in this case, is of such a nature that it may well violated title 18 U.S. Code § 371, and should not go underdress.

Respectfully submitted:                    /s/ Joseph A. Yanny
                                                         Attorney for Defendant